# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

RALPH NADER, et al.,

               Plaintiffs,

      v.

THE DEMOCRATIC NATIONAL
COMMITTEE, et al.,

               Defendants.

Civil Action No.: 1:08-cv-00589-RMU

## DEFENDANT REED SMITH'S MOTION TO DISMISS

Defendant Reed Smith, by and through counsel, hereby moves this Court pursuant to
Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Complaint, and as grounds
therefor refers to the memorandum in support of its motion, which is attached hereto and
incorporated herein.

Dated:  June 6, 2008

               Respectfully submitted,

               REED SMITH LLP

               /s/

               Douglas K. Spaulding
               D.C. Bar No. 936948
               Lasagne A. Wilhite
               D.C. Bar No. 475438
               REED SMITH LLP
               1301 K Street, N.W.
               Suite 1100 - East Tower
               Washington, D.C.  20005-3373
               Telephone:   202.414.9200
               Facsimile:   202.414.9299

               *Counsel for Defendant Reed Smith*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RALPH NADER, et al.,

                Plaintiffs,

         v.

THE DEMOCRATIC NATIONAL
COMMITTEE, et al.,

                Defendants.

Civil Action No.: 1:08-cv-00589-RMU

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT REED SMITH'S MOTION TO DISMISS

      This matter is the *fourth* iteration of Plaintiffs' campaign to punish those that they feel are responsible for Ralph Nader and Peter Camejo's loss in the 2004 general election. Nader has: (i) challenged a fully-appealed judgment for voters' costs in challenging his nomination papers, (ii) filed an action in the D.C. courts raising common law and constitutional claims, (iii) filed an action in Virginia's U.S. district court raising constitutional claims, and (iv) filed the instant action in this Court raising purported constitutional claims. As this Court recognized last month in dismissing the second related action, "[r]ather than attributing his poor showing to public disenchantment with independent candidates following the closely divided 2000 presidential election or an unpopular platform or any one of the array of reasons that voters choose one candidate over another, Nader, along with Peter Camejo (his 2004 running mate) and six voter plaintiffs... allege that the defendants ...engineered his defeat...."[1]

---

[1] *Nader et. al., v. The Democratic National Committee, et. al.*, Mem. Op. Granting the Defs.' Mots. To Dismiss, Civ. Act. No. 07-2136-RMU, __ F. Supp. 2d __, 2008 WL 2174238, slip op. at 1 (D.D.C. May 27, 2008) (hereinafter "*Nader*, No. 07-2136-RMU") (granting all defendants' motions to dismiss, and dismissing the plaintiffs' Amended Complaint in its entirety).

In the second related action, the Court dismissed claims of conspiracy, malicious prosecution and abuse of process founded on allegations that Defendants caused Nader and Camejo's loss in the 2004 election, the same factual allegations that Plaintiffs assert in this action. Here, Plaintiffs claim that Defendants have violated 42 U.S.C. § 1983 and Plaintiffs' constitutional rights, and have conspired to violate 42 U.S.C. § 1983 and Plaintiffs' constitutional rights. The Court should dismiss these claims against Reed Smith just as it dismissed the related action, because: (i) the Court's decision in the previous action is *res judicata* as to the claims and issues presented in this case; (ii) Plaintiffs cannot state a conspiracy claim against Reed Smith; (iii) Defendants are immune from liability under the *Noerr-Pennington* doctrine for exercising their First Amendment right to challenge the Nader-Camejo ballot; (iv) Defendants have not violated any Plaintiff's constitutional rights, because they had no right to have Nader and Camejo on the 2004 general election ballot; (v) Defendants did not act under color of state law; and (vi) the statute of limitations bars Plaintiffs' claims.

For these reasons, the Court should dismiss the entire Complaint as to Defendant Reed Smith under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.    FACTUAL & PROCEDURAL BACKGROUND[2]

Plaintiffs' claims against Reed Smith arise out of the firm's representation of voters in Pennsylvania who successfully challenged the nomination papers of Ralph Nader and Peter Miguel Camejo for the 2004 general election for President and Vice President of the United

---

[2] Because the instant case involves many of the same factual allegations as Plaintiffs' Amended Complaint in *Nader v. The Democratic National Committee*, No. 07-2136-RMU -- in which this Court has already ruled on Reed Smith's motion for summary judgment -- the factual background herein, as well as other sections of this memorandum, restate some facts and arguments as stated in Reed Smith's motion in Case No. 07-2136-RMU, where applicable and appropriate.

States (the "Nader-Camejo" campaign).[3]   Pennsylvania voters filed a Petition alleging that the

nomination papers of the Nader-Camejo campaign contained insufficient valid, genuine,

authentic and complete signatures to qualify Nader-Camejo to appear on the ballot.  *In re*

*Nomination Paper of Ralph Nader*, 905 A.2d 450, 453 (Pa. 2006), *cert denied* 127 S.Ct. 995

(2007).  On August 30, 2004, the Pennsylvania Commonwealth Court set aside the nomination

papers and disqualified Nader and Camejo from the ballot because they were running as

independent candidates in Pennsylvania and as candidates of a political party in other states.[4]

Compl. ¶ 78.  Upon appeal by the Nader-Camejo campaign, the Pennsylvania Supreme Court

reversed and vacated the order and remanded the case for expedited evidentiary hearings to

review the signatures. Compl. ¶ 79.

On remand, the Commonwealth Court dedicated monumental resources to review the

Nader-Camejo signatures under the standards that the Pennsylvania Supreme Court established.

