## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **RALPH NADER, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **Civil Action No.: 1:08-cv-00589-RMU** |
| | : | |
| **DEMOCRATIC NATIONAL COMMITTEE, et. al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## PLAINTIFFS' OPPOSITION AND RESPONSE
## TO DEFENDANTS' MOTIONS TO DISMISS

### INTRODUCTION

Defendants Democratic National Committee ("DNC"), Kerry-Edwards 2004, Inc. and John Kerry (together, the "Kerry Defendants") and Reed Smith, LLP have each filed separate motions to dismiss Plaintiffs' Complaint. For the sake of efficiency and as a convenience to the Court, Plaintiffs address all three motions in this one Opposition and Response. Plaintiffs begin by identifying specific allegations in the Complaint that Defendants fail to address, each of which creates a question of fact that precludes dismissal. Plaintiffs then address the following issues that Defendants raise: 1) whether the doctrine of *res judicata* bars Plaintiffs' claims; 2) whether the *Noerr-Pennington* doctrine bars Plaintiffs' claims; 3) whether Plaintiffs allege a) a violation of constitutional rights and b) "state action" for purposes of Section 1983; 4) whether Plaintiffs allege a conspiracy; and 5) whether Plaintiffs' claims are time-barred. Because Defendant DNC expressly relies upon and incorporates certain arguments made by its co-Defendants in the related actions pending before the Court, Plaintiffs address such arguments as

necessary and likewise incorporate their prior responses to those arguments herein,

particularly with respect to whether Plaintiffs have alleged sufficient facts to support their

conspiracy claims and the "state action" element of their Section 1983 claims. In

addition, as an aid to the Court's scrutiny of allegations in the Complaint, Plaintiffs

submit herewith the attached affidavit, which includes several corroborating documents

referenced therein.[1]

### ALLEGATIONS OF THE COMPLAINT

In February 2004, DNC Chairman Terry McAuliffe publicly stated on national

television that the Democratic Party could not win the 2004 presidential election if voters

were permitted the choice of voting for a competing candidate. "We can't afford to have

Ralph Nader in the race," Mr. McAuliffe declared. Comp. ¶ 2. Thus, when Mr. Nader

announced his candidacy, the DNC and its allies resorted to the courts to accomplish

what they believed themselves to be incapable of achieving at the polls. In eighteen state

courts, Defendants and their co-conspirators challenged the right of Mr. Nader and his

running mate, Peter Miguel Camejo, to run as candidates for public office, filing a total of

twenty-four complaints against them. Comp. ¶ 3. "We wanted to neutralize his campaign

by forcing him to spend money and resources defending these things," said Toby Moffett,

who was in charge of recruiting Defendants' lawyers, "but much to our astonishment

we've actually been more successful than we thought we'd be in stopping him from

getting on [state ballots] at all." Comp. ¶ 63. Defendant Kerry approved of and, through

---

[1] Each document referenced in Plaintiffs' Complaint is included in the appendix of a related complaint
Plaintiff Ralph Nader filed against these Defendants and others with the Federal Election Commission on
May 30, 2008, which the FEC assigned Matter Under Review number 6021. To avoid any possible
prejudice to Defendants, Plaintiffs file the attached affidavit in lieu of the FEC complaint, and will submit a
copy of such complaint only upon the Court's request.

his agents, paid staff and lawyers recruited by Kerry-Edwards 2004, Inc., directly participated in this effort. Comp. ¶¶ 60, 66.

Defendants knew that unless they interfered, Mr. Nader would qualify for most state ballots, as he had done in the 2000 presidential election, and that litigation alone would be insufficient to stop him. Comp. ¶ 68. Defendants therefore organized and conducted campaigns of harassment, intimidation and sabotage that were specifically intended to prevent the Nader-Camejo Campaign from complying with state election laws, and to manufacture grounds for Defendants' otherwise baseless litigation. Comp. ¶ 68. Pursuant to this effort, Nader-Camejo nomination conventions were disrupted and infiltrated under false pretenses, causing them to fail. Comp. ¶¶ 68-71. Nader-Camejo nomination petitions were systematically sabotaged by people who signed thousands of fake names, crossed names out or otherwise took measures to invalidate the petitions. Comp. ¶¶ 68-71. Nader-Camejo petitioners were also subpoenaed, ordered to attend depositions and falsely threatened with large civil fines, criminal conviction and lengthy prison sentences. Comp. ¶¶ 69-70. One Nader-Camejo petitioner, a grandmother with a heart condition, was "up all last night with worry" after receiving such threats from two private investigators who appeared on her doorstep. Affdvt. Ex. A.

Based on these and other facts set forth in the Complaint, Plaintiffs allege that Defendants violated their constitutional rights by conspiring with the specific intent of restraining their participation as qualified candidates and voters in the 2004 presidential election. Specifically, Plaintiffs allege the following:

1. Defendants conspired with the specific intent of preventing Mr. Nader and Mr. Camejo from gaining ballot access as qualified candidates in the 2004 presidential election by using groundless and abusive litigation and other

means to cause them financial injury and bankrupt their campaign, Comp. ¶¶ 1, 4, 46, 52, 63, 67;

2. Defendants conspired with the specific intent of preventing Mr. Nader and Mr. Camejo from gaining ballot access as qualified candidates in the 2004 presidential election by sabotaging their nomination papers and otherwise obstructing their compliance with state election laws, Comp. ¶¶ 6-8, 67-72;

3. Defendants conspired with the specific intent of denying Plaintiff-voters' right to vote for qualified candidates in the 2004 presidential election by preventing Mr. Nader and Mr. Camejo from gaining ballot access despite their qualification and in violation of their rights under state and federal law, Comp. ¶¶ 1, 8, 63, 67.

4. Defendants conspired with the specific intent to cause Plaintiffs personal financial injury and, in furtherance of such conspiracy, fraudulently procured a groundless and unprecedented money judgment against Plaintiffs, in violation of Plaintiffs' right to due process, which Defendants continue to pursue. Comp. ¶¶ 86-98.

In short, Defendants deliberately deprived Plaintiffs of their freedom of speech, petition and assembly precisely when such rights are most valuable – during a federal election. As the Fourth Circuit recently held, "both the First Amendment and 42 U.S.C. § 1983 exist in significant part to deter the kind of deeds perpetrated by defendants on election day." *Rossignol v. Voorhaar*, 316 F.3d 516, 526 (4th Cir. 2003) (conspiracy to suppress political criticism in electoral arena actionable under Section 1983). Plaintiffs' claims thus fall in a long line of cases in which disenfranchised minorities and dissident groups turn to the federal courts for vindication of their constitutional rights. *See, e.g.*, *NAACP v. Alabama*, 357 U.S. 449 (1958) (African-Americans); *Sweezy v. New Hampshire*, 354 U.S. 234 (1957) ("subversive persons"); *De Jonge v. State of Oregon*, 299 U.S. 353 (1937) (communists).

