# AFFIDAVIT OF OLIVER B. HALL
# IN SUPPORT OF PLAINTIFFS' OPPOSITION
# TO DEFENDANTS' MOTIONS TO DISMISS

I, OLIVER B. HALL, ESQUIRE, ATTEST AS FOLLOWS:

1. I am a member of the Bar of the District of Columbia, and counsel for Plaintiffs Ralph Nader, Peter Miguel Camejo, D.B. Fanning, C.K. Ireland, Julie Coyle, Herman Blankenship, Lloyd Marbet and Gregory Kafoury. I submit this Affidavit in support of Plaintiffs' Opposition to Defendants' Motions to Dismiss.

2. Plaintiffs are United States citizens who sought to participate in the 2004 presidential election as qualified candidates and voters. On April 4, 2008, Plaintiffs filed suit against Defendants Democratic National Committee (DNC), Kerry-Edwards 2004, Inc., John Kerry and Reed Smith, LLP, alleging claims under 42 U.S.C. § 1983.

3. Specifically, Plaintiffs allege that Defendants conspired to restrain Plaintiffs' participation as qualified candidates and voters in the 2004 General Election by orchestrating and executing a nationwide campaign of groundless and abusive litigation, consisting of twenty-four complaints filed between June and September of 2004 to challenge Plaintiff-candidates' right to run for office in eighteen states. Defendants also orchestrated campaigns of harassment, intimidation and sabotage that were specifically intended to prevent Plaintiff-candidates from complying with state election laws, and to manufacture grounds for Defendants' subsequent litigation. All of this activity was intended to deprive Plaintiff-voters and others similarly situated of their right to vote for qualified candidates in the 2004 General Election.

4. Pursuant to the litigation Defendants initiated against Plaintiffs in Pennsylvania, on January 14, 2005, Defendant Reed Smith procured an order from the

Commonwealth Court of Pennsylvania directing Plaintiffs Ralph Nader and Peter Miguel Camejo to pay $81,102.19 in litigation costs. On August 22, 2006, a divided Pennsylvania Supreme Court issued a judgment affirming the order. This judgment, effectively penalizing the candidates for submitting nomination papers, appears to be without precedent in any state or federal court in the United States. The United States Supreme Court nevertheless denied certiorari on January 8, 2007.

5. On January 11, 2007, Plaintiff Ralph Nader called DNC Chairman Howard Dean to inform him that Reed Smith was seeking to enforce its unprecedented judgment. Chairman Dean was unavailable. On January 17, 2007, Mr. Nader called again, and Chairman Dean was again unavailable. Chairman Dean called back, however, and when Mr. Nader informed him of Reed Smith's actions, Chairman Dean replied, "We're not behind this, are we?" Mr. Nader responded that the DNC had retained Reed Smith during the 2004 General Election, and had paid the firm approximately $140,000. Chairman Dean stated that he would investigate the matter.

6. On February 23, 2007, Attorney Joseph Sandler called Mr. Nader on behalf of Chairman Dean and stated that he needed to speak with Attorney Jack Corrigan to determine whether the DNC had retained Reed Smith.

7. On February 27, 2007, Mr. Nader left a message for Mr. Sandler stating that he needed to hear back from Mr. Sandler as soon as possible.

8. On February 28, 2007, Mr. Sandler called Mr. Nader. Mr. Sandler indicated that he had spoken to Mr. Corrigan, and that Mr. Corrigan had been monitoring the Democratic Party's nationwide litigation against the Nader-Camejo Campaign for the DNC. Mr. Sandler also confirmed that the DNC had paid Reed Smith approximately

$140,000 during the 2004 General Election, but stated that the payment was unrelated to the lawsuit Reed Smith filed against the Nader-Camejo Campaign.

9. On May 10, 2007, Mr. Nader called Defendant John Kerry and informed him of the foregoing facts. Mr. Nader memorialized this conversation in a follow-up email sent to Defendant Kerry the same day.

