UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            :
Ralph Nader, et al.                         :
    v.                                       :    Civ. No. 1:08-cv-00589-RMU
Democratic National Committee,              :    Reply Memorandum
        et al.                               :
_____:

**DEFENDANT DEMOCRATIC NATIONAL COMMITTEE'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS**

      The Court should dismiss Plaintiffs' Complaint because Defendant Democratic National Committee ("DNC") has shown that it did not violate the Plaintiffs' constitutional rights and that it did not act under color of state law. Therefore, there have been no violations of 42 U.S.C. § 1983. Plaintiffs responded that the DNC's and its co-conspirators' filing of successful challenges to their ballot access petitions in the 2004 Presidential election cycle denied (1) the Plaintiffs Nader and Camejo's constitutional right to be on state ballots, and (2) the voters' right to cast a ballots for those candidates.[1] Plaintiffs' claims, however, have no basis in law because the *Rucker-Feldman* doctrine precludes a challenge in this Court to those state court decisions finding that Plaintiffs Nader and Camejo were not qualified to be on those state ballots, and the *Noerr-Pennington* doctrine protects the right to file challenges to the Plaintiffs' qualification to be on state ballots. In addition, the Plaintiffs' sole argument that the DNC and the other Defendants acted under color of state law is based on allegations that Pennsylvania legislative employees received bonuses, in part, for assisting the Pennsylvania ballot petition challengers.

---

[1] The DNC objects to Attorney Hall's statement in his affidavit attached to the Plaintiffs' Opposition Memorandum that describes oral statements purportedly made by Joseph Sandler, counsel to the DNC, about statements made by others on the grounds that they are irrelevant and double hearsay, in addition to being inaccurate descriptions of Mr. Sandler's statement.

However, that allegation fails to describe behavior that might be considered state action because, as the Complaint alleges, that would "constitute[] an illegal use of state money for political work," which is not a state function of a legislative employee. Compl. ¶ 76. Accordingly, even if the allegation were true that legislative employees assisted the ballot access challengers, the legislative employees' political work would not be a state function and the employees would not be acting under color of state law or the state's authority.

Because there is no underlying violation of 42 U.S.C. § 1983, Plaintiffs' alleged conspiracy, whatever the alleged motive, also was not a Constitutional violation. Accordingly, the Complaint should be dismissed.

## ARGUMENT

**I. DEFENDANT DEMOCRATIC NATIONAL COMMITTEE DID NOT VIOLATE PLAINTIFFS' CONSTITUTIONAL RIGHTS.**

As described in more detail below, Plaintiffs strain to describe a Constitutional violation, but their argument is internally inconsistent. Plaintiffs' Opposition And Response To Defendants' Motion To Dismiss (**"Pl.'s Mem."**) at 23-25 (alleging that it would be illegal for Pennsylvania legislative employees to be paid for political work and also alleging the political work was authorized state action). Moreover, the *Rooker-Feldman* doctrine prevents this Court from reviewing state court ballot access decisions, *Nader v. Democratic National Committee,* No. 1:07-cv-02136-RMU, Document 54 (D.D.C. Order filed May 27, 2008) ("Opinion") at 15-16, and the First Amendment applied by the *Noerr-Pennington* doctrine protects the Defendants' right to file challenges to the Plaintiffs ballot access petitions. *Id*. at 22-31. Indeed, these same factual allegations have been held not to violate the Constitution in *Fulani v. McAuliffe*, 2005 U.S. Dist. Lexis 20400, *8-*13 (S.D.N.Y. Sept. 19, 2005). Plaintiffs emphasize allegations of the Defendants' co-conspirators statements that Plaintiffs consider evidence of an "evil" motive.

2

However, even if a statement could demonstrate an "evil" political motive, it would not be a denial of a constitutional right. As this Court recently explained, "the First Amendment cannot be abrogated simply by alleging that one's political opponent turned to the judicial process for partisan purposes." Opinion at 25.

