UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RALPH NADER, et al.,

                    Plaintiffs,

     v.

THE DEMOCRATIC NATIONAL COMMITTEE, et al.,

                    Defendants.

Civil Action No. 1:08-00589-RMU

**MOTION TO DISMISS OF DEFENDANT SENATOR JOHN KERRY AND DEFENDANT KERRY-EDWARDS 2004 INC.**

       Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendant Senator John Kerry and defendant Kerry-Edwards 2004 Inc., by and through their undersigned counsel, hereby move this Court to dismiss plaintiffs' amended complaint and each of its Counts as barred by res judicata and for failure to state a claim upon which relief can be granted. The grounds for this motion are set forth in defendants' Memorandum in Support of their Motion, which defendants incorporate herein by reference.

DATED: July 30, 2008

Respectfully submitted,

**PERKINS COIE** LLP

By: /s/ Marc E. Elias
    Marc E. Elias, Bar No. 442007
MElias@perkinscoie.com
607 Fourteenth Street, NW
Washington, DC 20005-2003
Telephone: 202.628.6600
Facsimile: 202.434.1690

*Counsel for Defendant John Kerry and Defendant Kerry-Edwards 2004 Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RALPH NADER, et al.,

                Plaintiffs,

    v.

THE DEMOCRATIC NATIONAL COMMITTEE, et al.,

                Defendants.

Civil Action No. 1:08-00589-RMU

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS JOHN KERRY AND KERRY-EDWARDS 2004 INC.'S
## MOTION TO DISMISS THE AMENDED COMPLAINT

This memorandum is substantially similar to the memorandum that Defendant Senator John Kerry and Defendant Kerry-Edwards 2004 Inc. ("the Campaign") filed in support of their motion to dismiss plaintiffs' complaint, before plaintiffs amended their pleadings to add supplemental allegations. Plaintiffs' new allegations do not cure the deficiencies of the first complaint. Like the previously filed complaint, the amended complaint is barred by res judicata and fails to state a claim upon which relief can be granted.

## INTRODUCTION

This is yet one more in the growing line of cases in which Ralph Nader and his supporters have wasted valuable court resources with meritless and repetitive litigation concerning elections in which they garnered no more than a "sliver" of the vote. *See Nader v. Democratic National Committee*, No. 07-2136, Mem. Op. at 1 (D.D.C. May 27, 2008); *Nader v. McAuliffe*, No. 08-428; *Fulani v. McAuliffe*, No. 04-cv-6973, 2005 WL 2276881 (S.D.N.Y. Sept. 19, 2005); *Nader v. Blackwell*, No. 2:06-cv-821, 2007 WL 2744357 (S.D. Ohio Sept. 19, 2007); *In re Nader*, 588 Pa. 450 (2006), *cert. denied*, 127 S. Ct. 995 (2007). Having already litigated—and lost—their claim that defendants "engineer[ed] [Ralph

Nader's] defeat by conspiring to deprive him of votes and campaign cash via eligibility challenges in multiple suits across the country," *see Nader*, No. 07-2136, Mem. Op. at 2, plaintiffs are now attempting to relitigate the same alleged conspiracy under a new legal theory.

Because plaintiffs could have pursued their claims in the earlier suit, they are barred from litigating them now: The doctrine of res judicata bars the relitigation of claims that were previously raised, and those that could or should have been raised. In addition, this Court has already ruled that the First Amendment protects defendants from being held liable for their conduct: The activity in which Senator Kerry and the Campaign allegedly engaged is fully protected under the Constitution's guarantee of the right to petition—a right that carries particular importance in the context of political campaigns. *Id.* at 2, 22-31; *see also E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 137-38 (1961) ("right of petition" is protected by the Bill of Rights and is central to our democracy). Finally, even if plaintiffs' claims were not barred by res judicata and by the First Amendment, the complaint should be dismissed with prejudice, because (1) plaintiffs allege no deprivation of civil rights by the Senator, the Kerry-Edwards Campaign, or any other defendant; (2) Senator Kerry and the Campaign are not state actors and did not act under color of state law; (3) plaintiffs' allegations of conspiracy are wholly conclusory; and (4) plaintiffs' claims are time-barred.

