UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RALPH NADER, et al.,<br><br>   Plaintiffs,<br><br>v.<br><br>THE DEMOCRATIC NATIONAL COMMITTEE, et al.,<br><br>   Defendants. | Civil Action No. 1:08-00589-RMU |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS JOHN KERRY AND KERRY-EDWARDS 2004 INC.'S
MOTION TO DISMISS**

Defendants John Kerry and Kerry-Edwards 2004 Inc. ("the Campaign") established in their opening brief that principles of res judicata require this suit's dismissal: Plaintiffs named the same defendants and alleged the same conspiracy in a suit previously dismissed by this Court. *See Nader v. Democratic National Committee*, No. 07-2136, Mem. Op. at 1 (D.D.C. May 27, 2008).[1] Plaintiffs argue that because they now present additional factual allegations about state action and a different legal theory claim preclusion does not apply. This is plainly wrong. Plaintiffs may litigate *new* events that occurred subsequent to the filing of their first action, and they may litigate events that make up a different "nucleus of facts." But they may not relitigate the same conspiracy again, simply because they have made new supporting allegations. Allowing such repetitive and vexatious litigation would undermine the very purpose of res judicata.

Furthermore, as defendants demonstrated in their opening brief: (1) issue preclusion and the *Noerr-Pennington* doctrine shield defendants from liability; (2) plaintiffs have failed

---

[1] This memorandum is substantially similar to the memorandum that Defendant Senator John Kerry and Defendant Kerry-Edwards 2004 Inc. filed in reply to plaintiffs' opposition to defendants' motion to dismiss, before plaintiffs amended their pleadings to add supplemental allegations. Additional argument has been added to respond to plaintiffs' new allegations.

to state a claim under 42 U.S.C. § 1983; and (3) the statute of limitations bars plaintiffs' claims.

## ARGUMENT

**A.     Claim preclusion bars plaintiffs' claims despite the pending appeal and the addition of new allegations.**

Plaintiffs argue that, because their prior case is on appeal, this case is not barred by claim preclusion.  Opp'n at 22.  This is wrong.  It is longstanding precedent that res judicata is not defeated by a pending appeal: Courts must grant preclusive effect to a judgment on the merits, even when an appeal is pending.  *See National Post Office Mail Handlers v. American Postal Workers Union*, 907 F.2d 190, 192 (D.C. Cir. 1990); *see also Deposit Bank v. Frankfort*, 191 U.S. 499 (1903); Wright, Miller & Cooper, 18A Fed. Prac. & Proc. Juris.2d § 4433, 78-88 n. 12.  In addition, contrary to plaintiff's assertion, *see* Opp'n at 22, res judicata is "properly brought in a pre-answer Rule 12(b)(6) motion when 'all relevant facts are shown by the court's own records'" or public records from other proceedings.  *Hemphill v. Kimberly-Clark Corp.*, 530 F. Supp. 2d 108 (D.D.C. 2008) (quoting *Evans v. Chase Manhattan Mortgage Corp.*, No. 04-2185, 2007 WL 902306, at * 1 (D.D.C. Mar. 23, 2007) (citing *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir.1992)); *see also Stanton v. District of Columbia Court of Appeals*, 127 F.3d 72, 76-77 (D.C. Cir. 1997) (noting that parties are permitted to assert res judicata under Rule 12(b)(6)).  Here, the court records clearly demonstrate all relevant facts: (1) an identity of the parties in both suits; (2) a judgment on the merits; and (3) a common nucleus of facts.  *See Nader*, No. 07-2136; *Nader*, No. 08-589.

Plaintiffs also argue that this case is not barred by the doctrine of claim preclusion, because they have included new factual allegations.  According to plaintiffs, co-defendant Reed Smith worked "in cooperation with" legislative aides in Pennsylvania who volunteered to assist with the Nader-Camejo ballot challenges, and those aides received state-funded bonuses in violation of law.  Because plaintiffs claim they did not learn of "the participation

of state employees in Defendants' conspiracy" until December 2007, and a criminal indictment against the Pennsylvania state workers was not released until July 2008, plaintiffs contend their section 1983 action is not barred. Opp'n at 23-24. This argument is unsupported by the case law, contradictory to basic principles of res judicata, and belied by plaintiffs' own pleadings.

