UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RALPH NADER, et al., | : |
|                 Plaintiffs, | : |
| v. | :   Civil Action No.: 1:08-cv-00589-RMU |
| THE DEMOCRATIC NATIONAL COMMITTEE, et al., | : |
|                 Defendants. | : |

## DEFENDANT REED SMITH'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

The doctrine of *res judicata* bars Plaintiffs' claims in this action because those claims arise from the same nucleus of facts as the claims the Court previously dismissed in Civil Action No. 07-2136-RMU (the "Prior Action").[1] The Presentment cited extensively in Plaintiffs' Amended Complaint does not save this case from dismissal. Accordingly, Plaintiffs' action must be dismissed because: (i) this Court's May 27, 2008 decision in the Prior Action has *res judicata* and collateral estoppel effect; (ii) Reed Smith is immune from liability under the *Noerr-Pennington* doctrine; (iii) Plaintiffs have not stated a conspiracy claim against Reed Smith, (iv) Plaintiffs fail to state claims under 42 U.S.C. § 1983; and (v) the statute of limitations bars Plaintiffs claims.[2]

---

[1] *See Nader v. Democratic National Committee*, Civ. Action No. 07-2136-RMU, Memorandum Opinion & Order, slip op. (D.D.C. May 27, 2008) (Urbina, J.) (Doc. No. 54).

[2] Reed Smiths' July 7, 2008 Reply in support of its motion to dismiss the original Complaint and the legal memoranda of the other Defendants demonstrate each of these points. The instant Reply is a supplemental memorandum that adds to these arguments, in light of the amendments to the Complaint. Reed Smith hereby incorporates its July 7 Reply in its entirety (*see* Docket No. 20), as well as the arguments of the other Defendants.

To permit Plaintiffs to re-litigate the same allegations dismissed in the Prior Action simply because they have made new supporting allegations would permit Plaintiffs to engage in the kind of repetitive, piecemeal litigation that the doctrine of *res judicata* is meant to prevent.

## ARGUMENT

**A.    The *Res Judicata* Doctrine Bars All of Plaintiffs' Claims.**

**1.    The Presentment Does Not Negate *Res Judicata*.**

Plaintiffs argue incorrectly that *res judicata* does not apply because Plaintiffs raise "new" facts in this action, including the allegations of a July 10, 2008 Grand Jury Presentment ("Presentment").[3] As detailed in Reed Smith's July 7 Reply, a new allegation may affect the propriety of *res judicata* dismissal where the alleged fact *did not exist* at the time the plaintiff filed the earlier suit, but *res judicata* requires dismissal *if the fact existed but merely had not yet been discovered*. Reply in Supp. of Mot. to Dismiss at 3-5, filed 7/7/08 ("July 7 Reply") (citing, *e.g.*, *Brown v. Paulson*, 541 F. Supp. 2d 379, 384 (D.D.C. Apr. 1, 2008) (Urbina, J.); *Hobley v. KFC U.S. Props., Inc.*, 2007 U.S. Dist. LEXIS 7203, *1-2 (D.D.C. Feb. 1, 2007)). Here, Plaintiffs do not allege new facts, but instead allege the "new" discovery of pre-existing facts. Under these circumstances, *res judicata* bars Plaintiffs' claims. *See id.*

The Presentment does not present any facts that did not exist when Plaintiffs filed the Prior Action. Although the Presentment document is "new," the facts it sets forth are not. The

---

[3] The July 10, 2008 Grand Jury Presentment details the allegations and charges that the Pennsylvania Attorney General asserts against the individuals named in that document. *See* Presentment of the 28th Statewide Investigating Grand Jury of Pennsylvania, filed 7/10/08. The Presentment is *not* an indictment. Before charges (termed an "information" in Pennsylvania) may proceed to adjudication in the Common Pleas Court, the judge supervising the grand jury must first review the Presentment, determine if it complies with the grand jury's authority, and then hold a post-grand jury preliminary hearing, at which evidence must be introduced in an adversarial setting. *See* 42 Pa. C.S. § 4551(a), (e) ("Investigating grand jury presentments"). *Id.* § 4551(a). The Presentment is not a charging document that can stand on its own in court.