*In re Nader*, 905 A.2d at 454.  On October 13, 2004, the Commonwealth Court issued its

Findings, Opinion and Order setting aside the nomination papers.  *In re Nader*, 905 A.2d at 454-

55.  The Commonwealth Court concluded that the nomination papers did not contain the

---

3 Defendant Reed Smith relies in part on the factual findings of the Pennsylvania courts in
setting out the background regarding the underlying litigation involving the Nader-Camejo
campaign and Reed Smith.  It is well-settled in the D.C. Circuit that on a motion to dismiss under
Rule 12(b)(6) of the Federal Rules a court may consider the complaint, "documents either
attached to or incorporated in the complaint and matters of which [the court] may take judicial
notice." *Equal Employment Opportunity Comm'n v. St. Francis Xavier Parochial School*, 117
F.3d 621, 624 (D.C. Cir. 1997).  Court records are matters of which the court may take judicial
notice. *Hinton v. Shaw Pittman Potts & Trowbridge*, 257 F. Supp. 2d 96, 100 n.5 (D.D.C. 2003).

4 The Commonwealth Court further disqualified Camejo for the reason that his candidate's
affidavit falsely indicated that he was not enrolled in a political party, despite the fact that he was
a member of the California Green Party. *In re Nomination Paper of Ralph Nader*, 856 A.2d 908
(Pa. Cmwlth. 2004) (*rev'd, In re Nomination Paper of Ralph Nader*, 579 Pa. 561, 858 A.2d 58
(2004)).

required 25,697 valid signatures, and found that the nomination papers contained only 18,818

valid signatures. *Id.* The court concluded the following:

> "[T]his signature gathering process was the most deceitful and fraudulent
> exercise ever perpetrated upon this Court. The conduct of the [Nader-Camejo
> campaign] through their representatives (not their attorneys) shocks the
> conscience of the Court.  In reviewing signatures, it became apparent, that in
> addition to signing names such as 'Mickey Mouse,' 'Fred Flintstone,' 'John
> Kerry,' and the ubiquitous 'Ralph Nader,' there were thousands of names that
> were created at random and then randomly assigned either existent or non-
> existent addresses by the circulators."

*In re Nader*, 865 A.2d at 18.

Upon Nader-Camejo's appeal, the Pennsylvania Supreme Court affirmed the October 13,

2004 order *per curiam. In re Nader*, 905 A.2d at 455; *In re Nomination Paper of Ralph Nader*

*and Peter Miguel Camejo*, 860 A.2d 1 (Pa. 2004), *per curiam, cert denied* 543 U.S. 1052 (Jan.

10, 2005).  The United States Supreme Court denied the Nader-Camejo campaign's subsequent

petition for certiorari on January 10, 2005. *See In re Nader*, 543 U.S. 1052.

After the election, the Commonwealth Court imposed all costs for court stenographer

appearances and transcript preparation involved in the hearings on the Nader-Camejo campaign,

Ralph Nader and Peter Miguel Camejo individually, directing the Nader-Camejo campaign to

pay $81,102.19 in total costs. *In re Nader*, 905 A.2d at 455.  The Pennsylvania Supreme Court

affirmed the decision of the Commonwealth Court on August 22, 2006. *Id.*  The Pennsylvania

Supreme Court held that "[t]he Commonwealth Court acted pursuant to statutory authority in

assessing costs to [the Nader-Camejo campaign], where their signature-gathering campaign

involved fraud and deception of massive proportions." *In re Nader*, 905 A.2d at 460.

On May 16, 2007, the Superior Court for the District of Columbia entered the

Pennsylvania judgment against Mr. Nader and Mr. Camejo. *See Serody v. Nader*, Case No. 2007

003385 F (D.C. Sup. Ct. 2007).  On behalf of their clients, Reed Smith negotiated a settlement of

all claims with Mr. Camejo, but Mr. Nader refused to settle. *See* Compl. ¶ 96. Therefore, the

Pennsylvania plaintiffs, through counsel Reed Smith, commenced attachment proceedings

against Mr. Nader's personal accounts. On July 17, 2007, the Superior Court entered writs of

attachment against Amalgamated Bank, M&T Bank and PNC Bank as garnishees of Mr. Nader's

accounts. Compl. ¶ 98. On behalf of their clients, Reed Smith filed a motion to condemn the

funds frozen in Mr. Nader's account. The court granted the motion on October 25, 2007. *See id.*

Mr. Nader filed a belated motion for relief from judgment on November 7, 2007, which is

pending before the Superior Court. *See id.*

Reed Smith was neither a party to the underlying litigation in Pennsylvania regarding the

nomination papers of the Nader-Camejo campaign, nor did the firm act in any capacity other

than as the lawyers for the parties involved.    Nevertheless, Plaintiffs have chosen to sue the firm

for its actions in representing its clients in Pennsylvania, even though none of Reed Smith's

clients in the underlying case is a party to this action.

Plaintiffs have named several parties as defendants in the instant case in addition to Reed

Smith. The other defendants in this case are Nader's former competing candidate, his campaign,

and the Democratic National Committee, all involved to varying degrees in activities to promote

the election of John Kerry for President in the 2004 general election.

Plaintiff Ralph Nader is an unsuccessful third party candidate for President. He failed to

garner more than 2.75% of the popular vote in his 2000 and 2004 campaigns for President.

Plaintiff Peter Miguel Camejo is an unsuccessful third party candidate for Vice-President. The

other plaintiffs are alleged to be registered voters in several states, not including Pennsylvania,

who supported the unsuccessful candidacy of Nader-Camejo.

On October 30, 2007, Plaintiffs filed a complaint in Superior Court for the District of

Columbia, naming the same Defendants named in the instant action, and accusing the defendants of conspiracy, abuse of process and malicious prosecution for Defendants' actions in challenging the Nader-Camejo nomination papers in several states, including Pennsylvania. The complaint also alleged conspiracy and violations under 42 U.S.C. § 1983, the Qualifications Clause and the First and Fourteenth Amendments.

The defendants removed the October 30, 2007 action to this Court on November 27, 2007. On January 23, 2008, Plaintiffs amended the complaint, deleting the counts that alleged constitutional violations. On May 27, 2008, upon motions by the defendants, and briefing by all parties, the Court dismissed Plaintiffs' January 23, 2008 amended complaint.