Defendants predictably object to Plaintiffs' allegations, and go to great lengths to convey the impression that *they*, rather than Plaintiffs, are the aggrieved parties in this

4

action. *See*, *e.g.*, Kerry Mem. at 2 ("This is the third suit…"); Reed Smith Mem. at 1 ("This is the *fourth* iteration…"); DNC Mem. at 2 ("This is at least the fifth complaint…"). Such histrionics are irrelevant and unwarranted. Defendants filed *twenty-four* groundless and abusive complaints against Plaintiffs virtually simultaneously in eighteen states during the 2004 presidential election, Comp. ¶¶ 3-4; Defendants engaged in sabotage, harassment and intimidation to restrain Plaintiffs' participation in that election, Comp. ¶¶ 68-72; and Defendants continue to pursue groundless and abusive claims nearly *four years* after they first sued Plaintiffs, by attaching Mr. Nader's personal bank accounts in satisfaction of a judgment that they procured fraudulently and in clear violation of Plaintiffs' right to due process. Comp. ¶¶ 10, 89-98. Defendants' hyperbole notwithstanding, their pretensions to victimhood do not square with the facts.

This action was commenced on October 30, 2007, when Plaintiffs filed suit in the Superior Court of the District of Columbia, alleging state law claims for abuse of process, malicious prosecution and civil conspiracy, as well as federal claims under 42 U.S.C. § 1983. On October 31, 2007, Plaintiffs filed a related action against different defendants in the Eastern District of Virginia. On November 27, 2007, Defendants removed this case from the Superior Court. Thereafter, Plaintiffs discovered new evidence that employees of the state of Pennsylvania had participated in Defendants' conspiracy and received taxpayer-funded compensation for their efforts. Plaintiffs therefore filed an amended complaint in this Court on January 23, 2008, dismissing their federal claims without prejudice in order to consolidate them, together with the allegations based on the newly discovered evidence, in the Eastern District of Virginia. Without ruling on the merits of Plaintiffs' motion to amend, however, the Eastern District of Virginia transferred that

action to this Court on March 7, 2008. Accordingly, to promote judicial economy and to avoid unnecessary motions practice, Plaintiffs re-filed their federal claims in the instant action on April 4, 2008.

Throughout these proceedings, Defendant Reed Smith has continued to assert its claim to $61,638.45 in Mr. Nader's personal bank accounts, which the firm attached on July 17, 2007, in satisfaction of a Pennsylvania state court judgment ordering Mr. Nader and Mr. Camejo to pay the firm $81,102.19 in litigation costs. Comp. ¶ 89. Reed Smith procured this unprecedented judgment in proceedings during which, among other improprieties, *the firm was simultaneously appearing before (as the true party in interest) and representing (as defense counsel in an ethics probe) the presiding Chief Justice, who voted to affirm judgment in Reed Smith's favor.*[2] Comp. ¶ 90. Defendants cannot cite any authority for their view that Reed Smith may simultaneously represent and appear before a judge as the true party in interest seeking to collect a money judgment from Plaintiffs, without disclosing such representation on the record, but Defendants have maintained this indefensible position for *eleven months* since Reed Smith froze Mr. Nader's personal funds. Indeed, Defendants maintain this position even though it clearly contradicts numerous decisions of the Supreme Court of the United States, which hold that vacatur is warranted where such improprieties destroy the appearance of impartiality. *See Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 865 n.12 (1988) ("to perform its high function in the best way, justice must satisfy the appearance of justice") (citations omitted); *In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a

---

[2] Further improprieties warranting vacatur are set forth in detail in the motion to vacate that Plaintiffs filed in the Superior Court of the District of Columbia on November 7, 2007, a copy of which Plaintiffs filed with this court on March 31, 2008. *See Nader*, 07-2136, Docket No. 44.

6

basic requirement of due process"); *Klapprott v. United States*, 335 U.S. 601, 615 (1949) ("Fair hearings are in accord with elemental concepts of justice").

Defendant Reed Smith seeks to diminish the impact of its misconduct by denying Plaintiffs' allegations that the firm is the true party in interest in the attachment proceedings, and by denying that the firm seeks to garnish Mr. Nader's personal funds in furtherance of Defendants' conspiracy to cause him financial injury. Reed Smith Mem. at 4-5, 10-13; *see* Comp. ¶¶ 8-10, 12, 67, 102. Thus, Reed Smith repeatedly claims to be acting "on behalf of their clients" in seeking to enforce its unprecedented judgment against Mr. Nader. Reed Smith Mem. at 4-5. Not only does this claim contradict Plaintiffs' allegations, but it also contradicts Reed Smith's own prior representations. Specifically, on February 1, 2007, Reed Smith partner Efrem Grail wrote in a letter to counsel for Mr. Camejo that "the partners in my law firm…are the holders of the judgment against your client Peter Camejo, and also against Ralph Nader." Affdvt. Ex. B. In a separate email sent on February 11, 2007, Attorney Grail writes, "We will…begin collection of our judgment against Mr. Nader." *See id.* Clearly, therefore, Reed Smith is acting on its own behalf, as the true party in interest seeking to seize Mr. Nader's personal funds.

This fact is particularly significant because Reed Smith's two co-Defendants in this action are also important clients of the firm. Defendant DNC and Defendant Kerry both retained Reed Smith in matters arising from the 2004 general election, and Defendant Kerry's wife, Teresa Heinz Kerry, "is still a major and active client." Comp. ¶¶ 98-99. Reed Smith's conduct on its own behalf to seize Mr. Nader's personal funds in satisfaction of an unprecedented and fraudulently procured judgment thus supports

Plaintiffs' allegation that such conduct constitutes ongoing activity in furtherance of Defendants' conspiracy. Comp. ¶¶ 101-02. On May 10, 2007, Mr. Nader personally notified Defendant Kerry that Reed Smith was taking steps to enforce this judgment, and that "it is unclear whether Reed Smith is pursuing this matter because you, Teresa and the Democratic National Committee have been their clients." Affdvt. Ex. C. On January 17, 2007, Mr. Nader also informed DNC Chairman Howard Dean of Reed Smith's conduct, as well as the fact that the DNC, under former Chairman McAuliffe, had retained Reed Smith during the 2004 General Election. Affdvt. at 2. Reed Smith nevertheless continues to pursue its ongoing acts in furtherance of Defendants' conspiracy.

## ARGUMENT

### I.    Defendants' Attempt to Deny or Ignore Allegations in the Complaint Is Insufficient as a Matter of Law to Support Their Motions.