10. On May 22, 2007, Defendant Kerry responded to Mr. Nader's email by letter, stating:

> [A]s I indicated over the phone, I am not a party in any of the lawsuits that you mentioned. Nor do I have any direct knowledge of how these lawsuits are progressing. I have not played any role in directing Reed Smith or any other lawyer or law firm on these matters – nor do I think it would be appropriate to do so. Regardless of my personal feelings on electoral procedures, I believe that I must not involve myself with any private dispute over payment of legal fees and judgments.

11. On July 17, 2007, Defendant Reed Smith secured writs of attachment from the Superior Court of the District of Columbia, freezing $61,638.45 in Mr. Nader's personal bank accounts in satisfaction of the unprecedented judgment it secured from the Supreme Court of Pennsylvania.

12. After September 12, 2007, Mr. Nader discovered that Reed Smith had been representing the Chief Justice of the Pennsylvania Supreme Court as his defense counsel in an ethics proceeding at the same time that the firm was appearing before that court in the proceedings against Mr. Nader and Mr. Camejo, pursuant to which the Chief Justice voted to affirm judgment in Reed Smith's favor. Reed Smith did not disclose on the record that it was representing one of the presiding Justices, nor did the firm disclose several other facts set forth in Plaintiffs' Complaint, which give rise to the appearance of impropriety and violated Plaintiffs' right to due process.

13. On November 7, 2007, based on the foregoing newly discovered evidence of impropriety, Mr. Nader filed a motion in the Superior Court of the District of Columbia to vacate the writs of attachment Reed Smith secured against his personal bank accounts. As of this date, that motion remains pending, and Mr. Nader's personal funds remain frozen.

14. The documents attached hereto as Exhibits "A" through "H" are referenced in Plaintiffs' Complaint, and the Court may properly take judicial notice of them. *See Alexander v. Washington Gas Light Co.*, 2006 U.S. Dist. LEXIS 95702 *12 (D.D.C. 2006) (under Rule 12(b)(6), "The Court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record") (citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993)).

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed this 27th day of June, 2008

_____
Oliver B. Hall

Subscribed and sworn to me this 27th day of June, 2008

_____
NOTARY
My commission expires June 30, 2011

CURTIS PEARSON
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires June 30, 2011

4

**EXHIBIT A:**

**NADER-CAMEJO 2004 PETITIONER AFFIDAVIT & WARNING LETTER**

# AFFIDAVIT OF ▮▮▮▮▮▮▮▮

STATE OF OREGON        )
                       ) ss.
County of Multnomah    )

I, ▮▮▮▮▮▮▮▮, being first duly sworn on oath, depose and say:

1. I am a petitioner for Ralph Nader's campaign to get on the ballot in Oregon. I am also a fifty-eight year old grandmother with a heart condition. On August 12, 2004, I was at my home with my two grandchildren when I received a knock on the door about 8:30 PM. When I answered the door there was a man and a woman there. They gave me a letter from a lawyer which said that the law firm was investigating me, and that if any of the people who had signed my petitions were not qualified, I could to prison for it. They said they had copies of the signature sheets that I had submitted and they told me that there were fraudulent signatures on it and that I might be in a lot of trouble. I was extremely frightened and intimidated, and I tried to explain to them that I simply asked people if they were a registered voter and if they would like to sign to put Ralph Nader on the ballot. I told them I was paid 75 cents each signature.

They questioned me closely about who I worked for and exactly what instructions I had been given.

I asked if they were saying that I had done something wrong. They said they really couldn't talk about it, that they were just "doing an investigation."

They asked me what areas I had been to to get the petitions and I told them I had been in the area around Lloyd Center and around 39th.

They asked me about any number of things, apparently looking for something they could use against me, or against the people who had hired me. This whole thing was more frightening and intimidating than I could describe.

When they left was extremely worried about whether I was in trouble, whether I should even try to collect the $9.00 that I was still owed for signatures, and whether I should give up gathering signatures completely.

I have done nothing to deserve any of the treatment I have had at the hands of these people. I was up all last night with worry.

I have explained to Greg Kafoury that he can disclose my name to the press only on a condition that they not make a public disclosure of it. I simply want to do the right thing about what happened to me.



SUBSCRIBED AND SWORN to before me this _____ day of August, 2004.