Plaintiffs argue that the Defendants violated "the right of *qualified* candidates who comply with state election laws to appear on state ballots," Pl.'s Mem. at 24, arguing that "what is at issue is whether Defendants' conspiracy to prevent Plaintiffs from participating as *qualified* candidates . . . violated Plaintiffs' constitutional rights." *Id*. at 25 (emphasis in original). However, this argument is based on the incorrect assumption that, in this forum at this phase of the litigation, this Court must assume that Mr. Nader and Mr. Camejo were qualified candidates. First, Mr. Nader and Mr. Camejo do not have a constitutional right to be on a state ballot. *Clements v. Flashing*, 457 U.S. 957, 963 (1982). State ballot qualification laws determine who is a qualified candidate and the procedures for submitting and challenging qualifications for the ballot. Second, whether the state courts' findings—that Mr. Nader and Mr. Camejo were not qualified to be on their state ballots—are correct is not within the jurisdiction of this Court. The *Rooker-Feldman* doctrine, which is based on *D.C. Court of Appeals v. Feldman,* 460 U.S. 462 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), precludes such review.

As this Court explained in *Nader v. Democratic National Committee*, "[t]he Supreme Court has made clear that the [*Rooker-Feldman*] doctrine 'is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)." Opinion at 15-16. While the doctrine does not prohibit judicial review of issues independent

from the previously adjudicated state court claims, it "merely prohibits lower federal courts from hearing cases 'inextricably intertwined with the questions ruled upon by a state court'; in other words, cases functionally equivalent to an appeal from a state court. *Gray v. Poole*, 275 F.3d 1113, 1119 (D.C. Cir. 2002)." *Id.* at 16.  Thus, Mr. Nader's and Mr. Camejo's argument that they were qualified candidates fails as a matter of law because this Court must accept the state courts' decisions that they were not qualified to be candidates on the state ballots.

Even if the Plaintiffs were qualified to be on the state ballots, filing challenges to the Plaintiffs' ballot petitions was not unconstitutional and is activity protected by the First Amendment, as explained by the *Noerr-Pennington* doctrine.  "The Noerr-Pennington doctrine holds that defendants who petition the government for redress, 'whether by efforts to influence legislative or executive action or by seeking redress in court,'" are immune from liability for such activity under the First Amendment.  Opinion at 22 (citations omitted).  In this case, as in Plaintiffs' related actions, "[t]he plaintiffs vigorously proclaim that the defendants brought the various challenges with the self-serving intent to prevent Nader from competing with Kerry in the 2004 election. . . . But the First Amendment cannot be abrogated simply by alleging that one's political opponent turned to the judicial process for partisan motives." Opinion at 25 (citations omitted).  In a case that involved the same factual allegations by voters supporting Mr. Nader and Mr. Camejo in 2004, *compare* Compl. ¶ 2; P's Mem. at 2,  "Plaintiffs [Fulani *et al*.] also allege that certain statements by Defendants [DNC *et al*.], specifically Defendant McAuliffe's public statements about the 'importance of eliminating Nader as a factor in the race' also violated Plaintiffs' voting and equal protection rights.  However, political speech is 'at the core of our electoral process and of our First Amendment freedoms.'" *Fulani*, 2005 U.S. Dist. Lexis 20400 at *12 (citation omitted).  "Defendants' public political statements are not violative

of Plaintiffs' rights in any way." *Id.* at *13.

The voter Plaintiffs allege that they were unconstitutionally denied the right to vote for the candidate of their choice. Pl.'s Mem. at 25. But this claim is derivative of the candidates' claims that they were denied the right to be on the ballot of certain states. Because, as shown above, the Defendants did not violate the candidates' rights, there was no violation of the voter Plaintiffs' right to vote for the candidate of their choice. As the *Fulani* court held with respect to other voter plaintiffs, "[T]o the extent that the [voter] Plaintiffs accuse Defendants of using State election law to impede the Nader/Camejo candidacy and violate [voter] Plaintiffs' equal protection rights or the right to vote . . . that claim fails as a matter of law." *Fulani*, 2005 U.S. Dist. Lexis 20400 at *11.