## BACKGROUND

This is the third suit filed by Nader, his Vice-Presidential candidate, and six voters— all arising out of the same nucleus of facts and setting forth virtually identical requests for relief.[1]  On October 30, 2007, Nader and several of his supporters filed suit in the Superior

---

[1] In addition to the three cases before this Court, Nader and supporters have brought numerous other actions complaining about their defeat at the polls. For example, in 2005, individual voters and supporters of Nader filed a lawsuit against Senator Kerry, the DNC, and other "conspirators," alleging that defendants engaged in a vast conspiracy to keep Nader-Camejo off the 2004 ballot in violation of 42 U.S.C. §§ 1983 and 1985. *Fulani v. McAuliffe*, No. 04–cv-6973, 2005 WL 2276881 (S.D.N.Y. 2005). A District Court in the Southern District of New York emphatically

-2-

Court for the District of Columbia against numerous defendants including the Democratic National Committee, Reed Smith, LLP, the Kerry-Edwards Campaign, and Senator John Kerry. Plaintiffs alleged that, in violation of state tort law and federal constitutional law, defendants conspired to keep Nader off the Presidential ballot in numerous states. The very next day, plaintiffs filed a virtually identical complaint in the Eastern District of Virginia, alleging the same facts and causes of action, but naming different defendants. *Nader v. McAuliffe*, No. 1:07-cv-1101. On November 27, 2007, the District of Columbia case was removed to this Court. On January 23, 2008, nearly two months later, plaintiffs amended their complaint. They changed nothing about the facts or nature of the injury alleged; they simply deleted Counts III and IV of their original complaint, which had alleged violations of 42 U.S.C. § 1983, and then moved to remand. On March 7, 2008, the Eastern District of Virginia transferred the Virginia case to this Court, without addressing the merits of the motion to dismiss. Plaintiffs withdrew their motion to remand the District of Columbia case. On May 27, 2008, upon motions by the defendants, and after briefing by all parties, this Court dismissed plaintiffs' January 23, 2008 amended complaint. The Court held that it lacked jurisdiction to consider the plaintiffs' malicious prosecution claims that directly attacked prior state court judgments and that the First Amendment barred the remaining claims. *Nader*, No. 07-2136, Mem. Op. at 2, 22-31. As the Court explained, "defendants who petition the government for redress of grievances," including by "seeking redress in court," are immune from liability for such activity under the First Amendment. *Id*. at 22 (internal citations omitted).

Meanwhile, on April 4, 2008, while both the January 23 amended complaint and the transferred Virginia action were pending before this Court, plaintiffs initiated this action.

---

dismissed the case, noting that this was "yet another in a long line of cases in which" the courts were misused to pursue a political agenda that could not be "accomplish[ed] at the ballot box." *Id*. at *1.

Once again, plaintiffs named as defendants the DNC, Reed Smith, the Kerry-Edwards Campaign, and Senator Kerry. Defendants moved to dismiss on June 6, 2008.

After full briefing by all parties, while awaiting a decision by the Court, plaintiffs amended their complaint on July 21, 2008. Aside from some additional factual detail and minor alterations in wording, the amended complaint contains essentially the same allegations as the April 4, 2008 complaint—and both share a common nucleus of facts with the January 23 complaint, dismissed by this Court. As in the dismissed complaint, plaintiffs allege that "[d]efendants agreed and conspired to launch a nationwide legal assault on Mr. Nader's campaign, which would drain the campaign of money, time and other resources." Am. Compl. No. 08-589 ¶ 50; Am. Compl. No. 07-2136 ¶ 45. Indeed, in preparing their new complaint, plaintiffs lifted paragraph after paragraph from their January 23 amended complaint. *Compare, e.g.*, Am. Compl. No. 08-589 ¶¶ 2-10, *with* Am. Compl. No. 07-2136 ¶¶ 2-10; Am. Compl. No. 08-589 ¶¶ 50-76, *with* Am. Compl. No. 07-2136 ¶¶ 45-71; *and* Am. Compl. No. 08-589 ¶¶ 107-111, *with* Am. Compl. No. 07-2136 ¶¶ 228-32. In this case, however, plaintiffs assert the federal causes of action previously dropped—that by engaging in litigation to challenge Nader's access to the 2004 Presidential ballot, defendants conspired to, and did in fact, violate 42 U.S.C. § 1983, the Qualifications Clause, and the First and Fourteenth Amendments of the United States Constitution. Am. Compl. No. 08-589 ¶¶ 117-128. Defendant John Kerry and Defendant Kerry-Edwards 2004 Inc. again move to dismiss.

## ARGUMENT

### A.    <u>Legal Standard</u>

To withstand a motion to dismiss, plaintiffs must state a claim upon which relief can be granted. While a complaint need not include "detailed factual allegations" or provide a "heightened fact pleading of specifics" to avoid dismissal, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions." *Bell*

*Atlantic v. Twombly*, 127 S. Ct. 1955, 1965-66, 1974 (2007) (internal quotations and citation omitted; alteration in original); *Shirk v. Garrow*, 505 F. Supp. 2d 169, 172-73 (D.D.C. 2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965 (citing 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235-36 (3d ed. 2004)); *see also Kopff v. World Research Group, LLC*, 519 F. Supp. 2d 97, 99 (D.D.C. 2007). Moreover, "the court need not accept inferences drawn by plaintiff[s] if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Res judicata is an affirmative defense that is generally pleaded in a defendant's answer, but is also properly brought in a pre-answer Rule 12(b)(6) motion to dismiss where, as here, "all relevant facts are shown by the court's own records," *Hemphill v. Kimberly-Clark Corporation*, 530 F. Supp. 2d 108, 111 (D.D.C. 2008) (internal citations omitted); *Stanton v. Dist. of Columbia Ct. of Appeals*, 127 F.3d 72, 76-77 (D.C. Cir. 1997), or by public records from other proceedings, *see Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005).