Claim preclusion bars a second suit involving the same parties when the two suits share the same "nucleus of facts." *Drake v. Federal Aviation Administration*, 291 F.3d 59, 66 (D.C. Cir. 2002). It is simply not the case that any time a plaintiff adds new supporting allegations he can relitigate a "nucleus of facts" that has already been adjudicated. None of the cases cited by plaintiffs support this position. *See* Opp'n at 23-24. Rather, the cited cases hold that a litigant may file a new suit about events that had not yet transpired at the time the first suit was filed, or that form a different nucleus of facts. *See, e.g.*, *Stanton*, 127 F.3d at 78 ("Post-judgment events give rise to new claims"). Thus, a plaintiff who filed suit in 1972 challenging medical treatment received from the Veterans Administration could challenge allegedly wrongful treatment that occurred after that date, but could not file a new suit about treatment that occurred before 1972. *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984). A government employee who had filed an employment discrimination action in 2003 could pursue a new suit about alleged discrimination that occurred after the first action was filed, but could not "litigate . . . anew" employment decisions that he had included in the prior action or that were part of the same nucleus of facts. *Brown v. Paulson*, 541 F. Supp. 2d 379, 384-85 (D.D.C. 2008) (Urbina, J.); *see also Drake*, 291 F.3d at 66 (stating that "res judicata does not preclude claims based on facts not yet in existence at the time of the original action" and holding that claims underlying second action were not barred because "many of the central events underlying [the second action] had not even taken place at the time when" the first action was "instigated"); *Velikonja v. Ashcroft*, 355 F. Supp. 2d 197,

201-02 (D.D.C. 2005) (events alleged in second complaint "had not yet taken place and therefore were both distinct from, and impossible to include in, the first complaint").

Here, plaintiffs are asking to relitigate the same alleged conspiracy they previously litigated—on the ground that they have added new allegations about alleged criminal activity on the part of state workers.  Not only are these "newly discovered" facts wholly unrelated to Senator Kerry and the Campaign, *see infra*, at 8-9, but they are about events that occurred long before plaintiffs filed their initial complaint and they pertain to the same alleged conspiracy previously litigated.  Indeed, as demonstrated in defendants' opening brief, the two cases not only involve facts that are "related" in time, space, origin, or motivation, they involve, in large part, *identical* facts, reiterated almost verbatim.  *Compare* Am. Compl. No. 08-589 ¶ 1, *with* Am. Compl. No. 07-2136 ¶ 1; Am. Compl. No. 08-589 ¶¶ 2-10, *with* Am. Compl. No. 07-2136 ¶¶ 2-10; Compl. No. 08-589 ¶¶ 50-76, *with* Am. Compl. No. 07-2136 ¶¶ 45-71; *and* Am. Compl. No. 08-589 ¶¶ 107-11, *with* Am. Compl. No. 07-2136 ¶¶ 228-32.  To allow plaintiffs to pursue their conspiracy theory again, because they have added new allegations about the same conspiracy, would undermine the basic purpose of res judicata— "to protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.'"  *Taylor v. Sturgell*, 128 S.Ct. 2161, 2172 (2008) (quoting *Montana v. United States*, 440 U.S. 147, 153-54 (1979) (alterations in original)).

That plaintiffs now advance section 1983 claims does not change the analysis.  Claim preclusion bars not only the relitigation of claims that were previously raised but also those claims that could or should have been raised in an earlier suit.  *See Natural Resources Defense Council v. EPA*, 513 F.3d 257, 261 (D.C. Cir. 2008).  There can be no doubt that plaintiffs could have raised their federal claims in the first action.  Indeed, they *did* raise their federal claims in the first suit—they dropped the federal claims only when they sought to

avoid this Court's jurisdiction and remand to the D.C. Superior Court, and they continued to pursue those claims against other defendants in *Nader v. McAuliffe*, No. 08-428.

Moreover, plaintiffs' assertion that they had no notice of the activities of Pennsylvania state workers until December 2007 is belied by their own pleadings in other litigation. In *Nader v. McAuliffe*, plaintiffs cited an August 2004 news story in which the *Pittsburg Post-Gazette* reported that "state Democratic officials provided Reed Smith with 'volunteers' and financial support" for the Nader litigation. *See Nader v. McAuliffe*, No. 08-428, Memorandum in Support of Plaintiffs' Motion for Leave to Amend Complaint, Docket No. 26, at 2 (citing Tom Barnes, *Nader Petition Challenged to Keep Him Off Pennsylvania Ballot*, Pittsburg Post-Gazette*,* Aug. 10, 2004). Thus, plaintiffs were, or should have been, on notice of the basic facts regarding the Pennsylvania state workers no later than August 2004, and certainly no later than when they filed their previous complaints.