facts that relate to this case take up only a small part of the 75-page Presentment, and describe events dating back to 2004. As Plaintiffs' admit in their Opposition, the Presentment allegations that Plaintiffs rely upon (*e.g.*, that Reed Smith worked with state employees and that those employees received taxpayer funds) are old allegations which merely support and elaborate upon Plaintiffs' previous allegations. *See* Opp'n at 7 (stating that the Presentment "constitutes compelling new evidence *to support Plaintiffs' allegations* that Defendants conspired under color of law" [emphasis added]); *id.* at 30 (stating that evidence regarding taxpayer-funded compensation was "newly discovered" in December 2007); *id.* at 31 (stating that Plaintiffs' allegations "are *significantly supported and enlarged upon* by allegations in the Grand Jury Indictment" [emphasis added]). These alleged facts are not a departure from the same nucleus of facts upon which Plaintiffs' based their claims in the Prior Action. *See* July 7 Reply at 4 n.2. Because Plaintiffs' claims in this suit are based on the same nucleus of facts as the claims dismissed by this Court's May 27, 2008 Order, *res judicata* bars Plaintiffs claims in this suit, and the Court should dismiss this action. *See, e.g., Brown*, 541 F. Supp. 2d at 384; *Velikonja v. Ashcroft*, 355 F. Supp. 2d 197, 201-02 (D.D.C. 2005) (stating that *res judicata* bar would apply where plaintiff attempted to file second suit based on the same facts relied upon in an earlier case but with a different legal theory).

    2.    **Plaintiffs' Appeal in the Prior Action Does Not Negate *Res Judicata*.**

Plaintiffs' appeal in the Prior Action does not render the *res judicata* doctrine inapplicable. Plaintiffs are correct that a final judgment is necessary for *res judicata* claim preclusion or collateral estoppel to apply, but they argue incorrectly that the Court's dismissal of the Prior Action ceased to be "final" simply because Plaintiffs have appealed. The law is well-established that the pendency of an appeal does not suspend the operation of a final judgment for

purposes of claim or issue preclusion. *See Hunt v. Liberty Lobby, Inc.*, 707 F.2d 1493, 1497 (D.C. Cir. 1983); *Nixon v. Richey*, 513 F.2d 430 (D.C. Cir. 1975); *Thornton v. Norwest Bank of Minn.*, 860 A.2d 838, 481 (D.C. 2004). Further, employing *res judicata* at this Rule 12(b)(6) stage is appropriate here because "all relevant facts are shown by the court's own records" or the public records from other proceedings. *Hemphill v. Kimberly-Clark Corp.*, 530 F. Supp. 2d 108 (D.D.C. 2008) (citations omitted); *see also Stanton v. Dist. of Columbia Court of Appeals*, 127 F.3d 72, 76-77 (D.C. Cir. 1997). The records in the Prior Action and this action show an identity of the parties in the suits, a judgment on the merits and a common nucleus of facts.

**B.      The Presentment Does Not Rehabilitate Plaintiffs' Action.**

The Presentment in no way changes the fact that Plaintiffs have not – and cannot – state sound legal claims against Reed Smith. Like the original Complaint, the Amended Complaint raises claims under 42 U.S.C. § 1983 for alleged violations of the Qualifications Clause and the First and Fourteenth Amendments of the U.S. Constitution. If volunteers on the Nader-Camejo challenge received taxpayer funds as bonuses – accepting Plaintiffs' allegations as true for Rule 12(b)(6) motions to dismiss – Nader-Camejo have failed to allege how the payment of such bonuses deprived plaintiffs of their Fourteenth Amendment equal protection or due process rights, First Amendment associational or free speech rights, or rights under the Qualifications Clause. *See* Fed. R. Civ. P. 8(a) (requiring a plain statement of the claim, but one that "show[s] that the pleader is entitled to relief"); Am. Compl. ¶¶ 117-127 (vaguely alleging violations of the Qualifications Clause and the First and Fourteenth Amendments).