Plaintiffs filed a new Complaint on April 4, 2008, initiating this action. In this case, Plaintiffs assert a cause of action for Conspiracy to Violate 42 U.S.C. § 1983, the Qualifications Clause and the First and Fourteenth Amendments of the U.S. Constitution (Count I), and a cause of action for Violation of 42 U.S.C. § 1983, the Qualifications Clause and the First and Fourteenth Amendments of the U.S. Constitution (Count II). Thus, the October 30, 2007 complaint named the same parties and, prior to its amendment in January 2008, included the same claims as the instant Complaint.

None of Plaintiffs' claims has any merit. Therefore, as the Court determined regarding Plaintiffs' January 23, 2008 amended complaint that alleged the same facts, the Court should dismiss this case.

## II.    ARGUMENT

### A.    Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss should be granted if it appears that the plaintiff can prove no set of facts in support of its claim which

would entitle the plaintiff to relief. *See Newborn v. Yahoo, Inc.*, 391 F. Supp. 2d 181, 185

(D.D.C. 2005) (citing Fed. R. Civ. P. 12(b)(6)). A motion to dismiss is designed to test the legal

sufficiency of the complaint. When deciding a motion to dismiss, the Court should accept all

factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's

favor. *See id.* However, a complaint must consist of more than conclusory allegations and

unsupported factual assertions to survive a motion to dismiss. *See id.* (holding that the plaintiff's

conclusory allegations could not withstand a Rule 12(b)(6) motion); *Herbin v. Hoeffel*, 806 A.2d

186, 196 (D.C. Cir. 2002) (stating that a conclusory allegation does not meet the requirement of

factual support). Here, Plaintiffs' conclusory allegations are insufficient to survive a motion to

dismiss.

> **B.    The Court's Previous Decision on the Facts Alleged Here is *Res Judicata* to all of Plaintiffs' Claims in this Case, Requiring their Dismissal.**

Because this Court already reviewed in another action the facts that Plaintiffs re-allege in

this action, the Court's previous decision dismissing Plaintiffs' complaint is *res judicata* as to

Plaintiffs' claims here. Under the claim preclusion principle of *res judicata*, a final judgment on

the merits in one action "bars any further claim based on the same 'nucleus of facts'" and

involving the same parties or their privies. *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir.

1984) (quoting *Expert Elec., Inc. v. Levine*, 554 F.2d 1227, 1234 (D.C. Cir. 1977); *see also*

*Sieverding v. American Bar Ass'n*, 439 F. Supp. 2d 111, 115 (D.D.C. 2006) (Urbina, J.) (holding

that *res judicata* precludes parties or their privies from relitigating claims that were or could have

been raised).

Plaintiffs may not circumvent the *res judicata* claim preclusion bar by raising a new legal

theory. *Res judicata* bars not only the relitigation of claims that were previously raised, but also

of claims that "*could have*" or "*should have*" been raised in an earlier suit. *Sieverding*, 439 F.

Supp. 2d at 115; *Natural Resources Defense Council v. EPA*, 513 F.3d 257, 261 (D.C. Cir. Jan.

22, 2008) (barring claims that "should have been raised"); *Allen v. McCurry,* 449 U.S. 90, 94,

(1980) ("[A] final judgment on the merits of an action precludes the parties or their privies from

relitigating issues that were or could have been raised in that action."); *Natural Resources*

*Defense Council  v. Thomas,* 838 F.2d 1224, 1252 (D.C. Cir. 1988) ("*[R]es judicata* (claim

preclusion) bars relitigation not only of matters determined in a previous litigation but also ones

that a party could have raised.").

Here, Plaintiffs have merely taken their complaint alleging state law claims against Reed

Smith – which this Court dismissed on May 27, 2008 – and re-packaged it as a complaint

alleging federal claims. *Cf. Nader*, No. 07-2136-RMU, Am. Compl. *with* Compl. *Res judicata*

bars Plaintiffs from relitigating these claims arising from the same nucleus of operative facts.

*Page,* 729 F.2d at 820.  Plaintiffs had their opportunity to litigate these federal law claims along

with their state law claims.  In fact, Plaintiffs initially included these same federal claims along

with the state law claims in their original complaint. *See Nader*, No. 07-2136-RMU, slip op. at

3-4.  However, Plaintiffs made a tactical decision to voluntarily dismiss these federal claims

from their original complaint in an effort to elude this court's jurisdiction. *Res judicata* bars

Plaintiffs from attempting to take a second bite at the apple.  Therefore, the Court should dismiss

Plaintiffs' Complaint in its entirety.

Not only does *res judicata* bar Plaintiffs' claims, the Court should dismiss the Complaint

because, as detailed below, Plaintiffs cannot state claims upon which relief can be granted. *See*

Fed. R. Civ. P. 12(b)(6).

### C.    Plaintiffs Have Failed to State a Conspiracy Claim Against Reed Smith.

In order to prove a conspiracy to violate Plaintiffs' equal protection and civil rights,

Plaintiffs must allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, ... and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in her person or property or deprived of any right or privilege of a citizen of the United States.

*Martin v. Malhoyt*, 830 F.2d 237, 258 (D.C. Cir. 1987) (listing the elements of a conspiracy claim under 42 U.S.C. § 1985) (citations omitted); *see also LaRouche v. Fowler*, 152 F.3d 974, 987 (D.C. Cir. 1998) (listing the requirements for a conspiracy claim under 42 U.S.C. § 1985(3)).[5]

Plaintiffs have no legal basis for a 42 U.S.C. § 1985 conspiracy claim against Reed Smith. First, Plaintiffs have not and cannot establish an underlying rights violation necessary to support a claim for conspiracy. Second, the complaint contains insufficient allegations regarding Reed Smith's alleged involvement and participation with the alleged conspiracy.