In clear violation of the standard governing motions to dismiss under Federal Rule of Civil Procedure 12(b), Defendants seek to persuade the Court to reject Plaintiffs' allegations wholesale, and to accept their own factual assertions and legal conclusions instead. It is beyond dispute, however, that Defendants may not prevail on a motion to dismiss merely by denying allegations in the Complaint. *See Bell Atlantic v. Twombly*, 127 S. Ct. 1955 (2007). Defendants purport to rely on *Twombly*, but that case expressly reaffirms the well-settled principle that Plaintiffs' allegations must be "taken as true" at this stage of proceedings. *Twombly*, 127 S. Ct. at 1965. In *Twombly*, the Supreme Court held that, to state a claim for conspiracy (under the Sherman Act), a complaint must include "enough factual matter (taken as true) to suggest that an agreement was made." *Id.* at 1965-66. The Court emphasized, however, that it was not imposing "a probability requirement at the pleading stage," and that a well-pleaded complaint "may be supported

by showing *any set of facts* consistent with the allegations." *Id.* at 1965, 1969 (emphasis added) (citations omitted). Defendants' attempt to dispute such facts is therefore insufficient as a matter of law to support dismissal, and their motions must be denied for this reason alone. *See id.*

### A.  Defendants Fail to Establish Grounds for Dismissal Under Rule 12(b)(6).

Defendants' failure to establish grounds for dismissal under Rule 12(b)(6) is apparent on the face of their memoranda. At most, Defendants attempt to deny particular allegations in the Complaint, and in many cases Defendants do not even attempt to do that. Specifically, Defendants: 1) *deny* allegations that they conspired to bankrupt the Nader-Camejo Campaign; 2) *ignore* allegations that they engaged in sabotage and other unlawful acts; 3) *deny* allegations that they conspired to deprive Plaintiff-voters' right to vote for qualified candidates in a federal election; and 4) *ignore* allegations that they committed a fraud upon the court and violated Plaintiffs' right to due process. Even if Defendants' assertions were plausible – and they are not – they would only raise questions of fact that must be resolved in Plaintiffs' favor, precluding dismissal under Rule 12(b)(6). *See Twombly*, 127 S. Ct. at 1966 (*quoting Neitzke v. Williams*, 490 U. S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations"); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002); *Caribbean Broad. Sys. Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1086 (D.C. Cir. 1998) (quotation marks omitted).

### 1.  Defendants Fail to Address Allegations that They Conspired to Bankrupt the Nader-Camejo Campaign, Precluding Dismissal.

Plaintiffs allege:

"Defendants…conspired…to bankrupt the 2004 independent presidential campaign of Plaintiffs Ralph Nader and Peter Miguel Camejo…[by] using unfounded litigation to harass, obstruct and drain [the] campaign of resources, deny [the candidates] ballot access and effectively prevent [them] from running for public office." Comp. ¶ 1.

Plaintiffs further allege:

Defendants' "admitted purpose for bringing these lawsuits…was not to vindicate valid legal claims, but rather to bankrupt Nader-Camejo's campaign by forcing the candidates to spend their limited resources of time, talent and money on the defense of unfounded lawsuits." Comp. ¶ 4.

Plaintiffs further allege:

"Defendants…conspired to and did in fact…engage in other unlawful conduct in an effort to bankrupt the Nader-Camejo Campaign and terminate Nader-Camejo's candidacy during the 2004 presidential election," Comp. ¶ 12, and "Defendants' … efforts to bankrupt the Nader-Camejo Campaign produced its intended effect." Comp. ¶ 101.

In response, Defendant DNC asserts that "The costs of defending [Defendants' lawsuits] were a necessary by-product of our legal system," and "paying litigation costs are the expected consequences of those cases." DNC Mem. 07-2136, 23-24. Defendant DNC also asserts that "the law requires a challenge to be initiated in each state," *id.*, and "there is no constitutional right to be free of such challenges." DNC Mem. 08-00428 at 11. The Kerry Defendants do not address the allegation, except to concede that Defendants caused the Nader-Camejo Campaign "to expend resources during ballot access litigation." Kerry Mem. at 12. Defendant Reed Smith likewise fails to address the allegation, except to assert that Defendants filed ""good-faith" lawsuits challenging the Nader-Camejo nomination papers." Reed Smith Mem. at 15.

In short, Defendants deny the allegation that they intended to bankrupt the Nader-Camejo Campaign. At most, therefore, Defendants raise a question of fact regarding their subjective intent, which must be resolved in Plaintiffs' favor, precluding dismissal under

Rule 12(b)(6). *See Twombly*, 127 S. Ct. at 1966; *Browning*, 292 F.3d at 242; *Caribbean Broad. Sys. Ltd.*, 148 F.3d at 1086.

> **2. Defendants Fail to Address Allegations that They Conspired to Sabotage and Unlawfully Obstruct the Nader-Camejo Campaign's Effort to Comply with State Election Laws, Precluding Dismissal.**

Plaintiffs allege:

Defendants "organized and conducted campaigns of harassment, intimidation and sabotage to prevent the Nader-Camejo Campaign from complying with election laws in several states, and to manufacture grounds for the Conspirators' subsequent lawsuits." Comp. ¶ 6.

Specifically:

Defendants "engaged in a coordinated effort to disrupt two Nader-Camejo nominating conventions…causing them to fail," Comp. ¶ 70; "sabotaged Nader-Camejo's petitions under false pretenses by signing thousands of fake names," Comp. ¶ 71; engaged in acts "intended to harass and intimidate [Nader-Camejo] petitioners and prevent them from collecting signatures," Comp. ¶¶ 6-7; "hired private investigators to visit petitioners' homes and warn them that they were the subject of a "background check" the investigators were conducting," Comp. ¶ 69; hired lawyers "to subpoena 27 different petitioners…with demands…so unreasonable and burdensome that compliance would have prevented petitioners from doing anything else – including collecting signatures," Comp. ¶ 69, and hired lawyers to "falsely threaten[] petitioners with "conviction of a felony with a fine of up to $100,000 or prison for up to five years,"" Comp. ¶ 70.

Plaintiffs further allege:

Defendants' "campaign of harassment, intimidation and sabotage was decisive to the success of their litigation against Nader-Camejo," and "Nader-Camejo would have been [on state ballots] but for the Conspirators' unlawful interference." Comp. ¶ 72.

Defendants completely fail to address the foregoing allegations. Defendant DNC ignores them entirely, while the Kerry Defendants only offer a general assertion that "defendants who petition the government for redress of grievances, including through litigation in court, are immune from liability for such activity under the First Amendment." Kerry Mem. at 9. Defendant Reed Smith similarly asserts that "Any

conduct by Defendants that contributed to Nader-Camejo's absence from general election

ballots – i.e., by revealing Nader-Camejo's ballot ineligibility – did not violate Plaintiffs'

First Amendment rights." Reed Smith Mem. at 18.

In short, Defendants assert that they are immune from liability for all conduct in

furtherance of their conspiracy, but fail to address allegations that such conduct was

unlawful and not subject to First Amendment protections. Defendants' failure to address

such allegations thus raises a question of fact that precludes dismissal under Rule

12(b)(6). *See Twombly*, 127 S. Ct. at 1966; *Browning*, 292 F.3d at 242; *Caribbean Broad.*

*Sys. Ltd.*, 148 F.3d at 1086.

### 3. Defendants Fail to Address Allegations that They Conspired to Deprive Plaintiff-Voters' Right to Vote for Qualified Candidates in a Federal Election, Precluding Dismissal.

Plaintiffs allege:

Defendants "conspired…to deny Plaintiff-voters and others the choice of voting for [Nader-Camejo]," Comp. ¶¶ 1, with the specific intent "to suppress the candidates' speech and the Plaintiff-voters' rights of association," Comp. ¶ 63, "by denying voters their free choice of candidates in the 2004 presidential election," Comp. ¶ 67.

Plaintiffs further allege:

Defendants "engaged in acts…specifically intended to prevent Nader-Camejo from complying with state election laws." Comp. ¶ 68.

Plaintiffs further allege:

"Defendants…succeeded in draining Nader-Camejo's campaign of time, money and other resources, and in preventing them from gaining ballot access in several states, thereby denying voters in these states the choice of voting for them, as was their intent." Comp. ¶ 8.