_____
Notary Public for Oregon

# SMITH DIAMOND & OLNEY
### ATTORNEYS AT LAW

Barbara J. Diamond
Margaret S. Olney*
Monica A. Smith

* Member Oregon and Washington Bars

August 12, 2004



Portland, OR 97209

Re: Signature gathering for Nader campaign

Dear Mr.

This law firm is currently investigating concerns about a large number of invalid voter signatures that appear on nominating petitions filed with Multnomah County in support of Ralph Nader for President. We are looking into whether fraudulent signature-gathering techniques were used in the circulation of those petitions.

We are writing to you because your name appears as the circulator on a number of the nominating petitions. Based on information that we have received, we are reviewing the petitions that you signed as circulator. If you are willing to talk to us about the petitions that you circulated, or have any information that you would like to bring to our attention, please call me at the number listed below.

In the meantime, we would like to remind you that your signature certifies that you personally witnessed each signature collected on the petition and that you obtained the signatures from qualified voters. Falsely signing the petition may result in conviction of a felony with a fine of up to $100,000 or prison for up to five years.

Sincerely,

SMITH, DIAMOND & OLNEY

Margaret S. Olney

MSO/sap

1500 NE Irving, Suite 370 • Portland, Oregon 97232-4207
Phone: 503-229-0400 • Fax: 503-229-0614

**EXHIBIT B:**

**REED SMITH PARTNER EFREM GRAIL EMAILS**

# ReedSmith

Reed Smith LLP
435 Sixth Avenue
Pittsburgh, PA 15219-1886
412.288.3131
Fax 412.288.3063

Efrem M. Grail
Direct Phone: 412.288.4586
Email: egrail@reedsmith.com

February 1, 2007

**VIA FACSIMILE – 415.512.2001**

Matt Gonzalez, Esq.
Gonzalez & Leigh LLP
Two Shaw Alley
San Francisco, CA 94105

Re: *Serody v. Nader, et al.*

Dear Matt:

Thank you for your telephone call yesterday afternoon. As we discussed by telephone, I must convey that the partners in my law firm, who are the holders of the judgment against your client Peter Camejo and also against Ralph Nader, have run out of patience with your attempts to resolve this outstanding joint and several liability short of our execution on it.

I am not unmindful of your client's upcoming need for a brief medical leave beginning this Friday, February 2. However, please be advised that if this matter is not resolved fully between the parties on or before two weeks from Close-of-Business today, February 15, 2007, we will either sell the judgment or initiate proceedings to domesticate and execute on it at that time.

Very truly yours,

REED SMITH LLP

By: Efrem M. Grail

EMG/seg

NEW YORK ♦ LONDON ♦ LOS ANGELES ♦ PARIS ♦ SAN FRANCISCO ♦ WASHINGTON, D.C. ♦ PHILADELPHIA ♦ PITTSBURGH ♦ OAKLAND
MUNICH ♦ ABU DHABI ♦ PRINCETON ♦ NORTHERN VIRGINIA ♦ WILMINGTON ♦ BIRMINGHAM ♦ DUBAI ♦ CENTURY CITY ♦ RICHMOND ♦ GREECE

reedsmith.com

PGHLIB-1903425.1

Reply | Reply to all | Forward | Close | Help

⚠ Attachments can contain viruses that may harm your computer. Attachments may not display correctly.

| | |
|---|---|
| From: | Grail, Efrem M. [EGrail@ReedSmith.com] |
| To: | Gonzalez, Mat |
| Cc: | Grail, Efrem M. |
| Subject: | Privileged/Settlement Communication |
| Attachments: | Efrem M Grail Esq .vcf(1KB) |

Sent: Sun 2/11/2007 6:07 PM

View As Web Page

Matt - I received your telephone message of late last week requesting an additional two weeks for more talks with your client Peter Camejo's co-judgment debtor Ralph Nader, and with his counsel. I am also pleased that your client's surgery went well, and wish him a speedy recovery.