The Plaintiffs also contend that the Defendants engaged in a conspiracy to deny them of their constitutional rights to be on state ballots and vote for the candidate of their choice. Pl.'s Mem. at 29. As shown above, the alleged activity did not violate the Plaintiffs' rights, and therefore there was no conspiracy to violate those rights.

Accordingly, Plaintiffs have not alleged a violation of their constitutional rights, and therefore, their 42 U.S.C. § 1983 claims should be dismissed.

II.  **DEFENDANT DEMOCRATIC NATIONAL COMMITTEE IS NOT A STATE ACTOR AND DID NOT ACT UNDER COLOR OF STATE LAW.**

"The ultimate issue in determining whether a person is subject to suit under § 1983 is . . . [whether] the alleged infringement of federal rights [is] 'fairly attributable to the State?'" *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982)); *Daskalea v. Wash. Humane Soc'y*, 480 F. Supp. 2d 16, 26 (D.D.C. 2007). Cases alleging state action arise when "a private party has taken the decisive step that caused the harm to the plaintiff, and the question is whether the State was sufficiently involved

to treat that decisive conduct as state action." *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191-92 (1988). Courts have determined that this state involvement occurs "if the State creates the legal framework governing the conduct, if it delegates its authority to the private actor, or sometimes if it knowingly accepts the benefits derived from unconstitutional behavior." *Id.* (citations omitted). Stated another way with respect to the question of whether a state employee is acting in his or her individual capacity or as an employee of the state, "it is relevant to examine . . . the extent to which the actor relies on governmental assistance and benefits, whether the actor is performing a traditional governmental function, and whether the injury caused is aggravated in a unique way by the incidents of governmental authority." *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 621-22 (1991) (citations omitted).

Here, the Plaintiffs' sole allegation of state action relates to the Pennsylvania ballot access challenge and the alleged participation by Pennsylvania legislative employees. Pl.'s Mem. at 25-29.[2] The allegation is primarily made in Paragraph 76 of the Complaint, which quotes a *Pittsburgh Post-Gazette* story about "an ongoing investigation by the Pennsylvania State Attorney General." Compl. ¶ 76.[3] As quoted in the Complaint, the story alleges "that taxpayer-funded bonuses were given to legislative employees for their work on election campaigns." *Id.* If this occurred, allegedly the bonuses "constituted an illegal use of state

---

[2] Because none of the voter Plaintiffs are Pennsylvania voters, the Complaint does not allege any state action in connection with their claims, and therefore, the voter Plaintiffs' claims should be dismissed for failure to allege a necessary element of a 42 U.S.C. § 1983 violation.

[3] Plaintiffs assert that they did not become aware of this situation until December 2007. However, they were on notice of the basic facts at least by August 2004 when the *Pittsburgh Post-Gazette* published a story titled "Nader Petition Challenged To Keep Him Off Pennsylvania Ballot," which reported that "state Democratic officials provided Reed Smith with 'volunteers' and financial support for the effort." *Nader v. McAuliffe*, Case No. 1:08-cv-000589, Memorandum In Support Of Plaintiffs' Motion For Leave To Amend Complaint, Docket No. 26, at 2.

6

money for political work." *Id.* Thus, the Complaint does not allege the critical facts necessary to find Section 1983 state action – that the legislative employees were performing official duties in connection with their employment by the state, or exercising any of the state's authority when they allegedly assisted the challengers in the Pennsylvania ballot access challenge. In fact, the opposite is alleged. Even assuming Pennsylvania legislative employees assisted the ballot access challenge to be true at this phase of the litigation, the Complaint alleges that the legislative employees' official duties did not include "work on political campaigns," *id.,* and it was illegal for the state to compensate them "for political work." *Id.* Accordingly, the Plaintiffs have not alleged that the legislative employees were acting on behalf of the state, acting under color of the state, or using the authority of the state.