**B.    The Plaintiffs Are Barred from Bringing this Suit Under the Principles of Res Judicata**

The doctrine of res judicata "prevents repetitious litigation involving the same causes of action or the same issues." *Sieverding v. American Bar Ass'n*, 439 F. Supp. 2d 111, 115 (D.D.C. 2006) (Urbina, J.) (quoting *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 946 (D.C. Cir. 1983)). This principle is critical to the administration of the judicial system, for it helps "conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and [] prevent serial forum-shopping and

piecemeal litigation." *Id.* (quoting *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981)); *see also Allen v. McCurry*, 449 U.S. 90, 94 (1980).

Res judicata has two distinct aspects—claim preclusion and issue preclusion (also known as collateral estoppel). *Sieverding*, 439 F. Supp. 2d at 115; *see also Taylor v. Sturgell*, 128 S.Ct. 2161, 2172 (2008). Under claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Id.* (quoting *Drake v. Fed. Aviation Admin.*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Allen*, 449 U.S. at 94)). Under issue preclusion or collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Sieverding*, 439 F. Supp. 2d at 115 (quoting *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (quoting *Allen*, 449 U.S. at 94)). In short, "claim preclusion forecloses all that which might have been litigated previously," while issue preclusion "prevents the relitigation of any issue that was raised and decided in a prior action." *Id.* (quoting *I.A.M. Nat'l Pension Fund*, 723 F.2d at 949). Here, plaintiffs' repetitive and vexatious suit is barred by both claim and issue preclusion.

> **1.    This suit is barred by claim preclusion because it is between the same parties and shares a common nucleus of facts with the suit previously dismissed by this Court.**

Res judicata, or claim preclusion, applies where there is: (1) an identity of the parties in both suits; (2) a final judgment on the merits by a court of competent jurisdiction; and (3) an identity of the cause of action in both suits—i.e., the suits share a common "nucleus of facts." *See Taylor v. Blakey*, 490 F.3d 965, 970-78 (D.C. Cir. 2007); *Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210, 217-18 (D.C. Cir. 2004).

In this case, all res judicata requirements are clearly met. *First*, Senator Kerry and the Campaign, as well as the DNC and Reed Smith, were defendants in plaintiffs' earlier suit in

this Court. *Second,* this Court dismissed plaintiffs' January 23 complaint, concluding both that the court lacked jurisdiction and that plaintiffs failed to state a claim upon which relief could be granted as required under Federal Rule of Civil Procedure 12(b)(6). *Nader*, No. 07-2136, Mem. Op. at 2. A dismissal pursuant to Rule 12(b)(6) constitutes a final judgment on the merits for purposes of res judicata. *Sieverding*, 439 F. Supp. 2d at 116.

*Third*, the two suits "share a common nucleus of facts"—i.e., "the facts are related in time, space, origin, or motivation"; they "form a convenient trial unit"; and their treatment as a unit would "conform[] to the parties' expectations or business understanding or usage." *Taylor*, 490 F.3d at 977 (internal citations omitted). Indeed, the two suits allege the *exact same* conspiracy. *Compare* Am. Compl. No. 08-589 ¶ 1 (Defendants "agreed and conspired that if Mr. Nader did run in 2004, they would launch a massive, nationwide unlawful assault on his candidacy, using unfounded litigation to harass, obstruct and drain his campaign of resources, deny him ballot access and effectively prevent him from running for public office."), *with* Am. Compl. No. 07-2136 ¶ 1 ("Defendants therefore agreed and conspired that if Mr. Nader did run in 2004, they would launch a massive, nationwide unlawful assault on his candidacy, using unfounded litigation to harass, obstruct and drain his campaign of resources, deny him ballot access and effectively prevent him from running for public office.").

Throughout this complaint, plaintiffs have included paragraph after paragraph lifted almost verbatim from their January 23 amended complaint. To support their theory of a vast conspiracy, for example, plaintiffs rely on the same series of lawsuits by defendants. Here they allege:

> Within . . . 12 weeks, between June and September of 2004, Defendants and their co-conspirators filed 24 complaints against the Nader-Camejo Campaign in 17 states, including Arizona, Arkansas, Colorado, Florida, Illinois, Iowa, Maine, Michigan, Mississippi, New Hampshire, Nevada, New Mexico, Ohio, Pennsylvania, Washington, West Virginia and Wisconsin, and intervened in

> proceedings to remove Nader-Camejo from the ballot in Oregon. Said
> conspirators also filed five complaints before the Federal Election
> Commission (FEC). In each state court lawsuit, said conspirators challenged
> Nader-Camejo's nomination papers and asked state elections officials not to
> certify them as candidates for President and Vice President in the 2004
> general election.