B.  **As this Court has already ruled, the Noerr-Pennington doctrine immunizes defendants from liability for their conduct.**

Plaintiffs' suit is also barred by the *Noerr-Pennington* doctrine—and by this Court's prior ruling on that doctrine. In its May 27 opinion, the Court held that the *Noerr-Pennington* doctrine provides immunity to the defendants for their activity in challenging the Nader-Camejo nomination papers. *Nader*, No. 07-2136, Mem. Op. at 2, 22-31. The Court recognized that defendants who petition the government for redress of grievances, including through litigation in court, are "immune from liability for such activity under the First Amendment." *Nader*, No. 07-2136, Mem. Op. at 22 (citing *Covad Comm'cns Co. v. Bell Atl. Corp.*, 385 F.3d 666, 677 (D.C. Cir. 2005)). Though sham litigation receives no protection, this Court expressly held that the ballot litigation engaged in by defendants—i.e., the litigation at issue both in this case and the dismissed case—was *not* sham litigation. *See Nader*, No. 07-2136, Mem. Op. at 2; *see also id*. at 27.

Plaintiffs cannot relitigate this Court's ruling on *Noerr-Pennington*. The issue whether defendants' ballot access litigation qualifies as "sham" litigation was contested by the parties and submitted for judicial determination in the prior case; the issue was actually and necessarily determined by a court of competent jurisdiction; and plaintiffs had every incentive to litigate the issue in the first case. *See Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (setting forth standard for issue preclusion); *see also Beverly Health & Rehabilitation Servs., Inc. v. NLRB*, 317 F.3d 316, 321 (D.C. Cir. 2003).

Plaintiffs argue that because the court did not consider their section 1983 theory in the earlier action, issue preclusion does not apply. Opp'n at 24-25. But the fact that this complaint seeks relief under federal law, instead of state tort law, does not change the *Noerr-Pennington* analysis. Courts have consistently held that the *Noerr-Pennington* doctrine applies to causes of action arising under 42 U.S.C. § 1983, just as it does to state law claims. *See, e.g.*, *Eaton v. Newport Bd. of Educ.*, 975 F.2d 292 (6th Cir. 1992) (holding that *Noerr-Pennington* protected defendants from liability under 42 U.S.C. § 1983); *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1084 (5th Cir. 1988) (same).

Plaintiffs further contend that the Court "reserved judgment" on their allegations of "harassment, intimidation, and sabotage," Opp'n at 25, and therefore the *Noerr-Pennington* ruling should not apply. This is plainly wrong. First, the Court did not reserve judgment on any of plaintiffs' claims, but rather dismissed plaintiffs' case in its entirety. *Nader*, No. 07-2136, Mem. Op. at 31. Second, the Court expressly rejected the notion that plaintiffs' generalized accusations about harassment—allegations made in both cases—could transform defendants' legitimate petitioning activity into "sham" litigation. As the Court made clear, "[i]nitiating a law suit with the ulterior motive of forcing normal litigation expenses and distractions on an opponent" does not satisfy the sham exception to the *Noerr-Pennington*

doctrine. *Id*. at 20-21. "[T]he First Amendment cannot be abrogated simply by alleging that one's political opponent turned to the judicial process for partisan motives." *Id*. at 25.

In short, either as a matter of issue preclusion, or considered in the first instance here, the *Noerr-Pennington* doctrine protects defendants' ballot activity. Defendants are "protected by the firmly rooted principle, endemic to a democratic government," that citizens may petition the Nations' courts. *Brownsville Golden Age Nursing Home v. Wells*, 839 F.2d 155, 160 (3d Cir. 1988).

C.  **Plaintiffs Fail to State a Claim under 42 U.S.C. § 1983 or a Conspiracy Claim Against Senator Kerry or the Campaign.**

Even if plaintiffs' case were not barred by claim and issue preclusion and by the *Noerr-Pennington* doctrine, dismissal would be required. Plaintiffs spend numerous pages reiterating their allegations about sabotage, obstruction, and conspiracy, Opp'n at 11-17, but they still do not state a section 1983 claim upon which relief can be granted.[2]

*First*, plaintiffs point to no law that supports the conclusion that they were deprived of a constitutional right. They argue that defendants' alleged activity prevented Nader and Camejo from gaining access to the ballot and therefore from exercising their First Amendment rights. Opp'n at 29-30. But Nader and Camejo were kept off the ballot only in states where courts determined they were not qualified under state ballot access laws. Plaintiffs are barred by the *Rooker-Feldman* doctrine,[3] as well as principles of issue preclusion, from attacking the judgment of those courts. *See Nader*, No. 07-2136, Mem. Op.17-19 (discussing *Rooker-Feldman* doctrine); *Charenko v. City of Stillwater*, 47 F.3d 891, 983 (8th Cir. 1995) (a claim is "inextricably intertwined" under *Rooker-Feldman* when the

---

[2] Plaintiffs also attempt to supplement their Complaint with an affidavit and extensive exhibits. This material does nothing to change the fact that plaintiffs have failed to state a claim upon which relief should be granted. Moreover, consideration of such material would convert plaintiffs' request into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). The Court should decline to do so.