While Plaintiffs devote much of their Opposition detailing alleged violations of *state law* by Pennsylvania officials, *see, e.g.,* Opp'n at 6-8, 21-23, 27-33, Plaintiffs fail to demonstrate how these alleged violations translate into a deprivation of their constitutional rights.

Plaintiffs' attempt to characterize themselves as "qualified candidates and voters" adds nothing to their assertion of a constitutional deprivation. While the Constitution sets the "qualifications" for an individual to serve as President of the United States, *see* Art. II, sec. 1, p. 5, the Supreme Court has left it to the states to enforce procedural requirements to determine who may "qualify" to appear on election ballots as candidates. *See, e.g., Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983); *Storer v. Brown*, 415 U.S. 724, 729-36 (1974); *Am. Party of Texas v. White*, 415 U.S. 767, 779-88 (1974); *Jenness v. Fortson*, 403 U.S. 431, 442 (1971). Certainly, not every individual who meets the "qualifications" to be President under the Constitution is entitled to appear on the ballot. *See, e.g., Clements v. Fashing*, 457 U.S. 957, 963 (1982) (finding there is no "fundamental right" to run for office). Here, Nader-Camejo failed to meet the procedural requirements to get on the ballot in Pennsylvania (and other states); therefore, Plaintiffs cannot claim a constitutional deprivation. *See Jenness v. Fortson*, 403 U.S. at 442; *Cartwright v. Barnes*, 304 F.3d 1138, 1144 (11th Cir. 2002); *Libertarian Party of Illinois v. Rednour*, 108 F.3d 768, 777 (7th Cir. 1997).

Plaintiffs rely on the July 10 Presentment as their salvation for claims that lack the factual allegations to withstand a Rule 12(b)(6) motion to dismiss. Plaintiffs' reliance is misplaced. The Presentment contains criminal charges, but it does not assert any allegations of misconduct against any of the Defendants in this case. Further, allegations that some volunteers that worked on the Nader-Camejo nomination paper challenge received taxpayer funds do not bear on whether Reed Smith violated Plaintiffs' constitutional rights by challenging the papers.[4] Even accepting Plaintiffs' allegations as true, such allegations do not rectify the Amended Complaint's

---

[4] As Reed Smith has established, its clients challenged the nomination papers pursuant to a lawful Pennsylvania statute, the nature of which the courts have upheld as imposing valid ballot access requirements. *See* 25 P.S. § 2937; Mem. in Supp. of Mot. to Dismiss at 17-20.

utter lack of sufficient factual allegations to support the claimed violation of any rights "secured by the Constitution or federal law." *See Weishapl v. Sowers*, 771 A.3d 1014, 1023 (D.C. 2001) (stating the requirements for liability under 42 U.S.C. § 1983).

Plaintiffs invoke the Presentment as a justification for their argument that Reed Smith should not continue the allegedly conspiratorial conduct of seeking to collect its clients' costs for the 2004 nomination paper challenge. However, this Court has already considered – and rejected – Plaintiffs' arguments that Reed Smith should bear civil liability for seeking costs. The Court's Opinion in the Prior Action forecloses any further argument on this point. As explained in Reed Smith's Memorandum and above, the doctrine of *res judicata* precludes all claims that Plaintiffs previously brought, could have brought or should have brought regarding any alleged harm from Reed Smith's pursuit of its costs. *See* Opp'n at 8; Mem. at 8-9 (citations omitted). Further, this Court need not address the propriety of the costs judgment in the context of the criminal allegations, because Plaintiffs Nader and Camejo have already raised this issue before the Pennsylvania Commonwealth Court in a petition to set aside the costs judgment.[5] This Court need not intervene into the province of the Pennsylvania court.

**C.    Issue Preclusion Bars Plaintiffs' from Challenging the Court's Previous Ruling that the *Noerr-Pennington* Doctrine Bars Plaintiffs' Claims.**

This Court has already decided in the Prior Action that the *Noerr-Pennington* doctrine provides immunity to the Defendants for their activities in filing "good-faith lawsuits" challenging the Nader-Camejo nomination papers. *See Nader*, No. 07-2136-RMU, slip op. at 22-28. The Court considered and rejected Plaintiffs' attempts to invoke the sham exception to the *Noerr-Pennington* doctrine. *Id.* at 24. Here, Plaintiffs rely on the same allegations and

---

[5] Reed Smith has opposed the petition, and has argued to the Pennsylvania Commonwealth Court that there is no justification in law or equity to set aside the costs judgment.