### 1.    Plaintiffs' Claim Requires, but Lacks, an Underlying Rights Violation Upon Which a Conspiracy May Be Founded.

For their conspiracy claim, Plaintiffs must be able to state facts demonstrating that Plaintiffs have been "deprived of any right or privilege of a citizen of the United States." *Martin*, 830 F.2d at 258. Further, 42 U.S.C. § 1985 requires a showing of discriminatory intent: "The statute does not apply to *all* conspiratorial tortious interferences with the rights of others, but only those motivated by some class-based, invidiously discriminatory animus." *Id.* (citation omitted). The D.C. Circuit has emphasized that Plaintiffs fail to state a claim under § 1985(3) if

---

[5] The Complaint does not specify the basis of Plaintiffs' conspiracy cause of action. Based on Plaintiffs' allegations, Plaintiffs purport to state a claim under 42 U.S.C. § 1985. *See* 42 U.S.C. § 1985(1) (describing conspiracy to prevent persons from accepting or holding an office); *id.* § 1985(3) (describing conspiracy to deprive persons of equal protection and civil rights).

"[they] ha[ve] failed to allege an equal protection claim based on a conspiracy motivated by some racial or certain class-based discriminatory animus." *Humphrey v. F.B.I.*, No. 94-5061, 1994 WL 475060, 1 (D.C. Cir. July 27, 1994) (citing *Tilton v. Richardson,* 6 F.3d 683, 686 (10th Cir. 1993); *Hoai v. Vo,* 935 F.2d 308, 314 (D.C. Cir. 1991)); *Hoai*, 935 F.2d at 314 (§ 1985(3) does not apply to all tortious, conspiratorial interferences, but only to conspiracies motivated by discriminatory intent); *Tilton*, 6 F.3d at 686 (same).

As detailed below, Plaintiffs in this case cannot establish that Defendants violated any of Plaintiffs' federal rights. *See infra* Section II.E.1. Further, there is no basis for Plaintiffs to claim that Defendants conspired to violate Plaintiffs' rights based on Plaintiffs' class, or that Defendants engaged in invidious discrimination. The States and the courts authorize and/or encourage nomination paper challenges of independent candidates in order to promote ballots of reasonable length. *See id.* Accordingly, challenges to nomination papers do not amount to any kind of unsanctioned, "class-based, invidious discrimination." *Cf. Martin*, 830 F.2d at 258. Therefore, the Court must dismiss Plaintiffs' conspiracy claim.

### 2. Plaintiffs have Failed to Plead Sufficient Factual Allegations of a Conspiratorial Agreement.

In addition to their inability to state an underlying cause of action, Plaintiffs cannot support allegations that Reed Smith was part of a conspiratorial agreement. In order to survive a Rule 12(b)(6) motion to dismiss, Plaintiffs must "allege a plausible entitlement to relief by setting forth any set of facts consistent with the allegations." *Shirk v. Garrow*, 505 F. Supp. 2d 169, 172 (D.D.C. 2007) (citing *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1967, 1969 (2007)); *see also Kopff v. World Research Group, LLC*, 519 F. Supp. 2d 97, 98-99 (D.D.C. 2007). Plaintiffs' "obligation to provide the grounds of [their] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

not do." *Shirk*, 505 F. Supp. 2d at 173 (citing *Twombly*, 127 S.Ct. at 1964-65); *see also*

*Aktieselskabet AF 21 v. Fame Jeans, Inc.*, 511 F. Supp. 2d 1, 5 (D.D.C. 2007) ("While a

complaint need not plead detailed factual allegations, the factual allegations it does include must

be enough to raise a right to relief above the speculative level."). Plaintiffs' complaint must give

fair notice to Defendants of what the Plaintiffs' claims are and the grounds upon which those

claims rest. *Id.* at 171 (citing *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C.

Cir. 2003)). Here, Plaintiffs' broad, conclusory statements regarding Reed Smith's membership

in an alleged conspiracy is insufficient to survive a motion to dismiss.

Plaintiffs rely on allegations of a general nationwide conspiracy to keep Nader-Camejo

out of the 2004 general election. The Complaint contains a laundry list of supposed wrongdoing

by the alleged conspirators, but is devoid of the essential allegation that *Reed Smith* entered into

any agreement. *See United Elec., Radio & Mach. Workers of Am. v. Gen. Elec. Co.*, 231 F.2d

259, 262 (D.C. Cir. 1956) (dismissing § 1985 claims because plaintiffs failed to prove any

conspiracy). For instance, Plaintiffs describe a July 2004 meeting at the Four Seasons where

"the organizers and leaders of the conspiracy met privately to discuss their plans." Compl. ¶ 47;

*see also id.* ¶¶ 48-54 (alleging events and discussions at the meeting). However, Plaintiffs do not

allege that any member of Reed Smith attended this meeting.[6] *See id.* Plaintiffs allege that the

DNC, the Kerry-Edwards Campaign and The Ballot Project "orchestrated a nationwide

conspiracy," but never allege that Reed Smith had a role in orchestrating the conspiracy.[7] *See id.*

---

[6] The Court must assume that Plaintiffs do not intend the use of the general term "conspirators" to cover Reed Smith in this paragraph of the complaint, because Plaintiffs do not name Reed Smith. Plaintiffs make it very clear in ¶ 15 that, unless explicitly stated, not all allegations apply to "every Defendant and every Conspirator or co-Conspirator named in this complaint." Therefore, the Court must conclude that only the specific use of a Defendant's name denotes a charge against that Defendant.

[7] Reed Smith does not concede that any of the conduct alleged against any of the other alleged
Continued on following page

¶¶ 46-67. They name alleged conspirators that distributed an action memo at the Democratic

National Convention, but do not name Reed Smith among them. *See id.* ¶¶ 51-52.

Although it is true that Plaintiffs need not allege an express agreement among all alleged

co-conspirators, Plaintiffs still must allege an improper agreement between Reed Smith and at

least one alleged conspirator. *See Hobson v. Wilson*, 737 F.2d 1, 51 (D.C. Cir. 1984); *Exec.*

*Sandwich Shoppe*, 749 A.2d at 738 (requiring an agreement between two or more persons).