In response, Defendant DNC asserts that "merely resorting to the courts and being

on the winning side of a [ballot access] lawsuit does not make [Defendants] responsible

for depriving a plaintiff of his rights." DNC Mem. at 5. The Kerry Defendants assert that

"There is no constitutional right to have one's candidate of choice appear on the ballot if

that candidate does not fulfill state ballot access requirements." Kerry Mem. at 12.

Defendant Reed Smith asserts that "Plaintiffs wanted Nader-Camejo to appear on general

election ballots despite Nader-Camejo's failure to satisfy state requirements." Reed Smith

Mem. at 18.

In short, Defendants deny the allegation that they intended to deprive Plaintiff-

voters' right to vote for *qualified* candidates, as opposed to candidates who did not

qualify for state ballots. At most, therefore, Defendants raise a question of fact regarding

their subjective intent, which must be resolved in Plaintiffs' favor, precluding dismissal

under Rule 12(b)(6). *See Twombly*, 127 S. Ct. at 1966; *Browning*, 292 F.3d at 242;

*Caribbean Broad. Sys. Ltd.*, 148 F.3d at 1086.

> ### 4. Defendants Fail to Address Allegations that They Conspired to Cause Plaintiffs Financial Injury By Committing a Fraud Upon the Court, Precluding Dismissal.

Plaintiffs allege:

"Defendants…conspired…with the specific intention of causing Plaintiffs financial injury and other damages and violating their constitutional rights. Defendants…did in fact cause such damages, and they continue to cause such damages by pursuing their unfounded and abusive litigation to the present day," Comp. ¶ 12.

Specifically:

Defendants seek "to collect payment on a wrongfully obtained, fraudulently induced judgment [against] Mr. Nader and Mr. Camejo personally. [Defendant] Reed Smith induced Mr. Camejo to pay the firm $20,000 to settle its claim, and currently seeks to condemn $61,638.45 of Mr. Nader's funds, which it has already attached." Comp. ¶ 102.

Plaintiffs further allege:

"During the proceedings [in which Defendant Reed Smith procured its unprecedented judgment], Reed Smith never disclosed several ties the firm had with Justices of the court…[that] would have provided grounds for Nader-Camejo to seek the Justices' disqualification." Comp. ¶ 90.

Specifically:

"[W]hile this case was before the Pennsylvania Supreme Court, Defendant Reed Smith began representing the Chief Justice as his defense counsel in an ethics investigation," among other improprieties.[3] Comp. ¶ 10. "Reed Smith's concealment of its ties with the Pennsylvania Supreme Court Justices thus constitutes a fraud upon the court, because the firm induced its judgment in a manner that deprived Nader-Camejo of the opportunity to move for the Justices' disqualification, in violation of basic principles of fairness, impartiality and due process. Comp. ¶ 93.

Once again, Defendants completely fail to address the foregoing allegations.

Defendant DNC and the Kerry Defendants ignore them entirely. Defendant Reed Smith

asserts only that Pennsylvania's ballot access requirements have been held constitutional,

but cites a case that does not address the provision under which Reed Smith procured its

unprecedented judgment. Reed Smith Mem. at 17 (*citing Rogers v. Corbett*, 468 F.3d 188

(3rd Cir. 2006)). More important, Reed Smith makes *no attempt* to address the allegation

that the firm committed a fraud upon the court and violated Plaintiffs' right to due

process in procuring its unprecedented judgment from a court presided over by a Chief

Justice whom the firm was simultaneously representing as defense counsel in an ethics

probe.

In short, Defendants ignore allegations that they committed a fraud upon the court

and violated Plaintiffs' right to due process in furtherance of their conspiracy.

Defendants' failure to address such allegations thus raises a question of fact that

precludes dismissal under Rule 12(b)(6). *See Twombly*, 127 S. Ct. at 1966; *Browning*,

292 F.3d at 242; *Caribbean Broad. Sys. Ltd.*, 148 F.3d at 1086.

### B.  Defendants Fail to Establish Grounds for Dismissal Under Rule 12(b)(1).

Defendants also fail to establish grounds for dismissal under Rule 12(b)(1). As an initial matter, this Court clearly has subject matter jurisdiction to hear Plaintiffs' constitutional claims, 28 U.S.C. § 1331; 42 U.S.C. § 1983, and only Defendant DNC moves for dismissal under Rule 12(b)(1). While Defendant DNC offers no argument in support of its motion, Plaintiffs nevertheless bear the burden of establishing jurisdiction. *See Best v. United States*, 2007 U.S. Dist. LEXIS 88028 *4 (D.D.C. 2007). Accordingly, the Court may properly subject Plaintiffs' allegations of "jurisdictional facts" to closer scrutiny under Rule 12(b)(1) than is warranted under Rule 12(b)(6). *See Macharia v. United States*, 334 F.3d 61, 64 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).

As an aid to the Court's scrutiny, the attached affidavit is submitted herewith, which includes documents and materials referenced in the Complaint that support and confirm Plaintiffs' allegations. For example, contrary to Defendant DNC's claim during the 2004 General Election that it was not funding Defendants' litigation against Plaintiffs, FEC reports filed after the election confirm that the DNC retained several law firms that initiated such litigation, including Defendant Reed Smith. Comp. ¶¶ 58, 65, 99-100; Affdvt. Ex. D. In addition, Maine Democratic Party Chair and DNC official Dorothy Melanson admitted under oath in a legal proceeding that DNC officials ordered her to file suit against the Nader-Camejo Campaign and retained her law firm. Comp. ¶ 65; Affdvt. Ex. E. Finally, an email DNC employee Caroline Adler sent to DNC staff contained an attachment entitled "Script for Nader Petition Signers," which DNC employees used as a

---

[3] *See supra* n.2.

guide when calling to investigate Nader-Camejo petitioners. Comp. ¶ 59; Affdvt. Ex. F. The electronic document's properties indicate that DNC and Kerry-Edwards Campaign consultant Jack Corrigan authored this document, further confirming the DNC's primary role in orchestrating and executing Defendants' conspiracy. *See id.*

Defendant Kerry also denied involvement in Defendants' litigation during the 2004 General Election and claimed that, while he respected other Democrats' efforts to force Nader-Camejo from the race, he would never ask another candidate to abandon an election bid. Comp. ¶ 66. In fact, however, Caroline Adler, the DNC staffer who circulated the Jack Corrigan-authored "Script for Nader Petition Signers" to DNC staff, states in the biography on her former employer's website that she worked for "the legal team of the Kerry campaign in Washington, D.C." Affdvt. Ex. F. In addition, an email from Kerry-Edwards 2004, Inc. deputy national director for northern New England Judy Reardon indicates that Ms. Reardon herself drafted a complaint and coordinated with the Democratic Party officials and attorneys who filed it against Plaintiffs, including New Hampshire Democratic Party Chair and DNC official Kathleen Sullivan. Comp. ¶ 60; Affdvt. Ex. G. Finally, several lawyers that sued Plaintiffs in at least three more states (New Mexico, Ohio and Pennsylvania) were members of "Lawyers for Kerry," a group Defendant Kerry-Edwards 2004, Inc. recruited through a sign-up form on its website, www.johnkerry.com. Comp. ¶¶ 60, 66; Affdvt. Ex. H. This sign-up form states that "We may provide your contact information to the Democratic National Committee for ballot protection efforts," thus providing further confirmation of direct coordination between the Kerry-Edwards campaign, the DNC and the lawyers who pursued Defendants' litigation against Plaintiffs. *See id.*