Unfortunately, though, I have grown skeptical of Nader's interest in resolving this matter short of our levying on our judgment. You may nevertheless have the additional time you request, until noon on Friday, February 28, 2006, to continue your discussions. Should we not have concluded a definitive global settlement by that time, however, I will expect confirmation that your client, acting unilaterally to settle his obligations, has wire-transferred or remitted certified or guaranteed funds (or your law firm's trust account check) in the amount of $20,000 to us, by Close-of-Business that same day. In the meantime, I will expect your draft release language or proposed settlement agreement within the next five days, in order for us to have in place on the 28th a settlement document agreeable to both Reed Smith LLP and Peter Camejo, in the event that you cannot conclude a global settlement. We will then begin collection of our judgment against Mr. Nader the following Monday, March 5.

Thank you for your continued efforts in this matter.

EMG

**Efrem M. Grail, Esq.**
egrail@reedsmith.com
ReedSmithLLP
James Reed Building

435 Sixth Avenue
Pittsburgh, PA 15219
Phone (412) 288-4586
Fax: (412) 288-3063      2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301
Phone: (215) 241-5665
Fax: (215) 851-1420

CA - Century City, Los Angeles, Oakland, San Francisco
NJ - Princeton NY - New York City
VA - Falls Church, Leesburg, Richmond
DE Wilmington PA - Pittsburgh, Philadelphia
Washington, D.C.
London & the Midlands, England
Munich Germany
Paris France
www.reedsmith.com

Coming in January 2007:
Richards Butler LLP

**EXHIBIT C:**

**RALPH NADER EMAIL TO JOHN KERRY**

---------- Forwarded message ----------
From: **Ralph Nader** <candidatenader@gmail.com>
Date: May 10, 2007 12:59 PM
Subject: Letter from Ralph Nader
To: tricia_ferrone@kerry.senate.gov

Dear Senator Kerry,

Thank you for taking my call today. I just wanted to give you a heads-up on this unprecedented situation. Pennsylvania Supreme Court Justice Thomas Saylor thoroughly condemned the decision in this case in two dissenting opinions, while the other justices merely rubberstamped a trial court judge who is a well-known partisan. *See In re Nader*, 860 A.2d 1 (Pa. 2004) (Saylor, J., dissenting); *In re Nader*, 905 A.2d 450 (Pa. 2006) (Saylor, J., dissenting). To reiterate: the court's decision, penalizing candidates for defending the right to ballot access, appears to be unprecedented in the history of American jurisprudence.

Minor party and independent candidates' rights raise important issues of civil liberties and political equality. Unfortunately, the judiciary often treats these candidates' rights the way many courts treated the rights of minority voters in the 1930s. For your further consideration of these issues and this case, I am enclosing two letters sent to hundreds of Reed Smith partners, which are self-explanatory.

You indicated that you were unaware of this situation. Nevertheless, it is unclear whether Reed Smith is pursuing this matter because you, Teresa and the Democratic National Committee have been their clients. The situation is murky, in more ways than one. Unfortunately, two partners at Reed Smith are persisting in their punitive course, even though many others are opposed.

Sincerely,

Ralph Nader

**EXHIBIT D:**

**CENTER FOR RESPONSIVE POLITICS DNC-REED SMITH PAYMENTS**



# Democratic National Cmte: Expenditure Detail

Election cycle: 2004

| Recipient | Amount | Description | Date |
|---|---|---|---|
| REED SMITH LLP | $77,514 | Legal Consulting Fees | 10/12/04 |
| REED SMITH LLP | $58,650 | Political Consulting Fees | 11/08/04 |

METHODOLOGY: The numbers on this page are based on contributions from PACs, Levin money donors, and individuals giving $200 or more, as reported to the Federal Election Commission.

NOTE: All the numbers on this page are for the 2004 election cycle and based on Federal Election Commission data released on December 31, 1969.

Feel free to distribute or cite this material, but please credit the Center for Responsive Politics. For permission to reprint for commercial uses, such as textbooks, contact the Center.

The Center for Responsive Politics
1101 14th St., NW • Suite 1030
Washington, DC 20005-5635
(202) 857-0044 • fax (202) 857-7809
info@crp.org • webmaster@crp.org