There are also no allegations that any actions by Pennsylvania legislative employees constituted action by the Commonwealth of Pennsylvania or asserted the authority of the Commonwealth. Plaintiffs do not allege that the state legislative employees told them, or anyone else, that they were acting on behalf of Pennsylvania. Indeed, the Plaintiffs allege that they did not know of the legislative employees' participation (or at least that they were being paid by the state) until 2007. Rather, the Complaint alleges that Pennsylvania prohibits legislative employees from engaging in political activity as part of their official duties, but does not allege that those same employees are prohibited from engaging in political activity on their own time. The Complaint does not allege that the state has a policy of permitting its legislature employees to assist plaintiffs to challenge ballot access petitions. Indeed, the Complaint alleges that this would be contrary to the Commonwealth's policy. Thus, according to the Complaint, Pennsylvania has a legal framework that prevents legislative employees from acting under color of state law to assist ballot access challenges. Accordingly, the Complaint does not allege that

7

Pennsylvania created a legal framework or was sufficiently involved in the Nader-Camejo ballot access challenge to find that the challenge was fairly attributable to Pennsylvania.

Plaintiffs, citing *West v. Atkins*, 487 U.S. 42, 49 (1988) and *Lugar*, 457 U.S. at 94, argue that the alleged participation of employees of Pennsylvania's legislature is "sufficient . . . to establish the element of state action." Pl.'s Mem. at 27. However, neither case holds that mere employment by the state confers state action on every action by the employee. Actions by the employee on his or her own time that are not related to state duties are not attributable to the state. *How v. City of Baxter Springs*, 217 Fed. App'x. 787, 792-94 (10th Cir. 2007). The Plaintiffs also argue that *Maniaci v. Georgetown University*, 510 F. Supp. 2d 50 (D.D.C. 2007) supports their argument, but *Maniaci's* holding is inapposite. Pl.'s Mem at 28-29. Indeed, the Plaintiffs' own citations refute their argument. *Maniaci* makes clear that only "state employees performing an official duty acts pursuant to state authority, and therefore acts under color of state law." *Id.* at 68. The Complaint alleges that the Pennsylvania legislative employees were not engaged in official duties when they allegedly assisted the ballot access challengers. The Plaintiffs also cites *Maniaci* for the situation where a "state employee does not act with the actual authority of the state, but merely purports to exercise its authority." *Id.* But the Complaint does not allege that the legislative employees purported to exercise their authority—nor could they, because the legislative authority does not include participation in ballot access challenges. Nor do the Plaintiffs allege that they or anyone else was induced to take an action as a result of a state employee exercising his or her legislative authority. Accordingly, the Plaintiffs have failed to allege that anyone, least of all the DNC, acted under color of state law merely because the legislative employees allegedly assisted the ballot access challengers.

Plaintiffs refuse to acknowledge that the only state action that created the alleged constitutional harm to deny qualified candidates a place on the Pennsylvania ballot was the decision of the Pennsylvania state court that Plaintiffs' ballot petitions were inadequate. The Complaint does not allege, nor can it, that the legislative employees made or enforced that decision. Accordingly, the Plaintiffs' reliance on the legislative employees to show state action is misplaced, and the Plaintiffs have failed to show that the DNC acted under color of state law.

## CONCLUSION

In view of the above, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b).

July 7, 2008                                                                 Respectfully submitted,

_____/s/_____
Joseph E. Sandler,
D.C. Bar No. 255919
John Hardin Young
D.C. Bar No. 190553
Stephen E. Hershkowitz
D.C. Bar No. 282947
Elizabeth F. Getman


SANDLER, REIFF & YOUNG, P.C.
300 M Street, S.E., Suite 1102
Washington, D.C. 20003
(202) 479-1111
(202) 479-1115 (facsimile)
young@sandlerreiff.com