Am. Compl. No. 08-589 ¶ 3.  In the January 23 amended complaint, they made the exact

same allegation:

> Within . . . 12 weeks, between June and September of 2004, Defendants and
> their co-conspirators filed 24 complaints against the Nader-Camejo Campaign
> in 17 states, including Arizona, Arkansas, Colorado, Florida, Illinois, Iowa,
> Maine, Michigan, Mississippi, New Hampshire, Nevada, New Mexico, Ohio,
> Pennsylvania, Washington, West Virginia and Wisconsin, and intervened in
> proceedings to remove Nader-Camejo from the ballot in Oregon. Said
> conspirators also filed five complaints before the Federal Election
> Commission (FEC). In each state court lawsuit, said conspirators challenged
> Nader-Camejo's nomination papers and asked state elections officials not to
> certify them as candidates for President and Vice President in the 2004
> general election.

Am. Compl. No. 07-2136 ¶ 3.

> Plaintiffs also ascribe precisely the same motivation to the defendants in both suits.

This complaint reads:

> Defendants' admitted purpose for bringing these lawsuits, however, was not to
> vindicate valid legal claims, but rather to bankrupt Nader-Camejo's campaign
> by forcing the candidates to spend their limited resources of time, talent and
> money on the defense of unfounded lawsuits.  Defendants' motive, which they
> also admitted, was to help Democratic candidates John Kerry and John
> Edwards win the election by forcing their political competitors from the race.

Am. Compl. No. 08-589 ¶ 4.  The January 23 amended complaint states:

> Defendants' admitted purpose for bringing these lawsuits, however, was not to
> vindicate valid legal claims, but rather to bankrupt Nader-Camejo's campaign
> by forcing the candidates to spend their limited resources of time, talent and
> money on the defense of unfounded lawsuits.  Defendants' motive, which they
> also admitted, was to help Democratic candidates John Kerry and John
> Edwards win the election by forcing their political competitors from the race

Am. Compl. No. 07-2136 ¶ 4. *Compare also* Am. Compl. No. 08-589 ¶¶ 2-10, *with* Am. Compl. No. 07-2136 ¶¶ 2-10; Am. Compl. No. 08-589 ¶¶ 50-76, *with* Am. Compl. No. 07-2136 ¶¶ 45-71; *and* Am. Compl. No. 08-589 ¶¶ 107-111, *with* Am. Compl. No. 07-2136 ¶¶ 228-32. In short, the two cases not only involve facts that are "related" in time, space, origin, or motivation, they involve, in large part, *identical* facts, reiterated verbatim.

That plaintiffs have raised a new legal theory, and have included some additional factual detail to support their theory, is of no consequence. *Taylor*, 490 F.3d at 978. Res judicata bars not only the relitigation of claims that were previously raised but also those claims that could or should have been raised in an earlier suit. *See Natural Resources Defense Council v. EPA*, 513 F.3d 257, 261 (D.C. Cir. 2008); *Johnson v. Ashcroft*, 445 F. Supp. 2d 45, 49-50 (D.D.C. 2006); *see also San Remo Hotel, LP v. City and County of San Francisco*, 545 U.S. 323, 336 n.16 (2005).

Here, there can be no doubt that plaintiffs could have raised their federal claims in the first action. Indeed, they did raise them—they dropped the federal claims only when they sought to avoid this Court's jurisdiction and remand to the D.C. Superior Court, and they continued to pursue those claims against other defendants in *Nader v. McAuliffe*, No. 08-428. Moreover, plaintiffs did not seek "to reinstate their constitutional claims" into the January 23 amended complaint. *See Nader*, No. 07-2136, Mem. Op. at 7. Having had an opportunity to litigate their federal claims, and chosen not to, they cannot do so again now. *See Hemphill v. Kimberly-Clark Corporation*, 530 F. Supp. 2d 108, 111 (D.D.C. 2008); *Sieverding*, 439 F. Supp. 2d at 117. To permit such repetitive and redundant litigation would waste judicial resources, undermine the integrity of court judgments, and encourage forum-shopping and piecemeal litigation. *See Allen*, 449 U.S. at 94; *Hardison*, 655 F.2d at 1288; *Johnson*, 445 F. Supp. 2d at 49. Accordingly, this Court should grant defendants' motion and should dismiss this suit with prejudice.