[3] *See Rooker v. Fidelity Trust Co*. 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

claim "succeeds only to the extent that the state court wrongly decided the issues before it [or] if the relief requested . . . would effectively reverse the state court decision or void its ruling"), *quoted in Nader*, No. 07-2136, Mem. Op. at 19; *see also Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005). In the other states, Nader did appear on the ballot, and thus the constitutional rights of Nader, Camejo, and the voters could not have been deprived.

*Second*, plaintiffs' brief in opposition fails to demonstrate the state action required for a claim under section 1983. *See, e.g.*, *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) ("The ultimate issue in determining whether a person is subject to suit under § 1983 is . . . [whether] the alleged infringement of federal rights [is] 'fairly attributable to the State.'" (quoting *Lugar v. Edmonson Oil Co., Inc.,* 457 U.S. 922, 937 (1982)). Plaintiffs contend that employees of Pennsylvania's legislature volunteered to help defendant Reed Smith with ballot litigation in Pennsylvania, and, in violation of Pennsylvania law, received state bonuses. Opp'n at 30-31; Am. Compl. No. 08-589 ¶¶ 79-80, 105-106. Citing *West v. Atkins*, 487 U.S. 42, 49 (1988) and *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 941 (1982), they argue that this activity is sufficient to establish state action. Opp'n at 31. For the reasons explained by co-defendant Reed Smith, this argument fails.

Moreover, plaintiffs do not allege that Senator Kerry or the Campaign had any connection to, or involvement in, the activities of state workers in Pennsylvania. *See* Opp'n at 30-31; Am. Compl. No. 08-589 ¶¶ 77-106. Nor do they allege that Senator Kerry or any official from the Campaign attended the meeting at which the "conspiracy" was supposedly hatched. *See* Opp'n at 36; Am. Compl. No. 08-589 ¶ 51. Indeed, plaintiff's brief in opposition concedes this point. *See* Opp'n at 32. Plaintiffs argue, instead, that because a law firm that represents Teresa Heinz Kerry and has represented Senator Kerry in the past allegedly worked with the Pennsylvania state employees, and because "agents" of the

Campaign allegedly participated in lawsuits, Senator Kerry and the Campaign are part of a "conspiracy" to violate constitutional rights under color of state law. Opp'n at 32-33. This is ludicrous. As the District Court for the Southern District of New York admonished several years ago when Nader supporters brought a similar section 1983: "'[M]erely resorting to the courts and being on the winning side of a lawsuit does not make a party' responsible for depriving a plaintiff of his rights." *Fulani v. McAuliffe*, No. 04-cv-6973, 2005 WL 2276881 at *3 n.4 (S.D.N.Y. Sept. 19, 2005) (quoting *Dennis v. Sparks*, 449 U.S. 24, 28 (1980)). Nor does it "make a party a co-conspirator or a joint actor with the judge." *Dennis*, 449 U.S. at 28.

### D.  Plaintiffs' Claims are Time-Barred.

In addition to the reasons stated above, the Court should dismiss plaintiffs' claims as time-barred. The statute of limitations for a section 1983 claim in the District of Columbia is three years. *See Smith-Haynie v. District of Columbia,* 155 F.3d 575, 577 n.1 (D.C. Cir. 1998); *Turner v. District of Columbia*, 383 F. Supp. 2d 157, 168 (D.D.C. 2005). This suit was filed on April 4, 2008. The injuries plaintiffs complain of—depriving Nader and Camejo of their right to appear on the 2004 general election ballot, and voters the right to vote for them—all accrued before April 4, 2005, and therefore fall outside the three-year statute of limitations.

Plaintiffs argue that their section 1983 claims are not time-barred because "this Court already held, consistent with the great weight of authority, that dismissal of Plaintiffs' claims on the ground that they are barred by the statute of limitations would be improper." Opp'n at 37. This is incorrect. The Court never made such a ruling. Rather, it stated the legal standard for dismissal on statute of limitations grounds, and then disposed of plaintiffs' state law claims on other grounds without considering the merits of the statute of limitations argument. *Nader*, No. 07-2136, Mem. Op. at 22.