- 6 -

arguments to support their claim that Defendants' actions were a "sham" precluding *Noerr-Pennington* protection. The Court should apply the principles of collateral estoppel to bar the Plaintiffs from re-litigating this issue. *See Natural Resources Def. Counsel v. EPA*, 513 F.3d 257, 261(D.C. Cir. Jan. 22, 2008) (stating that the collateral estoppel bar "is aimed at preventing relitigation of issues previously resolved").

Moreover, even if the Court were to allow Plaintiffs to re-litigate the question of *Noerr-Pennington* immunity, this action should be dismissed. As a matter of law, Plaintiffs have failed to state a claim that can survive the application of the *Noerr-Pennington* doctrine; that is, they have failed to allege facts upon which the sham exception to the doctrine could be based. Therefore, the Court should follow its previous ruling and find that Defendants' conduct was protected First Amendment activity under the *Noerr-Pennington* doctrine.

In order to entertain Plaintiffs' assertions that the *Noerr-Pennington* doctrine does not apply, this Court would have to reject its previous ruling regarding the application of the sham exception to Defendants' activities. Specifically, the Court would have to reject its earlier holding that the lawsuits filed by Defendants in states *where they prevailed* (including Pennsylvania) were not "objectively baseless." *See id.* at 24 (citing *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 61 (1993)). The Court would also have to reject its earlier position that "[i]nitiating a law suit with the ulterior motive of forcing normal litigation expenses and distractions on an opponent" does not satisfy the sham exception to the *Noerr-Pennington* doctrine. *Id.* at 20-21; *see also Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 500 n.4 (1988) (describing sham situation as one where defendant's activities were "not genuinely aimed at procuring favorable government action."). Furthermore, the Court would have to reject its considered reasoning that "the First Amendment cannot be abrogated

simply by alleging that one's political opponent turned to the judicial process for partisan motives." *Id.* at 25 (citing *United States v. Am. Tel. and Tel. Co.*, 524 F. Supp. 1336, 1364 (D.D.C. 1981); *Westmac, Inc. v. Smith*, 797 F.2d 313, 317 (6th Cir. 1986)). Plaintiffs' Opposition fails to provide any basis for the Court to discard its previous well-reasoned decision regarding the application of the *Noerr-Pennington* doctrine.

Plaintiffs argue that *Noerr-Pennington* does not grant immunity for allegedly unlawful acts, *see* Opp'n at 26-27, but such immunity is the very essence of the *Noerr-Pennington* doctrine. The *Pennington* court held that joint efforts to influence public officials do not violate the law even if they are part of a broader scheme of conduct that would be unlawful under the antitrust laws. *See United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670 (1965).

Plaintiffs' reliance on *California Motor Transport Co. v. Trucking Unlimited* does not support its claim. *Ca. Motor Transp. v. Trucking Ultd.*, 404 U.S. 508 (1972). In that case, the court repeatedly noted how defendants' actions fit into the sham exception to *Noerr-Pennington* because defendants' actions deprived plaintiffs of access to judicial and administrative tribunals. *Id.* at 511-13. Here, Plaintiffs have not been deprived of their opportunity to litigate their claims. In fact, Nader-Camejo's real complaint stems from having to utilize judicial and administrative tribunals in order to get on the ballot. The situation is completely opposite to that presented in *California Motor Transport*.

Citing a footnote in the Court's Order, Plaintiffs assert that the Court has "expressly reserved judgment on Plaintiffs' allegations that Defendants 'orchestrated campaigns of harassment, intimidation and sabotage.'" Opp'n at 26 (citing *Nader*, No. 07-2136-RMU, slip. op. at 31 n.19). However, Plaintiffs' reliance on this footnote is misplaced. The Court dismissed Plaintiffs' case in its entirety. *Nader*, No. 07-2136-RMU, slip op. at 31. Furthermore, the Court

has already rejected Plaintiffs' factual allegations as a basis for invoking the sham exception to the *Noerr-Pennington* doctrine – including Plaintiffs' claims regarding Reed Smith's conduct before the Pennsylvania Supreme Court.[6] *See id.* at 27 n.16. Therefore, the Court should reject Plaintiffs' invitation to re-consider the applicability of the *Noerr-Pennington* doctrine and follow its previous ruling that the *Noerr-Pennington* doctrine immunizes Defendants from liability for their protected First Amendment activities.