Plaintiffs do not do so. *See generally* Compl.

Plaintiffs attempt to gloss over the lack of an agreement by alleging that Reed Smith and

its clients participated in nomination paper challenges similar to those in several states. *See, e.g.,*

Compl. ¶¶ 101-102. Even if activities by Reed Smith or its clients were similar to activities by

others, such similarity does not establish an "agreement," and allegations merely describing

similar activity do not support a conspiracy. *See, e.g., Twombly*, 127 S.Ct. at 1964-66 (holding

in an antitrust context that "lawful parallel conduct fails to bespeak unlawful agreement";

"[e]ven 'conscious parallelism'… is 'not in itself unlawful'"); *Theatre Enters., Inc. v.*

*Paramount*, 346 U.S. 537, 540-41 (1954) (holding that parallel conduct without an agreement

does not establish a conspiracy); *U.S. Football League v. NFL,* No. 84 CIVIL 7484 PKL, 1986

WL 10620, 23 (S.D.N.Y. 1986) ("[S]imply because several people associated with one another,

or met together and discussed common interests, or engaged in similar conduct does not

necessarily establish the existence of a conspiracy.  If their actions were taken … without any

agreement or mutual understanding among them, then there would be no conspiracy.").

Plaintiffs would have the Court infer a conspiratorial agreement by noting that Reed

_____

Continued from previous page

Defendant "conspirators" was conspiratorial, or that any Defendant engaged in a conspiracy.

Smith has had professional relationships with one or more of the Defendants. For instance, Plaintiffs allege that Teresa Heinz Kerry and John Kerry have been Reed Smith clients. *See* Compl. ¶ 99. Yet, again, Plaintiffs have not alleged any agreement between Reed Smith and the Kerry's regarding the presidential election, litigation against Mr. Nader, or any issue related to Plaintiffs' instant claims. There is no basis to infer a conspiracy between Reed Smith and its clients simply because the firm has previously represented the clients on unrelated matters.

Further, even if a client were involved in a conspiracy – which Reed Smith does not concede – any conspiratorial conduct cannot be imputed to the law firm because it was acting as an agent for its client. *See Fraiden v. Weitzman*, 611 A.2d 1046, 1079 (Md. App. 1993) (stating that an attorney is not responsible for wrongs attributed to the client where the attorney's participation is within the scope of legal representation), *cited in Fischer v. Flax*, 816 A.2d 1, 5 (D.C. 2003). Because Reed Smith has represented its clients in lawful litigation, Plaintiffs' conspiracy claim cannot survive Reed Smith's motion to dismiss. *See id.*; 25 P.S. § 1937 (authorizing Pennsylvania voters to challenge nomination papers and awards of costs).

Moreover, the U.S. Supreme Court has explained that a conspiracy claim can avoid a motion to dismiss only if it sets forth facts inconsistent with lawful, non-conspiratorial explanations for the actions of an alleged conspirator. *See Twombly*, 127 S.Ct. at 1964-67 (holding that plaintiffs failed to satisfy the pleading standard of Rule 8(a)(2) in pleading their conspiracy claim, where the conduct alleged could describe lawful behavior). Here, Reed Smith's alleged conduct is entirely consistent with the lawful, non-conspiratorial representation of Pennsylvania voters to challenge the Nader-Camejo nomination papers. Therefore, the Court should dismiss Plaintiffs' conspiracy claim as to Reed Smith.

- 13 -

**D.    This Court Has Already Held that the Noerr-Pennington Doctrine Immunizes Defendants from Liability for Their Conduct.**

When this Court dismissed Plaintiffs' common law claims, the Court resolved the issue of whether Defendants' conduct is protected under the *Noerr-Pennington* doctrine, finding that Defendants had a First Amendment right to challenge the Nader-Camejo nomination papers. *Nader*, No. 07-2136-RMU, slip op. at 22-28. Accordingly, the *res judicata* claim preclusion and collateral estoppel (*i.e.,* issue preclusion) principles bar Plaintiffs' recovery for Defendants' alleged misconduct.

As noted above, *res judicata* claim preclusion principles preclude Plaintiffs' relitigation of claims and arguments that were or should have been raised in an earlier suit. *NRDC v. EPA*, 513 F.3d at 261. Similarly, the *res judicata* collateral estoppel bar "is aimed at preventing relitigation of issues previously resolved." *Id.* (citations omitted). Here, claim preclusion bars any attack on Defendants' conduct based on alleged violations of constitutional rights, because Plaintiffs already sued on Defendants' conduct in their action claiming common law abuse of process, malicious prosecution and civil conspiracy. *See supra* Section II.B; *Nader*, No. 07-2136-RMU, Am. Compl; *Allen,* 449 U.S. at 94 (judgment on the merits precludes relitigation of issues that were or could have been raised in that action); *NRDC v. Thomas,* 838 F.2d at 1252 (*res judicata* bars relitigation of matters that could have been raised in a previous litigation). Collateral estoppel bars Plaintiffs' claims here because this Court already examined the applicability of the *Noerr-Pennington* doctrine. *See Nader*, No. 07-2136-RMU, slip op. at 22-25.

On May 27, 2008, this Court held that the *Noerr-Pennington* doctrine bars Plaintiffs' claims seeking liability for Defendants' actions. *See id.* The Court recognized that "[t]he *Noerr-Pennington* doctrine holds that defendants who petition the government for redress of grievances, 'whether by efforts to influence legislative or executive action or by seeking redress

- 14 -

in court,' are immune from liability for such activity under the First Amendment." *Id.* at 22

(citing *Covad Comm'cns Co. v. Bell Atlantic Corp.*, 398 F.3d 666, 677 (D.C. Cir. 2005); *Eastern*

*R.R. Presidents Conf. v. Noerr Motor Freight Inc.*, 365 U.S. 127, 138 (1961); *Cal. Motor Transp.*

*Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)); *see also United Mine Workers v.*

*Pennington*, 381 U.S. 657 (1968).