As a final example of the documentation supporting allegations in the Complaint, Plaintiffs have already noted that, while Defendant Reed Smith claims to have attached Mr. Nader's personal bank accounts "on behalf of their clients," Reed Smith partner Efrem Grail previously confirmed in two separate emails that Reed Smith seeks to enforce its unprecedented judgment on its own behalf. Affdvt. Ex. B. Furthermore, while Reed Smith insists that Plaintiffs fail to plead specific facts from which to infer an agreement between the law firm and its co-defendants, Reed Smith studiously avoids mention of the fact that *Defendant DNC retained Reed Smith during the 2004 General Election. Compare* Reed Smith Mem. at 10-13 *with* Comp. ¶¶ 99-100; *see* Affdvt. Ex. D. Accordingly, Plaintiffs have pleaded and specified sufficient facts to support their allegations that Reed Smith is acting on its own behalf and pursuant to an agreement with its clients and co-Defendants, the DNC, Kerry-Edwards 2004, Inc. and John Kerry.

The foregoing discussion makes clear that Plaintiffs have supported their allegations of jurisdictional facts with sufficient "competent proof" to withstand dismissal under Rule 12(b)(1). *See Debt Buyers' Association v. Snow*, 2006 WL 598143 (D.D.C. 2006) (*quoting McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 188-89 (1936). Plaintiffs have done so, moreover, without the benefit of *any opportunity* for discovery. As Justice Ruth Bader Ginsburg emphasized in an opinion written for the Circuit Court of Appeals for the District of Columbia, a ruling on jurisdictional facts is "premature in the absence of any discovery." *Edmond v. United States Postal Service General Counsel*, 953 F.2d 1398, 1401 (D.C. Cir. 1992) (Ginsburg, J. concurring); *see also Macharia*, 334 F.3d at 64 (affirming dismissal "*following completion of jurisdictional discovery*") (emphasis added). Because dismissal prior to the opportunity

for Plaintiffs to pursue discovery keyed to jurisdictional facts is "improper" and "error [that] warrants correction," Defendant DNC's motion to dismiss under Rule 12(b)(1) must be denied. *Edmond*, 953 F.2d at 1401.

## II. The Doctrine of *Res Judicata* Does Not Bar Plaintiffs' Claims.

Defendants' contention that *res judicata* bars this action is a red herring. Having had their day in eighteen different courts, Defendants would like to deny Plaintiffs their day in this one Court. As Defendants well know, however, the facts on which Plaintiffs' Complaint relies were discovered in December 2007, *after* Plaintiffs filed the action that Defendants claim bars this action. In addition, in that prior action the Court expressly reserved judgment on the legal issues raised in this action. Therefore, neither claim preclusion nor issue preclusion bars Plaintiffs' claims.

### A. Claim Preclusion Does Not Bar Plaintiffs' Claims.

The D.C. Circuit has consistently held that "Res judicata does not bar parties from bringing claims based on material facts that were not in existence when they brought the original suit." *Apotex v. Food & Drug Administration*, 393 F.3d 210, 218 (D.C. Cir. 2004) (*citing Drake v. Federal Aviation Admin.*, 291 F.3d 59, 66 (D.C. Cir. 2002); *see Stanton v. District of Columbia Court of Appeals*, 127 F.3d 72, 78-79 (D.C. Cir. 1997); *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984). As the Court explained in *Drake*, "The doctrine does not bar a litigant from doing in the present what he had no opportunity to do in the past." *Drake*, 291 F.3d at 67. That is the case here: Plaintiffs' claims in the instant action rely on "material facts that were not in existence" until December 2007 – namely, the participation of state employees in Defendants' conspiracy. *Apotex*, 393 F.3d at 218; *see* Comp. ¶¶ 76, 81. These newly discovered

material facts, as Plaintiffs discuss more fully *infra*, are independently sufficient to support their claims under 42 U.S.C. § 1983. Therefore, even if Plaintiffs did file claims under Section 1983 in a prior related action, the claims in the instant action would not be barred. *See Brown v. Paulson*, 541 F. Supp. 2d 379, 384 (D.D.C. 2008) (Urbina, J.) ("claim not precluded if supporting facts were not yet in existence") (*citing Velikonka v. Ashcroft*, 355 F. Supp. 2d 197, 201-02 (D.D.C. 2005)).

Defendants' claim preclusion argument boils down to their objection to Plaintiffs' decision to file a new action, rather than to move for leave to amend their prior action, upon discovery of the material facts on which the instant action rests. This Court, however, has expressly rejected Defendants' view that such circumstances can support application of claim preclusion. *See Velikonka*, 355 F. Supp 2d at 202 ("The law in this Circuit does not require constant amendments each time plaintiff learns of a new action"). The Court's rationale applies with particular force where, as here, Plaintiffs have never received a "full and fair opportunity" to litigate the claims in question. *See id.* at 201-02 (*citing Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481 n.22 (1982) (holding that "full and fair opportunity" language applies to res judicata as well as collateral estoppel).

Accordingly, claim preclusion does not bar Plaintiffs' claims.

### B.  Issue Preclusion Does Not Bar Plaintiffs' Claims.

As discussed more fully *infra* with respect to the *Noerr-Pennington* doctrine, issue preclusion also does not bar Plaintiffs' claims. First, D.C. courts have never considered Plaintiffs' Section 1983 claims on the merits, so "there is no possibility that issue preclusion would bar them." *Stanton*, 127 F.3d at 77. The Court emphasized in

*Stanton* that, as a matter of law, "the lack of merits consideration defeats any application of issue preclusion." *Id.* at 78. That is the case here: the Court's prior decision on the merits of Plaintiffs' tort claims simply does not address the merits of Plaintiffs' Section 1983 claims in the instant action. To the contrary, in its prior decision the Court expressly reserved consideration of Plaintiffs' Section 1983 claims and the issues related thereto. *See Nader*, 07-2136, Mem. Op. at 31 n.19 (reserving consideration of Plaintiffs' allegations "that the defendants orchestrated campaigns of "harassment, intimidation and sabotage," with the specific intention of preventing Nader-Camejo from complying with state election laws"). Indeed, the Court made clear that it had reserved consideration of such allegations precisely because Plaintiffs did not raise them "in the context of any specific underlying *tort*." *Id.* (emphasis added). Therefore, Plaintiffs have never had *any* opportunity to litigate their claim that Defendants violated their constitutional rights by engaging in the alleged conduct. "One general limitation the Court has repeatedly recognized is that the concept of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a "full and fair opportunity" to litigate that issue in the earlier case." *Allen v. McCurry*, 449 U.S. 90, 95 (1980) (*citing Montana v. United States*, 440 U.S. 147, 153 (1979); *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 328-329 (1971)).

Accordingly, issue preclusion does not bar Plaintiffs' claims.