**2.    This Court has already ruled that the *Noerr-Pennington* doctrine immunizes defendants from liability for their conduct, and plaintiffs are precluded from litigating that issue again.**

Plaintiffs' suit is also barred because the *Noerr-Pennington* doctrine immunizes the defendants from liability for their alleged conduct.  As this Court recognized in its May 27 ruling, the *Noerr-Pennington* doctrine holds that defendants who petition the government for redress of grievances, including through litigation in court, are "immune from liability for such activity under the First Amendment." *Nader*, No. 07-2136, Mem. Op. at 22 (citing *Covad Comm'cns Co. v. Bell Atl. Corp.*, 385 F.3d 666, 677 (D.C. Cir. 2005)).  Though sham litigation receives no protection, this Court expressly held that the ballot litigation engaged in by defendants—i.e., the litigation at issue in both this case and the dismissed case—was *not* sham litigation.  *See Nader*, No. 07-2136, Mem. Op. at 2, 22-31.  The Court explained: "[A]nticipating a legal campaign in the contingency of a political opponent's entry into a race is different from knowingly filing challenges that one knows *at the time of filing* to be false or baseless.  The plaintiffs have proffered no evidence nor raised any allegations that the defendants presented claims that they knew to be false or baseless." *Id*. at  27 (emphasis in original) (internal citations omitted).  Contrary to plaintiffs' contention, the Court made clear, "[i]nitiating a law suit with the ulterior motive of forcing normal litigation expenses and distractions on an opponent" does not satisfy the sham exception to the *Noerr-Pennington* doctrine.  *Id*. at 20-21.  "[T]he First Amendment cannot be abrogated simply by alleging that one's political opponent turned to the judicial process for partisan motives." *Id*. at 25.

That this complaint seeks relief under federal law, instead of state tort law, does not change the First Amendment analysis.  *See Eaton v. Newport Bd. of Educ.*, 975 F.2d 292 (6th Cir. 1992) (holding that *Noerr-Pennington* protected defendants from liability under 42 U.S.C. § 1983); *Video Int'l Prod., Inc. v. Warner-Amex Cable Communications, Inc.*, 858 F.2d 1075, 1084 (5th Cir. 1988) (same).  As this Court held, the *Noerr-Pennington* doctrine

exempts only sham litigation and does not exempt the legitimate petitioning conduct at issue here. *See Nader*, No. 07-2136, Mem. Op. at 22-31.

Plaintiffs are barred from relitigating the *Noerr-Pennington* question. A prior ruling on an issue of law or fact has preclusive effect if: (1) the same issue now being raised was contested by the parties and submitted for judicial determination in the prior case; (2) the issue was actually and necessarily determined by a court of competent jurisdiction; and (3) preclusion in the second case does not work a basic unfairness to the party bound by the first determination—e.g., where "the losing party clearly lacked any incentive to litigate the point in the first trial, but the stakes of the second trial are of a vastly greater magnitude." *Yamaha Corp. of America v. United States*, 961 F.2d at 254 (D.C. Cir. 1992) (internal citations omitted); *accord Bryson v. Gere*, 268 F. Supp. 2d 46, 57 (D.D.C. 2003); *see also Allen*, 449 U.S. at 103 (doctrine of collateral estoppel is applicable to section 1983 actions).

Here, all three requirements for issue preclusion are met. *First*, the question whether the *Noerr-Pennington* doctrine protects defendants' alleged conduct in litigating various ballot access cases was "contested by the parties and submitted for judicial determination in the prior case." *Yamaha Corp. of America*, 961 F.2d at 254. *Second*, the issue was actually and necessarily determined by this Court—a court of competent jurisdiction. *Id. Third*, preclusion would not work any unfairness, as plaintiffs had every incentive to—and did— litigate the point in the first case. *Id.*; *see also Beverly Health & Rehabilitation Servs., Inc. v. NLRB*, 317 F.3d 316, 321 (D.C. Cir. 2003) (holding that there is "no unfairness in holding party to result reached" in earlier case where party "had every incentive to—and did—litigate the issue . . . there"); *Hall v. Clinton*, 285 F.3d 74, 82 (D.C. Cir. 2002). Plaintiffs simply may not waste the court's resources by relitigating the issue they have already contested and lost.

**C.**    **Plaintiffs' Claims Should Be Dismissed for Failure to State a Plausible Claim for Relief under 42 U.S.C. § 1983**

Even if this case were not barred by principles of res judicata, plaintiffs' complaint would fail on its face. As discussed above, the conduct alleged against Senator Kerry and the Kerry-Edwards Campaign is fully protected by the First Amendment's right to petition. *See Nader*, No. 07-2136, Mem. Op. at 22-31; *Noerr*, 365 U.S. at 138. Therefore, plaintiffs have not stated a claim upon which relief can be granted. Moreover, plaintiffs have utterly failed to state a claim under 42 U.S.C. § 1983: They have not—and cannot—establish that Senator Kerry or the Kerry-Edwards Campaign, or any of the co-defendants, violated any of plaintiffs' constitutional or federal rights or that that they acted under color of state law. *See McManus v. District of Columbia*, 520 F. Supp. 2d 46, 71 (D.D.C. 2007) (to proceed with a section 1983 claim, plaintiffs must demonstrate that defendants deprived them of rights, privileges, or immunities secured by the Constitution and laws of the United States, while acting under color of state law).