Here, "no reasonable person could disagree" that the injuries about which plaintiffs complain—denial of ballot access in the November 2004 election—accrued over three years before this action was filed. *See id*. at 22 (quoting *Smith v. Brown & Williamson Tobacco Corp.*, 3 F. Supp. 2d 1473, 1475 (D.D.C. 1988) (citing *Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, 890 F.2d 456, 463 n.11 (D.C. Cir. 1989)). The election was over in November 2004, and the U.S. Supreme Court denied the Nader-Camejo campaign's petition for writ of certiorari in the Pennsylvania litigation on January 10, 2005. *See Nader v. Serody*, 543 U.S. 1052 (2005).

Plaintiffs do not offer any argument to the contrary. Rather, they contend that their claims are not time-barred because they "discovered" new evidence in December 2007. Opp'n at 37. But the discovery rule operates to toll a statute of limitation only until "the claimant knows or by the exercise of reasonable diligence should know of (1) the injury, (2) its cause in fact, and (3) some evidence of wrongdoing." *Doe v. Medlantic Health Care Group, Inc.*, 814 A.2d 939, 945 (D.C. 2003) (internal citations omitted). "The fact that [the plaintiff] did not then comprehend the full extent of all possible sequelae does not matter, for the law of limitations requires only that she have inquiry notice of the existence of a cause of action." *Tolbert v. National Harmony Memorial Park*, 520 F. Supp. 2d 209, 212 (D.D.C. 2007).

Here, it is incontrovertible that plaintiffs were on notice that they had a potential cause of action under section 1983 before December 2007: They actually filed a section 1983 suit against defendants before that date. *See Nader*, No. 07-2136. Furthermore, plaintiffs were, or should have been, on notice of the basic facts regarding the Pennsylvania state workers no later than August 2004, when the *Pittsburg Post-Gazette* published a story reporting that "state Democratic officials provided Reed Smith with 'volunteers' and financial support" for the Nader litigation. *See Nader v. McAuliffe*, No. 08-428,

Memorandum in Support of Plaintiffs' Motion for Leave to Amend Complaint, Docket No. 26, at 2 (citing Tom Barnes, *Nader Petition Challenged to Keep Him Off Pennsylvania Ballot*, Pittsburg Post-Gazette, Aug. 10, 2004).

Because plaintiffs have long been on notice of their claim, they cannot take advantage of the discovery rule. To allow plaintiffs to reopen their expired claims on the ground that they have new supporting "evidence" would run contrary to the underlying purpose of statutes of limitations. *See Norwest Bank Minnesota Nat. Ass'n v. F.D.I.C.*, 312 F.3d 447 (D.C. Cir. 2002) (en banc) ("One of the policies underlying statutes of limitations is repose."). The law simply does not allow plaintiffs to revive a stale claim any time they find a basis for new allegations.

## CONCLUSION

Because plaintiffs have failed to state any claim against Senator Kerry or the Kerry-Edwards Campaign upon which relief can be granted, this Court should dismiss the case, with prejudice.

DATED: August 18, 2008

Respectfully submitted,

**PERKINS COIE LLP**

By: /s/ Marc E. Elias
    Marc E. Elias, Bar No. 442007
MElias@perkinscoie.com
607 Fourteenth Street, NW
Washington, DC  20005-2003
Telephone:  202.628.6600
Facsimile:  202.434.1690

*Counsel for Defendant John Kerry and Defendant Kerry-Edwards 2004 Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing Motion to Dismiss on this 18th day of August 2008 by means of the Court's CM/ECF system, on the following parties:

Oliver B. Hall
1835 16th Street, N.W.
Washington, DC  20009

*Counsel for Plaintiffs Ralph Nader, Peter Miguel Camejo, D.B. Fanning, C.K. Ireland, Julie Coyle, Herman Blankenship, Lloyd Marbet, and Gregory Kafoury*

Douglas K. Spaulding
REED SMITH LLP
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, DC  20005

*Counsel for Defendant Reed Smith LLP*

Joseph E. Sandler
John Hardin Young
Stephen E. Hershkowitz
SANDLER, REIFF & YOUNG, P.C.
50 E Street, SE #300
Washington, DC  20003

*Counsel for Defendants Democratic National Committee*

/s/ Marc E. Elias
Marc E. Elias D.C. Bar No. 442007
MElias@perkinscoie.com
607 Fourteenth Street, NW, Suite 800
Washington, DC  20005-2011
Telephone:  202.628.6600
Facsimile:  202.654.9126
*Counsel for Defendants*
*John Kerry and Kerry-Edwards 2004 Inc.*