D.  **Plaintiffs Fail to State a Conspiracy Claim Against Reed Smith.**

Plaintiffs' Opposition fails to address the basic deficiencies in the Amended Complaint raised by Reed Smith in its Motions to Dismiss. Plaintiffs fail to provide specific factual allegations regarding Reed Smith's alleged entry into an unlawful agreement. Plaintiffs do not allege that anyone from Reed Smith was at the meetings where the conspiracy was allegedly formed. *See* Amend. Compl. ¶¶ 52-58. Instead, Plaintiffs attempt to implicate Reed Smith in the alleged conspiracy by virtue of Reed Smith's alleged representation of Teresa Heinz Kerry, John Kerry and the DNC. *Id.* ¶ 103. However, Plaintiffs must allege something further than simply the existence of an attorney-client relationship with co-defendants to establish the existence of a conspiracy. *See Fraiden v. Weitzman*, 611 A.2d 1046, 1079 (Md. App. 1993) (stating that an attorney is not responsible for wrongs attributed to the client where the attorney's participation is within the scope of legal representation), *cited in Fischer v. Flax*, 816 A.2d 1, 5 (D.C. 2003).

---

[6] Plaintiffs repeat allegations that Reed Smith's actions before the Pennsylvania Supreme Court violated "ethical obligations" and affected the validity of the Pennsylvania judgment imposing costs against Nader-Camejo. Opp'n at 9. However, this Court has already made it clear that "assuming these facts to be true" these types of allegations do not affect in any way the underlying merits of the Pennsylvania decision and "at most suggest[] a technical, procedural impropriety pertinent to judicial ethics of recusal not the merits of the case itself." *See Nader*, No. 07-2136-RMU, slip op. at 27 n. 16

Therefore, Plaintiffs have not alleged facts sufficient to support its allegations that Reed Smith was involved in any conspiracy.

## CONCLUSION

For the reasons stated in Reed Smith's Memorandum, its July 7, 2008 Reply, the instant reply memorandum and Co-Defendants' briefs, the Court should dismiss all of Plaintiffs' claims.

Dated August 21, 2008.

                          Respectfully submitted,

                          REED SMITH LLP

                          _____/s/_____
                          Douglas K. Spaulding
                          D.C. Bar No. 936948
                          Lasagne A. Wilhite
                          D.C. Bar No. 475438
                          REED SMITH LLP
                          1301 K Street, N.W.
                          Suite 1100 - East Tower
                          Washington, D.C. 20005-3373
                          Telephone:   202.414.9200
                          Facsimile:   202.414.9299

                          *Counsel for Defendant Reed Smith*

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2008, I filed Defendant Reed Smith's Reply Memorandum in Support of its Motion to Dismiss with the Clerk of the Court electronically by using the Court's CM/ECF system, which will cause copies of the foregoing to be served upon the following parties:

>Joseph E. Sandler, Esq.
>John Hardin Young, Esq.
>SANDLER, REIFF & YOUNG
>50 E Street, S.E., #300
>Washington, DC  20003
>
>*Counsel for Defendant The Democratic National Committee*
>
>Mark E. Elias, Esq.
>PERKINS COIE
>607 14th Street, N.W.
>Washington, DC  20005
>
>*Counsel for Defendants John Kerry and Kerry-Edwards 2004, Inc.*
>
>Oliver B. Hall, Esq.
>1835 16th Street, N.W.
>Washington, DC  20009
>
>*Counsel for Plaintiffs Ralph Nader, Peter Miguel Camejo, D.B. Fanning, C.K. Ireland, Julie Coyle, Herman Blankenship, Lloyd Marbet and Gregory Kafoury*

/s/<br>
Lasagne A. Wilhite