    The actions that Plaintiffs challenged in Case No. 07-2136-RMU – and that they

challenge in this case – were Defendants' actions in bringing suits to challenge the Nader-

Camejo nomination papers allegedly to prevent Nader from competing with the Democratic

candidate, John Kerry. *See, e.g., Nader*, No. 07-2136-RMU, slip op. at 22-25. This Court held

that Defendants were exercising their First Amendment rights, and thus were immune from

liability for their conduct. *Id.*; *see also Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns,*

*Inc.,* 858 F.2d 1075, 1084 (5th Cir. 1988) (finding *Noerr-Pennington* precluded defendant's

liability as a conspirator in violation of civil rights under 42 U.S.C. § 1983).

    Defendants' actions in filing "good-faith" lawsuits challenging the Nader-Camejo

nomination papers are the types of actions protected by the *Noerr-Pennington* doctrine. *See*

*Whelan v. Abell*, 48 F.3d 1247, 1253 (D.C. Cir. 1995). Yet, Plaintiffs allege that Defendants

challenged the Nader-Camejo nomination papers with the self-serving and improper motive of

aiding Defendants' preferred candidate. Notwithstanding, this Court has held that no exceptions

apply to Defendants' immunity from liability, stating that "[t]he First Amendment cannot be

abrogated simply by alleging that one's political opponent turned to the judicial process for

partisan motives." *Nader*, No. 07-2136-RMU, slip op. at 25 (finding that the sham exception did

not apply to negate Defendants' immunity from liability because the nomination challenges were

not "objectively baseless") (citing *Prof. Real Estate Investors, Inc. v. Columbia Pictures Indus.*,

508 U.S. 49, 60-61 (1993)). Accordingly, even if Plaintiffs' allegations were true, such partisan motives are insufficient to find Defendants liable for their conduct. *See id.*

The Court should defer to its previous ruling on these facts and find that Defendants are immune from liability in the instant action under the *Noerr-Pennington* doctrine. *See Thomas v. Powell*, 247 F.3d 260, 262-63 (D.C. Cir. 2001) (quoting *Montana v. United States,* 440 U.S. 147, 153 (1979)) ("[O]nce an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.").

### E.    Plaintiffs Cannot State a Claim under 42 U.S.C. § 1983.

Plaintiffs assert in Count I a claim of conspiracy to violate 42 U.S.C. § 1983, and in Count II a violation of 42 U.S.C. § 1983. Plaintiffs must show two essential elements to prove a § 1983 claim: that the complained-of conduct (1) deprived the plaintiff of rights, privileges, or immunities secured by the Constitution and laws of the United States, and (2) was committed by a person acting under color of state law. *See Weishapl v. Sowers*, 771 A.3d 1014 (D.C. 2001). Plaintiffs cannot plead any set of facts to support either element.

#### 1.    Plaintiffs Cannot Establish a Violation of any Right.

D.C. courts have emphasized that "the rights violated under color of state law *must* be one secured by the Constitution or federal law." *Weishapl*, 771 A.3d at 1023 (emphasis in original) (citing *Durso v. Taylor*, 624 A.2d 449, 455 (D.C. 1993). Here, Plaintiffs had no Constitutional or federal law rights that were violated.

In essence, Plaintiffs are complaining about Defendants' actions undertaken pursuant to the authority of state statutes. *See generally* Compl. Those statutes permit voters to challenge an individual's efforts to appear on a general election ballot. Reed Smith and its clients acted

pursuant to Pennsylvania Statute § 2937 in challenging the Nader-Camejo nomination papers. P.S. § 2937 (authorizing voter challenges and an award of costs in cases where a petition is dismissed). In so doing, Reed Smith did not violate any of Plaintiffs' Constitutional rights.

Insofar as Plaintiffs' claims are based on alleged violations of the Fourteenth Amendment, Defendants' challenges did not violate Plaintiffs' equal protection rights. No individual, including Ralph Nader, has a "right" to be elected to an office. *See Clements v. Fashing*, 457 U.S. 957, 963 (1982) (finding there is no "fundamental right" to run for office); *Turner v. Fouche*, 396 U.S. 346, 362-63 (1970). The state may deny to some the privilege of holding public office that it extends to others as long as it does not do so "on the basis of distinctions that violate federal constitutional guarantees." *See Turner*, 396 U.S. at 362-63 (stating that the Constitution protects against only "invidiously discriminatory disqualification" of candidates for public service).

There has been a specific finding of constitutionality of Pennsylvania's ballot access requirements. *See Rogers v. Corbett*, 468 F.3d 188, (3rd Cir. 2006), *cert. denied* 128 S.Ct. 288 (Oct. 1, 2007) (holding that Pennsylvania's ballot access requirements did not impose an unreasonable burden, and did not violate the First or Fourteenth Amendments). Further, the U.S. Supreme Court has endorsed state statutes that impose requirements for qualification of new parties and independent candidates for ballot positions, recognizing a state's compelling interest in maintaining a ballot of reasonable length. *See Storer v. Brown*, 415 U.S. 724, 729-36 (1974); *Am. Party of Texas v. White*, 415 U.S. 767, 779-88 (1974). Reviewing under a strict test the requirements for qualification of independent candidates for ballot positions, the Supreme Court has recognized valid objectives in maintaining the integrity of the nominating and electing process, the promotion of party stability, and regulating the size of the ballot by requiring a

showing of some degree of support for independents before they can get on the ballot. *Storer*, 415 U.S. at 729-36. Independent candidates can be required to obtain a certain number of signatures as a condition to obtain ballot space. *See Am. Party of Texas*, 415 U.S. at 788-91.