**III.    The *Noerr-Pennington* Doctrine Does Not Bar Plaintiffs' Claims.**

Defendants seek to invoke the protection of the United States Constitution to shield themselves from liability for engaging in a nationwide conspiracy to prevent Plaintiffs, who are their political competitors, from participating as qualified candidates

and voters in the 2004 presidential election. Comp. ¶¶ 1-12. Defendants claim that the First Amendment protects all conduct in furtherance of such conspiracy, that they are therefore immune from liability under 42 U.S.C. § 1983, and that this Court has already so held. Reed Smith Mem. at 14; Kerry Mem. at 9. Defendants are wrong on all counts.

As Plaintiffs note *supra*, in its previous decision on the merits of Plaintiffs' state law tort claims, the Court expressly reserved judgment on Plaintiffs' allegations that Defendants "orchestrated campaigns of harassment, intimidation and sabotage, with the specific intention of preventing Nader-Camejo from complying with state election laws." *Nader*, No. 07-2136, Mem. Op. at 31 n.19. The Court's rationale for withholding judgment on these allegations is obvious, for to include them in its holding, the Court would have had to conclude, as a matter of law, that:

1. The First Amendment protects acts in furtherance of Defendants' conspiracy to bankrupt and force their political competitors from a federal election by means of groundless and abusive litigation in eighteen states nationwide;

2. The First Amendment protects acts in furtherance of Defendants' conspiracy to prevent their political competitors from complying with state election laws by sabotaging their nomination papers, disrupting their nomination conventions and hiring attorneys and private detectives to make false threats of fines and incarceration against their campaign staff and volunteers; and

3. The First Amendment protects acts in furtherance of Defendants' conspiracy to deprive a discrete class of voters their right to vote for a qualified candidate in a federal election.

Clearly, this Court did not hold *any* of the above. *See id.* at 22-31. In keeping with their strategy of ignoring allegations that they cannot defend, however, Defendants nevertheless insist that the First Amendment provides them with blanket immunity for all conduct in furtherance of their conspiracy – even, apparently, for unlawful conduct and conduct specifically intended to restrain *Plaintiffs*' First Amendment rights. Defendants

do not cite any authority for this contention, nor can they. As the Supreme Court has stated, such actions "cannot acquire immunity by seeking refuge under the umbrella of "political expression."" *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972).

For the same reason, the *Noerr-Pennington* doctrine does not bar Plaintiffs' claims arising from Defendants' misconduct in fraudulently procuring their unprecedented judgment in the Pennsylvania proceedings, and from Defendants' ongoing effort to enforce that judgment in the Superior Court of the District of Columbia. *See id.* Just as *Noerr-Pennington* immunity does not extend to "substantive evils" such as sabotage, so too the doctrine does not protect "forms of illegal and reprehensible practice which may corrupt the administrative or judicial processes" such as the fraud upon the court that Defendant Reed Smith perpetrated when it appeared before a judge as the true party in interest in an adversarial proceeding with Plaintiffs, while simultaneously defending that judge in another proceeding, without disclosing such representation on the record. *Id.* The Supreme Court's ruling on this point could not be more clear: "Misrepresentations, condoned in the political arena, are not immunized when used in the adjudicatory process." *Id.* Thus, Reed Smith's misconduct in a state court proceeding may support liability under Section 1983. *See Spencer v. Steinman*, 968 F. Supp. 1011, 1016 (E.D. Pa. 1997) (*citing Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995)).

## IV.    Plaintiffs State a Claim Under 42 U.S.C. § 1983.

To prevail on their motions to dismiss, Defendants must prove that Plaintiffs fail, as a matter of law, to allege a constitutional violation or the requisite element of "state action" under 42 U.S.C. § 1983. Defendants cannot carry this burden. Plaintiffs'

Complaint specifically alleges that Defendants conspired to violate Plaintiffs'

constitutional rights, and that state actors jointly engaged with Defendants in acts in

furtherance of the conspiracy. Comp. ¶¶ 11, 75-76, 81  Moreover, at this stage of the

proceedings, the Court must "grant plaintiffs the benefit of all inferences that can be

derived from the facts alleged." *Chandler v. Welch and Associates, Inc.*, 533 F. Supp. 2d

94 (D.D.C. 2008) (citations omitted). Consequently, because Defendants cannot

demonstrate that Plaintiffs fail, as a matter of law, to allege the elements of a claim under

Section 1983, their motions must be denied. *See International Action Center v. United*

*States of America*, 2002 U.S. Dist. LEXIS 4614, *3-4 (D.D.C. 2002) (in the context of

Section 1983 actions, this Circuit has concluded that "[a] complaint…need not allege all

that a plaintiff must eventually prove") (quoting *Atchinson v. District of Columbia*, 73

F.3d 418, 422 (D.C. Cir. 1996)); *Robinson v. King*, 629 F. Supp. 546, 553 (D.D.C. 1986)

(even bare allegations of Section 1983 violation, "unsupported by any facts, are

nonetheless sufficient to weather [a] motion to dismiss") (citations omitted).

### A.  Plaintiffs Allege a Violation of Their Constitutional Rights.

The Supreme Court has long recognized that First Amendment rights of speech,

assembly and to petition the government for redress of grievances are equally guaranteed

to all, including minority and dissident groups. *See*, *e.g.*, *NAACP v. Alabama*, 357 U.S.

449 (African-Americans); *Sweezy v. New Hampshire*, 354 U.S. 234 ("subversive

persons"); *De Jonge v. State of Oregon*, 299 U.S. 353 (communists). Plaintiffs are

members of one such group who sought "through lawful means to achieve legitimate

political ends" by participating as qualified candidates and voters in the 2004 presidential

election. *NAACP v. Button*, 371 U.S. 415, 430 (1963). This is quintessentially protected

conduct. *See id.* As the Supreme Court has stated:

> All political ideas cannot and should not be channeled into the programs of our two major parties. History has amply proved the virtue of political activity by minority, dissident groups, who innumerable times have been in the vanguard of democratic thought and whose programs were ultimately accepted. Mere unorthodoxy or dissent from the prevailing mores is not to be condemned. The absence of such voices would be a symptom of grave illness in our society.

*Sweezy*, 354 U.S. at 250-51.

Defendants are Plaintiffs' political adversaries who conspired to restrain

Plaintiffs' participation in the 2004 presidential election. Specifically, Defendant DNC,

as national head of the Democratic Party, conspired with its co-Defendants to prevent Mr.

Nader and Mr. Camejo from gaining ballot access as qualified candidates, and to deny

Plaintiff-voters the right to vote for them, by combining with eighteen state or local

Democratic Parties and others to wage a nationwide assault of groundless and abusive

litigation, supported by harassment, intimidation, sabotage and other unlawful acts, all

with the specific intent to bankrupt the Nader-Camejo Campaign and to prevent Mr.

Nader and Mr. Camejo from complying with state election laws. Comp. ¶¶ 1, 4, 6-8, 46,

52, 63, 67-72. Defendants' conspiracy thus targeted "two different, although overlapping,

kinds of rights – the right of individuals to associate for the advancement of political

beliefs, and the right of qualified voters, regardless of their political persuasion, to cast

their votes effectively." *Anderson v. Celebreeze*, 460 U.S. 780, 787 (1983) (*quoting*

*Williams v. Rhodes*, 393 U.S. 23, 30-31 (1968)).