**1.**    **Plaintiffs have not and cannot allege a deprivation of constitutional rights.**

In essence, plaintiffs charge that defendants violated plaintiffs' rights under the Qualifications Clause, the First Amendment, and the Fourteenth Amendment by forcing the Nader Campaign to expend resources to defend itself in ballot access litigation. *See* Am. Compl. No. 08-589 ¶¶ 111, 118-119. But neither the Qualifications Clause, the First Amendment, nor the Fourteenth Amendment guarantees a candidate unfettered access to the Presidential ballot. To the contrary, the Supreme Court has made clear that states may impose requirements for qualification on the ballot. *See Storer v. Brown*, 415 U.S. 724, 729-36 (1974); *see also Anderson v. Celebrezze*, 460 U.S. 780, 788 n.9 (1983) ("[States have] the undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot, because it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates."); *Turner v. Fouche*, 396 U.S.

346, 362-63 (1970) (Constitution grants no right to public office but protects against "invidiously discriminatory disqualification").

Nor does the Constitution guarantee a candidate unlimited resources to advance his candidacy. *See McConnell v. Federal Election Comm'n*, 540 U.S. 93, 708 (2003) (explaining that there is no legally cognizable right to equal economic resources in a political campaign). In short, plaintiffs' contention that they suffered a constitutional deprivation because they were required to expend resources during ballot access litigation is wholly without merit.

Plaintiffs' contention that defendants' ballot litigation violated voters' constitutional rights by depriving them of the choice to vote for Nader for President, *see* Am. Compl. No. 08-589 ¶¶ 111, 118-119, fares no better. There is no constitutional right to have one's candidate of choice appear on the ballot if that candidate does not fulfill state ballot access requirements. In states where the ballot access challenges were successful, federal or state courts have already determined that Nader was properly excluded.[2] In the other states, Nader did appear on the ballot, and thus the constitutional rights of Nader, Camejo, and the voters could not have been deprived.

2.    **Plaintiffs have not and cannot allege that defendants acted under color of state law.**

Plaintiffs' section 1983 claim fails not only because plaintiffs allege no deprivation of a constitutional right, but also because they cannot demonstrate the requisite state action. They have not alleged that Senator Kerry, the Kerry-Edwards Campaign, or any of the defendants or co-conspirators named in this complaint is an officer or employee of any state or municipal government or government agency or instrumentality. Nor have plaintiffs

---

[2] *See, e.g., Nader v. Connor*, 388 F.3d 137 (5th Cir. 2004); *Nader v. Keith*, 385 F.3d 729 (7th Cir. 2004); *Nader v. Brewer*, 386 F.3d 1168 (9th Cir. 2004); *Nader v. Ill. State Bd. of Elections*, 354 Ill. App. 3d 335 (2004); *In re Nomination of Nader*, 580 Pa. 134 (2004); *Kucera v. Bradbury*, 337 Or. 384 (2004); *see also Rogers v. Corbett*, 468 F.3d 188 (3d Cir. 2006) (Pennsylvania state ballot access law does not violate the Constitution).

proffered facts sufficient to demonstrate that Senator Kerry or the Campaign was acting under color of state law.

A person acts under "color of law" if he "exercises power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *McManus*, 530 F. Supp. 2d at 70 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Hoai v. Vo*, 935 F.2d 308, 312 (D.C. Cir. 1991) ("Private parties . . . may be deemed to have acted under color of law" only "when they conspire with state officials" or "when they willfully engage in joint activity with a state or its agents."). Here, plaintiffs make a boilerplate assertion that "[d]efendants engaged in state action and acted under color of state law and acted jointly and in concert with individuals who acted under color of state authority." Am. Compl. No. 08-589 ¶¶ 121, 127. But they offer absolutely no allegations of fact to support the conclusion that Senator Kerry or the Campaign exercised power possessed by virtue of state law, or that they acted in concert with state actors.

Plaintiffs' claim against Senator Kerry and the Kerry-Edwards Campaign appears to rest on the Campaign's alleged participation in state ballot access litigation,[3] but it is well established that a private party does not become a state actor simply by bringing a state court action. *See Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 941 (1982) (mere "private misuse of a state statute does not describe conduct that can be attributed to the State"); *Hoai v. Vo*, 935 F.2d 308, 313 (D.C. Cir. 1991) ("[M]ere recourse to state or local court procedures does not by itself constitute 'joint activity' with the state sufficient to subject a private party to liability under section 1983."). Indeed, the District Court for the Southern District of New York admonished Nader supporters several years ago for bringing a similar section 1983 action alleging that defendants illegally conspired simply by pursuing litigation to keep

---

[3] Notably, plaintiffs do not allege—even in conclusory terms—that Senator Kerry encouraged, procured, or participated in any litigation whatsoever; rather, they simply allege that others undertook litigation for his benefit, and that Senator Kerry stated that he was not personally involved in the litigation. *See, e.g.*, Am. Comp. No. 08-589 ¶¶ 70, 81, 115.