As for Plaintiffs' First Amendment rights, Plaintiffs wanted Nader-Camejo to appear on general election ballots despite Nader-Camejo's failure to satisfy state requirements for a ballot position. Any conduct by Defendants that contributed to Nader-Camejo's absence from general election ballots – i.e., by revealing Nader-Camejo's ballot ineligibility – did not violate Plaintiffs' First Amendment rights. The Supreme Court held just two months ago that ballots serve primarily to elect candidates, *and not as First Amendment forums for political expression*. *Washington State Grange v. Washington State Republican Party*, 128 S.Ct. 1184, 1193 n.7 (Mar. 18, 2008) (rejecting a party's contention that it had a right to use the ballot itself to send a political message to candidates and voters). Accordingly, neither Nader-Camejo nor the voter Plaintiffs had a First Amendment right to express themselves by having Nader-Camejo on the 2004 ballot.

Further, where, as here, a defendant acts in accordance with "politically neutral regulations" that are "narrowly tailored to serve a compelling state interest," the defendant has not impermissibly violated one's First Amendment "associational rights." *Id.* at 1191-92 (upholding a nonpartisan blanket primary system as non-violative of parties' associational rights, although each candidate could self-designate their party preference regardless of whether the political party endorsed the candidate or chose it as the party's nominee). In this case, Reed Smith acted in accordance with the politically neutral Pennsylvania ballot access statute, which serves the compelling state interest of ensuring a ballot of reasonable length that names candidates with adequate support. *See* P.S. § 2937.

- 18 -

Finally, insofar as Plaintiffs rely on the Qualifications Clause as the source of their constitutional deprivation, their claims must also fail. The Qualifications Clause provides the minimum eligibility requirements for an individual to serve as President of the United States. *See* Art. II, sec. 1, p. 5 ("No Person except a natural born Citizen...shall be eligible to the Office of President; neither shall any Person be eligible to that Office who shall not have attained to the Age of thirty five Years, and been fourteen Years a Resident within the United States."). However, merely meeting the minimum requirements for the office does not give an individual the right to appear on the ballot. *See Clements*, 457 U.S. at 963 (finding no right to run for office).

The Supreme Court has long declared that states have the "undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot, because it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983); *see also Storer*, 415 U.S. at 746 n.16; *Am. Party of Texas*, 415 U.S. at 779-88; *Jenness v. Fortson*, 403 U.S. 431, 442 (1971) (upholding a requirement that independent candidates demonstrate support by obtaining signatures amounting to 5% of total registered voters in previous election). Therefore, any requirements that are procedural in nature (such as garnering signatures) do not violate the Qualifications Clause. *See, e.g., Cartwright v. Barnes*, 304 F.3d 1138, 1144 (11th Cir. 2002) (holding signature requirement was procedural in nature and therefore did not violate Qualifications Clause); *Libertarian Party of Illinois v. Rednour*, 108 F.3d 768, 777 (7th Cir. 1997) ("[W]here requirements are procedural in nature and do not add substantive qualifications, they do not violate the Qualifications Clause."); *cf. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 835 (1995) (finding that requirements for candidates to demonstrate measure of support were

constitutional because they "regulated election *procedure* [ ] and did not even arguably impose

any substantive qualification."). Because Nader-Camejo failed to meet the procedural

requirements to get on the ballot in states, Plaintiffs cannot claim a constitutional deprivation

under the Qualifications Clause.

### 2. Plaintiffs Cannot Establish that Defendants Acted Under Color of State Law.

Plaintiffs' inability to demonstrate the "deprivation of rights" element of a § 1983 claim

defeats their claims entirely. Yet, Plaintiffs are also unable to establish the second element: that

Defendants acted under color of state law. *See Weishapl*, 771 A.2d at 1022.

"The traditional definition of acting under color of state law requires that the defendant in

a § 1983 action have exercised power 'possessed by virtue of state law and made possible only

because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42,

49 (1988); *see also Weishapl*, 771 A.2d at 1023 (citations omitted). Here, no state, including the

Commonwealth of Pennsylvania, clothed Reed Smith with state authority. Reed Smith

represented its clients in nomination paper challenges pursuant to Pennsylvania statute, but a

party's reliance on, or actions pursuant to, a state statute is not enough. *Lugar v. Edmondson Oil

Co., Inc.*, 457 U.S. 922, 923, 938 (1982). The U.S. Supreme Court has held that private parties

should not "face constitutional litigation whenever they seek to rely on some state rule governing

their interactions with the community surrounding them." *Id.* at 938.

Plaintiffs allege "state action" by alleging that Reed Smith worked "in cooperation with"

legislative aides that volunteered to assist with the Nader-Camejo ballot challenges, and those

aides received state-funded bonuses. *See, e.g.,* Compl. ¶¶ 75-76. First, Reed Smith does not act

under color of state law simply by working alongside public employees. Second, the mere fact

that some volunteers were legislative aides does not make them state actors. *See Screws v. U.S.*,

325 U.S. 91, 111 (1945) (plurality opinion); *West*, 487 U.S. at 50.

Decisions by the Supreme Court make clear that a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law. *West*, 487 U.S. at 5. The Court should examine whether one is exercising powers traditionally exclusively reserved to the State. *See Ceasar v. CBS Headquarters Co.*, No. 06-2140 (PLF), 2008 WL 313146 (D.D.C. Feb. 4, 2008) (citation omitted). "Acts of [public employees] in the ambit of their *personal pursuits* are plainly excluded." *Screws*, 325 U.S. at 111 (emphasis added); *see also Smith v. Jenkins*, No. 87-6585, 1989 WL 89105, *2 (E.D. Pa. 1989). The "color of law" requirement of § 1983 excludes from the reach of § 1983 all "merely private conduct, no matter how discriminatory or wrongful." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). The Complaint does not establish that public employees that volunteered time for political activities acted within their official capacities.

Whether the state gave the legislative aides bonuses after their work on the Nader-Camejo challenges is of no consequence. Financial assistance by the state does not establish that those receiving the assistance acted under color of state law. *See Mentavlos v. Anderson*, 249 F.2d 301 (4th Cir. 2001). While substantial state assistance may be a factor to be considered in determining whether the state has coerced or significantly encouraged private action, "a private party's dependence upon the state for assistance, even if substantial, does not transform its actions into actions of the state," for purposes of liability under § 1983. *Id.* at 319; *see also id.* at 320-21. Mere approval or acquiescence by a state that provides encouragement *after the fact* is not sufficient to justify holding that a private person's action is state action or action under color of state law. *See id.* at 318.