Based on the foregoing allegations, Plaintiffs plainly allege that Defendants

violated their constitutional rights. *See id.* The Supreme Court recognizes the right of

*qualified* candidates who comply with state election laws to appear on state ballots. *See*

*id*. The Supreme Court also recognizes the right of voters "to vote freely for the candidate of one's choice." *Burson v. Freeman*, 504 U.S. 191, 199 (1992) (*quoting Reynolds v. Sims*, 377 U.S. 533, 555 (1964). A conspiracy that specifically targets such rights, as alleged herein, is therefore actionable under Section 1983. *See Rossignol*, 316 F.3d at 526 ("both the First Amendment and 42 U.S.C. § 1983 exist in significant part to deter the kind of misdeeds perpetrated by defendants on election day").

Defendants' bald assertion that they did not violate Plaintiffs' constitutional rights is, as Plaintiffs have shown, nothing more than an evasion. *See supra*, pp. 9-13. Defendants do not even attempt to address allegations that they engaged in conduct that was specifically intended to prevent Mr. Nader and Mr. Camejo from complying with state election laws, and to manufacture grounds for Defendants' otherwise baseless legal claims. Comp. ¶¶ 6-8, 67-72. More generally, Defendants make no attempt to explain why their First Amendment rights should include the right to restrain Plaintiffs' First Amendment rights. Instead, Defendants claim that "No individual, including Ralph Nader, has a "right" to be elected to an office," Reed Smith Mem. at 17, and that the Constitution does not guarantee a candidate "unfettered access to the Presidential ballot." That is not at issue. What is at issue is whether Defendants' conspiracy to prevent Plaintiffs from participating as *qualified* candidates and voters in a federal election violated Plaintiffs' constitutional rights. Clearly, it did. *See Anderson*, 460 U.S. at 787; *Burson*, 504 U.S. at 199.

Accordingly, Plaintiffs allege constitutional violations sufficient to support their claims under Section 1983.

**B. Plaintiffs Allege "State Action" for Purposes of Section 1983 Based on Defendants' Joint Conduct with State Employees.**

25

Based on evidence newly discovered in December 2007, Plaintiffs allege:

"[M]any of the operatives that [Pennsylvania House Democratic leaders] Mr. DeWeese and Mr. Veon recruited to join Defendants' conspiracy were actually paid employees of the state of Pennsylvania, who received taxpayer-funded compensation for their effort to remove Nader-Camejo from Pennsylvania's ballot." Comp. ¶ 76.

Specifically:

"[S]tate employees…[received] bonuses based on time they spent…in getting presidential candidate Ralph Nader off the presidential ballot." Comp. ¶ 76. Further, emails and spreadsheets indicate that "a list of year-end bonuses was based on…election work that encompassed, "specials, general, Nader effort." Comp. ¶ 76. "The "Nader effort" is an apparent reference to a Democratic project to challenge the ballot petitions of the independent presidential candidate, who [Democrats] feared would peel away votes from Democratic nominee Sen. John F. Kerry." Comp. ¶ 76.

Plaintiffs further allege:

"[M]ore than 100…"volunteers" [who] worked on the case "holed up in Reed Smith conference rooms" … were actually employees of the state of Pennsylvania, who received taxpayer-funded compensation for their joint effort, in concert with Defendants and co-Conspirators, to remove Nader-Camejo from Pennsylvania's ballot." Comp. ¶ 81.

Finally:

"The so-called "objectors" – registered voters named in the case caption – received logistical support from the state House Democratic committee in organizing volunteers. [Reed Smith Attorney Daniel] Booker said his friend, state Rep. H. William DeWeese, D-Greene, Democratic leader in the state House of Representatives, knew of the project and thought it a valuable one." Comp. ¶ 86.

These allegations are independently sufficient to support a pleading of "state action" for purposes of Section 1983. This is because, "State employment is generally sufficient to render the defendant a state actor." *West v. Atkins*, 487 U.S. 42, 49 (1988) (*quoting Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936, n.18 (1982)). In addition, private defendants who are "willful participant[s] in joint activity with the State or its

agents" themselves act "under color" of law for purposes of Section 1983. *Lugar*, 457

U.S. at 941 (quoting *United States v. Price*, 383 U.S. 787, 794 (1966). By pleading that

Defendants willfully participated in joint activity with employees of the state of

Pennsylvania, therefore, Plaintiffs plead sufficient facts to establish the element of state

action. *See West*, 487 U.S. at 49; *Lugar*, 457 U.S. at 941.

While the Kerry Defendants claim that they "do not concede" that the foregoing

allegations are sufficient to establish state action, they make *no attempt* to explain how or

why such allegations should fail to do so. Kerry Mem. at 14 n.4. Instead, the Kerry

Defendants attempt to absolve themselves by asserting that Plaintiffs do not allege that

Defendant Kerry personally "encouraged, procured, or participated in any litigation

whatsoever." *Id.* at 14. This assertion is not only irrelevant, *see Halberstam v. Welch*, 705

F.2d 472 (D.C. Cir. 1983) (all conspirators may be held vicariously liable for all acts in

furtherance of the conspiracy), but it is also false. Plaintiffs specifically allege that

Defendant Kerry's paid agent directly participated in at least one lawsuit conspirators

filed against the Nader-Camejo Campaign, Comp. ¶ 60; Affdvt. Ex. G, and that

Defendant Kerry-Edwards 2004, Inc. recruited several lawyers who filed three additional

lawsuits, including at least one lawyer who participated in the Pennsylvania litigation

specifically at issue. Comp. ¶¶ 60, 66; Affdvt. Ex. H. Further confirmation that the Kerry

Defendants' participated in the Pennsylvania litigation is that Defendant Reed Smith,

which reportedly devoted "thousands of hours" to the lawsuit, apparently represents

Defendant Kerry and his wife Teresa Heinz Kerry on an ongoing basis. Comp. ¶¶ 86, 99.

Clearly, therefore, Plaintiffs plead a "set of facts" to support their allegation that the

Kerry Defendants participated in Defendants' conspiracy, and in the Pennsylvania

litigation specifically.[4] *Twombly*, 127 S. Ct. at 1969; *see Mandelkorn v. Patrick*, 359 F. Supp. 692, 697 (D.D.C. 1973) (noting the "inherent difficulties in the pleading of a conspiracy, [which] by its very nature…involves agreements and questions of intent not accessible to the Plaintiff").

Defendant Reed Smith claims that Plaintiffs fail to allege "state action" for two reasons: "First, Reed Smith does not act under color of law simply by working alongside public employees. Second, the mere fact that some volunteers were legislative aids does not make them state actors." Reed Smith Mem. at 20. To support these claims, Reed Smith suggests that the state employees working in its conference rooms may have been working in a personal capacity. *Id.* at 21. Not so. The Complaint specifically alleges that such employees received "taxpayer-funded compensation for their effort to remove Nader-Camejo from Pennsylvania's ballot." Comp. ¶ 76. Reed Smith also suggests that "financial assistance by the state does not establish that those receiving the assistance acted under color of state law." Reed Smith Mem. at 21. This is irrelevant. Acts done by state employees in connection with their employment by the state, for which the state specifically compensates them, constitute action under color of state law. *See West*, 487 U.S. at 49; *Lugar*, 457 U.S. at 941.