Nader-Camejo off the ballot: "'[M]erely resorting to the courts and being on the winning side of a lawsuit," the Court made clear, "'does not make a party' responsible for depriving a plaintiff of his rights." *Fulani*, 2005 WL 2276881 at *3 n.4 (quoting *Dennis v. Sparks*, 449 U.S. 24, 28 (1980)). Nor does it "make a party a co-conspirator or a joint actor with the judge." *Dennis*, 449 U.S. at 28.

Plaintiffs allege that co-defendant Reed Smith worked "in cooperation with" legislative aides in Pennsylvania who volunteered to assist with the Nader-Camejo ballot challenges, and that those aides received state-funded bonuses. *See, e.g.*, Am. Compl. No. 08-589 ¶¶ 79-80. In their amended complaint, they rely on Grand Jury presentment in Pennsylvania regarding alleged wrongdoing by Pennsylvania Democratic officials. *See id.* ¶¶ 105-106. These allegations in no way concern Senator Kerry or the Kerry-Edwards Campaign.[4] Indeed, plaintiffs make *no* factual allegation that Senator Kerry or the Campaign had involvement in, or connection to, any of the alleged activity in Pennsylvania, let alone any contact with the state volunteers. *See id.* ¶¶ 77-106 (describing Pennsylvania litigation). Rather, they assert in conclusory terms, with no factual support, that Pennsylvania employees acted jointly with Reed Smith, "pursuant to an agreement with . . . Defendant John Kerry." *Id.* ¶ 106. This is simply not enough to state a plausible claim for relief. *See Twombly*, 127 S. Ct. at 1965; *see also Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) ("[T]he court need not accept inferences drawn by plaintiff[s] if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations."). Plaintiffs also allege that individuals involved with the Pennsylvania ballot challenges sought to benefit the Senator and the Campaign. But it is beyond cavil that a private party is not transformed into a state actor

---

[4] Senator Kerry and the Kerry-Edwards Campaign do not concede that Reed Smith or the DNC acted under color of state law. To the contrary, for the reasons explained by defendant Reed Smith, plaintiffs' section 1983 complaint fails with respect to all defendants. *See* Brief of Defendant Reed Smith.

because he benefits from state action.  *See Hoai*, 935 F.2d at 313; *Metalvlos v. Anderson*, 249 F.3d 301 (4th Cir. 2001).

**D.**    **Plaintiffs Have Failed to Plead a Civil Rights Conspiracy**

Because plaintiffs have failed to plead an underlying constitutional deprivation, their conspiracy claim cannot survive.  "Civil conspiracy is not an independent tort but only a means for establishing vicarious liability for an underlying tort." *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724 (D.C. 2000); *accord Nader*, 07-2136, Mem. Op. at 31.  *See also Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996) (To state a claim for civil conspiracy under section 1983, plaintiffs must allege: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) action in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing a deprivation of constitutional rights); *accord Austin v. District of Columbia*, 2007 WL 1404444 (D.D.C. May 11, 2007); *see also LaRouche v. Fowler*, 152 F.3d 974, 987 (D.C. Cir. 1998) (enumerating requirements for a conspiracy claim under 42 U.S.C. § 1985(3)).

But even if plaintiffs had alleged a constitutional violation, their claim would fail, for the complaint is fatally nonspecific with respect to Senator Kerry and the Campaign. Plaintiffs assert that a vast conspiracy "unprecedented in its magnitude and scope" was hatched against Nader.  Am. Compl. No. 08-589 ¶ 71.  The amended complaint, however, includes no factual allegations connecting Senator Kerry to this supposedly vast conspiracy. They offer only their conclusory statement that the Pennsylvania activities occurred "pursuant to an agreement with . . . Defendant John Kerry."  *Id.* ¶ 106.  The complaint is also wholly lacking with regard to the Campaign.  Plaintiffs contend that the "Kerry-Edwards Campaign also joined the conspiracy, coordinating with lawyers and directly participating in the conspiracy's litigation," *id.* ¶ 64; that the Campaign recruited lawyers, through its

website, to participate in ballot access litigation, *id.*; and that "[t]he DNC, the Kerry-Edwards Campaign, the Ballot Project, 18 state or local Democratic Parties, at least 95 lawyers from 53 law firms, and hundreds if not thousands of Democratic Party operatives conspired" to prevent Nader from running for President, *id.* ¶ 67.[5]   But "[t]he record does not reveal *any* facts, with the exception of [plaintiffs'] own conclusions, that the [defendants] participated" in an illegal conspiracy. *See Hill v. Medlantic Health Care Group*, 933 A.2d 314, 334 (D.C. 2007).