Thus, in this case, even accepting Plaintiffs' allegations as true (for the purpose of this

motion), Reed Smith's acceptance of assistance from Pennsylvania public employees did not

convert Reed Smith's representation of its voter clients into action under color of state law, even

if the public employees subsequently received bonuses for their work on "election campaigns,"

including the "Nader effort." *See* Compl. ¶ 76.

Because Plaintiffs cannot state any set of facts to establish that Defendants violated any

of Plaintiffs' constitutional or federal rights, or that Defendants did so under color of state law,

the Court must dismiss Plaintiffs' claims.

**F.     Plaintiffs' Claims are Time-Barred.**

In addition to the reasons stated above, the Court should also dismiss Plaintiffs' claims

because they are time-barred. The statute of limitations for a § 1983 claim in the District of

Columbia is three years. A federal claim under § 1983 does not have its own statute of

limitations, and instead borrows from analogous causes of action for personal injury under D.C.

law. *See Smith-Haynie v. District of Columbia*, 155 F.3d 575, 577 n.1 (D.C. Cir. 1998). D.C.

courts have held that the three-year residual statute of limitations found in D.C. Code § 12-

301(8) applies to actions brought under § 1983. *See id.*; *Turner v. District of Columbia*, 383 F.

Supp. 2d 157, 168 (D.D.C. 2005). The "injuries" Plaintiffs complain of – depriving Mr. Nader

and Mr. Camejo from appearing on 2004 general election ballots, expending financial resources

to defend ballot-challenge litigation, and not being able to vote for the Nader-Camejo ticket – all

are injuries that accrued outside the three year statute of limitations for the § 1983 claims.

Plaintiffs filed this action on April 4, 2008. The underlying litigation involving Reed

Smith concluded, at the very latest, on January 10, 2005, when the United States Supreme Court

denied the Nader-Camejo campaign's petition for writ of certiorari. *See In re Nader*, 543 U.S.

1052. The further proceedings and appeals regarding the assessment of costs were purely

collateral matters that did not affect the underlying result denying the names of Mr. Nader and Mr. Camejo from appearing on the Pennsylvania ballot. The three year limitations period therefore should have expired on January 10, 2008. Plaintiffs filed this case three months after the limitations period expired. Therefore, Plaintiffs' claims are time-barred.

### G.    Plaintiffs Are Not Entitled to Injunctive Relief

This Court has already held that Plaintiffs are not entitled to injunctive relief. In its May 27, 2008 Memorandum Opinion deciding motions to dismiss the action based on the same factual allegations, and seeking the same relief, the Court found that "[Plaintiffs] seek relief that is simply inappropriate." *Nader*, No. 07-2136-RMU, Mem. Op. at 13. The Court held that it cannot enjoin Defendants "from engaging in 'future violations of law' in respect to Nader's ballot eligibility in 2008." *Id.* The Court further held that it is inappropriate for the Court to grant injunctive relief regarding the proceedings to enforce the Pennsylvania judgment of costs against Nader. *See id.* (citing Fed. R. Civ. P. 60). The Court found that Plaintiffs "cannot provide a basis for enjoining hypothetical future violations of the law." *Id.* at 13-14 (citations omitted). Accordingly, the Court should reject Plaintiffs' prayer for injunctive relief.

## III.    CONCLUSION

For the foregoing reasons, the court should grant Defendant Reed Smith's motion to dismiss the Complaint.


DATED June 6, 2008.

Respectfully submitted,

REED SMITH LLP

_____/s/_____

Douglas K. Spaulding
D.C. Bar No. 936948
Lasagne A. Wilhite
D.C. Bar No. 475438
REED SMITH LLP
1301 K Street, N.W.
Suite 1100 - East Tower
Washington, D.C.  20005-3373
Telephone:   202.414.9200
Facsimile:    202.414.9299

*Counsel for Defendant Reed Smith*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RALPH NADER, et al.,

                Plaintiffs,

     v.

THE DEMOCRATIC NATIONAL
COMMITTEE, et al.,

                Defendants.

Civil Action No.: 1:08-cv-00589-RMU

## ORDER

Upon consideration of Defendant Reed Smith's Motion to Dismiss, Plaintiffs' response thereto and Reed Smith's reply, it is hereby

**ORDERED** that Defendant's motion is **GRANTED**; it is further

**ORDERED** that all of Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

Entered this _____ day of _____, 2008.

_____
RICARDO M. URBINA
United States District Court Judge

Copies to be served on all parties
via the Court's ECF/Pacer System

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2008, I electronically filed Defendant Reed Smith's

motion to dismiss, memorandum of law in support and proposed order with the Clerk of the

Court by using the Court's CM/ECF system, which will cause copies of the foregoing to be

served upon the following parties:

> Joseph E. Sandler, Esq.
> John Hardin Young, Esq.
> Sandler, Reiff & Young
> 50 E Street, S.E., #300
> Washington, DC  20003
>
> *Counsel for Defendant The Democratic*
> *National Committee*
>
> Mark E. Elias, Esq.
> Perkins Coie
> 607 14th Street, N.W.
> Washington, DC  20005
>
> *Counsel for Defendants John Kerry and*
> *Kerry-Edwards 2004, Inc.*
>
> Oliver B. Hall, Esq.
> 1835 16th Street, N.W.
> Washington, DC  20009
>
> *Counsel for Plaintiffs Ralph Nader, Peter*
> *Miguel Camejo, D.B. Fanning, C.K. Ireland,*
> *Julie Coyle, Herman Blankenship, Lloyd*
> *Marbet and Gregory Kafoury*

/s/
_____
Lasagne A. Wilhite