As this Court recently noted, "A state employee performing an official duty acts pursuant to state authority, and therefore acts under the color of law," *Maniaci v. Georgetown University*, 510 F. Supp. 2d 50, 68 (D.D.C. 2007) (*citing Screws v. United*

---

[4] At the least, a question of fact exists as to whether Reed Smith acted pursuant to an agreement with its clients, Defendant Kerry and Defendant DNC, in dedicating "thousands of hours" to its lawsuit against Nader-Camejo. Comp. ¶ 86. Relevant to this inquiry, Defendant Reed Smith and Defendant DNC both claimed on numerous occasions during the 2004 General Election that the Democratic Party had not retained the firm, but it is now a matter of public record that Defendant DNC did retain Reed Smith. Comp. ¶¶ Comp. ¶¶ 65, 86, 99-100; Affdvt. Ex D.

*States*, 325 U.S. 91, 107-08 (1945), and "even if a state employee does not act with the actual authority of the state, but merely purports to exercise its authority, he may be held liable for constitutional deprivation pursuant to Section 1983. *Id.* (*citing Griffin v. Maryland*, 378 U.S. 130, 135 (1964)). The test in such cases is "whether there is sufficiently close nexus between the State and the challenged action…so that the action of the latter may be fairly treated as that of the State itself." *Id.* (*quoting Jackson v. Metro. Edison Co.,* 419 U.S. 345, 351 (1974)). Here, where the allegations in the Complaint establish that the state of Pennsylvania specifically compensated its employees for their work on the "Nader effort," in concert with Defendants and "holed up in Reed Smith conference rooms," that test is met. Comp. ¶¶ 76, 81.

Accordingly, Plaintiffs allege "state action" for purposes of Section 1983.

**V.      Plaintiffs Allege a Conspiracy.**

Plaintiffs have already summarized herein and in the attached affidavit the wealth of allegations and facts supporting their claim that Defendants engaged in a conspiracy. To reiterate, Plaintiffs allege that Defendant DNC retained several law firms that sued Plaintiffs, including Defendant Reed Smith, and that Defendants John Kerry and Kerry-Edwards 2004, Inc., through their paid agents, staff and lawyers, directly participated in lawsuits filed against Plaintiffs in several states, including Pennsylvania. These facts alone are sufficient to support an inference of agreement among the Defendants.

In addition, however, the Complaint includes detailed allegations regarding the formation of Defendants' conspiracy. Specifically, Plaintiffs allege that "the leaders of the conspiracy met privately to discuss their plans on July 26, 2004, at the Four Seasons Hotel in Boston," and that the DNC paid for this meeting. Comp. ¶ 47. Plaintiffs identify

particular individuals among "approximately three dozen people" who attended the meeting. Comp. ¶ 47. Plaintiffs also provide specific details about what was discussed, and even direct quotes from attendees, indicating their conspiratorial intent. Comp. ¶¶ 48-54. Plaintiffs could hardly plead more specific facts, in short, without access to a transcript of Defendants' meeting. *See Mandelkorn*, 359 F. Supp. at 697 ("What is accessible, and must be pled, are the overt acts alleged to have been taken in furtherance of the conspiracy").

## VI. Plaintiffs' Claims Are Not Time-Barred.

This Court has already held, consistent with the great weight of authority, that dismissal of Plaintiffs' claims on the ground that they are barred by the statute of limitations would be improper. *Nader*, 07-2136, Mem. Op. at 22 (*citing Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996). Plaintiffs thus rely on the Court's prior ruling on this issue and rest on the merits of their previous response to Defendants' assertions that Plaintiffs' claims are time-barred. Plaintiffs add, however, that evidence on which the claims in this action substantially rely – namely, that employees of the state of Pennsylvania directly participated in Defendants' conspiracy – was newly discovered no earlier than December 2007. Comp. ¶ 76. These allegations are independently sufficient to support the element of "state action" under 42 U.S.C. § 1983. *See West*, 487 U.S. at 49. On these alternative grounds, therefore, the statute of limitations does not bar Plaintiffs' claims. *See Richards v. Mileski*, 662 F.2d 65 (D.C. Cir. 1981) (dismissal of Section 1983 claim on statute of limitations grounds improper twenty-three years after wrongful termination, where involvement of state actor was concealed for twenty-two years).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motions to dismiss should be denied.


Dated: June 27, 2008                              Respectfully Submitted,

                                                  /s/ Oliver B. Hall
                                                  _____

                                                  Oliver B. Hall
                                                  D.C. Bar No. 976463
                                                  1835 16th Street, N.W.
                                                  Washington, D.C. 20009
                                                  (617) 953-0161
                                                  oliverbhall@gmail.com

                                                  *Counsel for Plaintiffs*


Bruce Afran, Esquire
10 Braeburn Drive
Princeton, NJ 08540
*Of Counsel*

Mark R. Brown, Esquire
303 East Broad Street
Columbus, OH 43215
*Of Counsel*

Carl J. Mayer, Esquire
Mayer Law Group, LLC
1040 Avenue of the Americas, Suite 2400
New York, NY 10018
*Of Counsel*

Gonzalez & Leigh, LLP
Matt Gonzalez, Esquire
G. Whitney Leigh, Esquire
Bryan Vereschagin, Esquire
Two Shaw Alley
San Francisco, CA 94105
*Of Counsel*

**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **RALPH NADER, et al.,** | : |
| | : |
| **Plaintiffs** | : |
| | : |
| **v.** | :   **Civil Action No. 08-00589-RMU** |
| | : |
| **DEMOCRATIC NATIONAL COMMITTEE,** | : |
| **et al.** | : |
| | : |
| **Defendants.** | : |
| | : |

**[PROPOSED] ORDER**

     IT IS ORDERED that the motions to dismiss the complaint pursuant to Fed. R.

Civ. P. Rules 12(b)(1) and 12(b)(6), filed by Defendants Democratic National

Committee, Kerry-Edwards 2004, Inc., et al, and Reed Smith, LLP are hereby denied.


Dated:                                _____

                                     RICARDO URBINA
                                     United Stated District Court Judge

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of June 2008, I electronically served a copy of the

foregoing Opposition and Response to Defendants' Motions to Dismiss and Proposed

Order by means of the Court's CM/ECF system upon the following parties:

Joseph E. Sandler
D.C. Bar No. 255919
John Hardin Young
SANDLER, REIFF & YOUNG
50 E Street, S.E. #300
Washington, D.C. 20003

*Attorneys for Defendant Democratic*
*National Committee*


Mark E. Elias
D.C. Bar No. 442007
PERKINS COIE
607 14th St., N.W.
Washington, D.C. 20005

*Attorneys for Defendants Kerry-Edwards*
*2004, Inc. and Senator John Kerry*


Douglas K. Spaulding
D.C. Bar No. 936948
REED SMITH, LLP
1301 K Street N.W.
Suite 1100 – East Tower
Washington, D.C. 20005

*Attorneys for Defendant Reed Smith, LLP*

/s/ Oliver B. Hall
Oliver B. Hall