It is longstanding precedent that complaints alleging conspiracy cannot survive a motion to dismiss if they do not support their claims that a defendant agreed to violate the law with references to material facts about the defendant's participation. *See Brady v. Livingood*, 360 F. Supp. 2d 94 (D.D.C. 2004).  "The mere repetition of a conclusory statement that a conspiracy exists and that all the alleged events occurred as a result of a conspiracy are insufficient as a matter of law." *Bush v. Butler*, 521 F. Supp. 2d 63, 69 (D.D.C. 2007); *see also Robertson v. Merola*, 895 F. Supp. 1, 4 (D.D.C. 1995); *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000); *Hill*, 933 A.2d at 334.

**E.     Plaintiffs' Claims are Time-Barred**

In addition to the reasons stated above, the Court should dismiss plaintiffs' claims as time-barred.  The statute of limitations for a section 1983 claim in the District of Columbia is three years. *See Smith-Haynie v. District of Columbia,* 155 F.3d 575, 577 n.1 (D.C. Cir. 1998); *Turner v. District of Columbia*, 383 F. Supp. 2d 157, 168 (D.D.C. 2005).  This suit was filed on April 4, 2008.  The injuries plaintiffs complain of—depriving Nader of

---

[5] Notably, plaintiffs allege a meeting during the Democratic convention where "the organizers and leaders of the conspiracy met privately to discuss their plans."  Am. Compl. No. 08-589 ¶ 51.  They do *not* assert that any representative of the Campaign attended that meeting.

appearing on the 2004 general election ballot—all accrued before April 4, 2005, and therefore fall outside the three-year statute of limitations.[6]

## CONCLUSION

Because plaintiffs have failed to state any claim against Senator Kerry or the Kerry-Edwards Campaign upon which relief can be granted, this Court should dismiss the case, with prejudice.

DATED: July 30, 2008                         Respectfully submitted,

                                             **PERKINS COIE** LLP

                                             By: /s/ Marc E. Elias
                                                 Marc E. Elias, Bar No. 442007
                                             MElias@perkinscoie.com
                                             607 Fourteenth Street, NW
                                             Washington, DC 20005-2003
                                             Telephone: 202.628.6600
                                             Facsimile: 202.434.1690

                                             *Counsel for Defendant John Kerry and*
                                             *Defendant Kerry-Edwards 2004 Inc.*

---

[6] Finally, as this Court recognized in its May 27 opinion, the injunctive relief sought by plaintiffs is "simply inappropriate." *Nader*, No. 07-2136, Mem. Op. at 13. Plaintiffs ask this Court to enjoin the defendants from engaging in "future violations of law" with respect to Nader's ballot eligibility in 2008. But "there is no reasonable expectation that the plaintiffs will again be subjected to the same [alleged] conspiracy involving the same parties and the same disputed issues from the 2004 election." *Id.* at 14. Courts "do not issue entirely prospective decrees enjoining parties from engaging in 'unlawful conduct' *ex ante* without enunciating the actions contemplated or undertaken." *Id.* at 15.

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing Motion to Dismiss and Proposed

Order on this 28th day of July 2008 by means of the Court's CM/ECF system on the

following parties:

Oliver B. Hall
1835 16th Street, N.W.
Washington, DC  20009

*Counsel for Plaintiffs Ralph Nader, Peter
Miguel Camejo, D.B. Fanning C.K. Ireland,
Julie Coyle, Herman Blankenship, Lloyd
Marbet, and Gregory Kafoury*

Douglas K. Spaulding
Lasagne Wilhite
REED SMITH LLP
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, DC  20005

*Counsel for Defendant Reed Smith LLP*

Joseph E. Sandler
John Hardin Young
Stephen E. Hershkowitz
SANDLER, REIFF & YOUNG, P.C.
50 E Street, SE #300
Washington, DC  20003

*Counsel for Defendants Democratic
National Committee*

                                        /s/ Marc E. Elias
                                        Marc E. Elias D.C. Bar No. 442007
                                        MElias@perkinscoie.com
                                        607 Fourteenth Street, NW, Suite 800
                                        Washington, DC  20005-2011
                                        Telephone:  202.628.6600
                                        Facsimile:  202.654.9126
                                        *Counsel for Defendants*
                                        *John Kerry and Kerry-Edwards 2004 Inc*.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RALPH NADER, et al.,

                 Plaintiffs,

    v.

THE DEMOCRATIC NATIONAL COMMITTEE, et al.,

                 Defendants.

Civil Action No. 08-589-RMU

**[PROPOSED] ORDER GRANTING THE MOTION TO DISMISS OF DEFENDANT SENATOR JOHN KERRY AND DEFENDANT KERRY-EDWARDS 2004 INC.**

Upon consideration of the Motion to Dismiss of Defendant Senator John Kerry and Defendant Kerry-Edwards 2004 Inc., it is hereby **ORDERED** that the motion is **GRANTED**, and the case is **DISMISSED** as to Defendant Senator John Kerry and Defendant Kerry-Edwards 2004 Inc.

ENTERED this ___ day of _____ 2008.

_____

RICARDO M. URBINA

United States District Judge